UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
*Electronically filed*

| | | |
|---|---|---|
| **H.C.** and **Y.C.**, minors by their Next Friend, T.M.; **B.F.**, a minor by her Next Friend, D.R.; and **T.E.**, a minor by his Next Friends, K.T. and T.T.; <br><br> and **T.M.**; **D.R.**; **K.T.**; and **T.T.**, <br><br>  Plaintiffs, <br><br> v. <br><br> **MIKE DeWINE**, in his official capacity as Governor of the State of Ohio; Office of the Governor 77 South High Street, 30th Floor, Columbus, Ohio 43215 <br><br> Please also serve: <br><br> Mike DeWine, Governor of the State of Ohio c/o Dave Yost, Ohio Attorney General 30 East Broad Street, 14th Floor, Columbus, Ohio 43215 <br><br> and <br><br> **KIMBERLY HALL**, in her official capacity as Director of the Ohio Department of Jobs and Family Services, The Ohio Department of Job & Family Services 30 East Broad Street, 31st Floor Columbus, Ohio 43215-3414 <br><br> Please also serve: <br><br> Kimberly Hall, Director of the Ohio Department of Jobs and Family Services, c/o Dave Yost, Ohio Attorney General 30 East Broad Street, 14th Floor Columbus, Ohio 43215 <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____ <br><br><br><br><br><br><br><br><br><br> CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

1.      Plaintiffs bring this action to enforce the federal Foster Care Maintenance Payments Program, 42 U.S.C. § 672, which requires Defendant Ohio officials to make established Foster Care Maintenance Payments to approved Plaintiff Relative Foster Parents T.M., D.R., K.T., and T.T. (the "Relative Foster Parents") on behalf of eligible Plaintiff Relative Foster Children, H.C., Y.C., B.F., and T.E. (the "Relative Foster Children"), and similarly situated Classes of Ohio Relative Foster Parents and Relative Foster Children.[1] Despite Defendants Mike DeWine, Governor of the State of Ohio, and Kimberly Hall, Director of the Ohio Department of Jobs and Family Services, being aware of the established law of this Circuit requiring these payments, *see D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 316 (2017), Defendants have refused to comply with the law. Their refusal has caused and is causing irreparable harm and ongoing financial strain on already vulnerable groups—approved relative foster parents and relative foster children throughout the State of Ohio. Plaintiffs bring this class action against Defendants in their official capacities for declaratory and injunctive relief only, pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, to redress Defendants' violations of their federal statutory rights.

---

[1] This Complaint protects the confidential identity of the minor Plaintiff Relative Foster Children by using pseudonym initials for each child and their Plaintiff Relative Foster Parents. A Motion to Proceed Using Pseudonyms is filed concurrently with this Complaint. Upon a court-approved Protective Order, counsel for Plaintiffs will immediately serve on Defendants' counsel a confidential document identifying the names and case-numbers associated with each Plaintiff Relative Foster Child and Plaintiff Relative Foster Parent. Motions to Proceed In Forma Pauperis are filed along with this Complaint and have been redacted to protect the confidential identity of the minor Plaintiff Relative Foster Children. Unredacted versions of these Motions will be provided upon a court-approved Protective Order or as otherwise requested by the Court.

## SUMMARY OF THE ACTION

2.     The Ohio Department of Jobs and Family Services ("ODJFS") is the state agency responsible for the statewide administration and oversight of Ohio's child welfare system. These statewide responsibilities include, *inter alia,* investigations of child neglect and abuse allegations, temporarily removing children from their homes when necessary for their safety, assuming placement and care responsibility for removed children until permanency is achieved, approving relatives as safe and appropriate foster family homes, placing children in approved relative foster family homes, and providing services to removed children and their families (birth, foster, and adoptive).

3.     Federal law requires Ohio, as a state recipient of federal funding under Title IV-E of the Social Security Act, and the Child Welfare Act of 1980 (the "CWA"), to pay monetary benefits in the form of Foster Care Maintenance Payments on behalf of Ohio children removed from their homes by a state court order due to substantiated findings of neglect, abuse, or dependency and placed temporarily with an approved, substitute relative foster family home caregiver providing certain conditions are met. 42 U.S.C. §§ 671-672.

4.     The Foster Care Maintenance Payments Program mandates that "Each State with a plan approved under this part shall make foster care maintenance payments on behalf of each child who has been removed from the home of a relative" when:

> (1) a court removes the child from his/her home due to dependency, neglect, or abuse, and makes "a judicial determination to the effect that continuation in the home from which removed would be contrary to the welfare of the child and that reasonable efforts" were made by the state agency to prevent removal;
>
> (2) the state agency maintains "placement and care" responsibility for the child post-removal until a permanent living situation ("permanency") is achieved;
>
> (3) the state agency places the child with a "foster family home" that is

2

either licensed *or approved* by the state agency; and

(4) the child must qualify in his/her home of origin for Aid to Families with Dependent Children ("AFDC") (as in effect on July 16, 1996).

42 U.S.C. § 672 (emphasis added). Ohio has an approved state plan under Title IV-E of the Social Security Act (the "State Plan").

5.       Foster Care Maintenance Payments are intended to cover the cost of substitute care for dependent, neglected and abused children including the cost of providing food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel for a child's visitation with family, or other caretakers. 42 U.S.C. § 675(4). Ohio has a federally-approved "Foster Care Maintenance Payments Program" as part of its State Plan under 42 U.S.C § 672.

6.       The ODJFS, by and through their statewide policies and practices and the employees or agents under their responsibility, including county ODJFS offices or county public children's service agencies ("PCSAs"), approved the Relative Foster Parents as foster family homes, and removed the Relative Foster Children and placed them in their approved relative foster homes.

7.       The Relative Foster Children and Relative Foster Parents fulfill every condition of eligibility for Foster Care Maintenance Payments under 42 U.S.C. § 672.

8.       Ohio's duty to make Foster Care Maintenance Payments on behalf of eligible Relative Foster Children placed with approved Relative Foster Parents, like its duty to make Foster Care Maintenance Payments to children placed in licensed, non-relative foster homes, was judicially recognized in the Sixth Circuit three years ago. *D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017), *cert. denied* 138 S. Ct. 316 (2017). As explained by the Sixth Circuit in that decision, if the failure of the Secretary for the Cabinet for Health

3

and Family Services "to make maintenance payments turns on the distinction between relative and non-relative foster care providers, it plainly violates federal law." *Glisson*, 847 F.3d at 383.

9.     Yet Ohio continues to refuse to make Foster Care Maintenance Payments to approved Relative Foster Parents on behalf of eligible Relative Foster Children in violation of federal statutory law. Defendants' ongoing violation of federal law is a denial of federal rights to some of Ohio's most vulnerable citizens.

10.     Plaintiffs, for and on behalf of themselves and the putative Classes of similarly situated individuals they represent, seek to rectify Defendants' violations of federal law by securing declaratory and prospective injunctive relief from this Court ordering Defendants to make the Foster Care Maintenance Payments to which Plaintiffs and the Classes they represent are entitled under federal law.

11.     That Ohio families—including Ohio relative foster parents and the children they care for—are currently facing substantial economic hardship in the wake of the COVID-19 pandemic renders Defendants' ongoing violations of federal law even more urgent, harmful, and in need of redress now. The unemployment rate in Ohio has nearly doubled from pre-pandemic levels. One in three Ohio families report having difficulty paying household expenses in recent months and one in six Ohioans are behind on rent. And families with children have been especially hard hit. Nearly one in seven Ohio households caring for children report that those children are not getting enough to eat. The economic fallout of the pandemic has particularly harmed Black and minority households.

12.     Defendants' ongoing failure to pay required Foster Care Maintenance Payments also disproportionately harms Black foster children and Black relative foster

4

parents. In Ohio, children of color and specifically Black children, are disproportionately removed from their homes and placed in foster care, compared to White/Caucasian children. Black children also comprise a significant portion of the children placed in approved kinship homes, thus forcing Black children and their relative families to disproportionately carry the unfair burden of the state's failure to comply with federal law. Providing Foster Care Maintenance Payments to _all_ Relative Foster Parents on behalf of _all_ Relative Foster Children as required by law will redress this inequity in Defendants' support of relative foster children's placements.

## JURISDICTION AND VENUE

13.     This class action for declaratory and injunctive relief is brought pursuant to 42 U.S.C. § 1983 to redress the ongoing deprivation of rights guaranteed by federal statutory law.

14.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Named Plaintiffs H.C., Y.C., B.F., and T.E. reside in this District, including H.C. and Y.C. who reside in Hamilton County, and a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

## THE PARTIES

A.     **The Named Plaintiff Relative Foster Children and Next Friends H.C. and Y.C.**

5

16.     H.C. and Y.C. are siblings, ages one and three, who were removed from their home by ODJFS due to substantiation of parental child dependency, neglect, or abuse and placed in the out-of-home relative foster home of their paternal grandmother, Named Plaintiff Relative Foster Parent T.M. The children are in the temporary legal custody of ODJFS in Hamilton County, through the Hamilton County Job and Family Services ("Hamilton Family Services"). In April 2020, the Hamilton County Juvenile Court found that reasonable efforts had been made to prevent the children's removal, return to the home would be contrary to the children's best interest, and granted interim temporary legal custody of H.C. and Y.C. to Hamilton Family Services. Hamilton Family Services approved Named Plaintiff Relative Foster Parent T.M. as a relative foster parent and placed H.C. and Y.C. in out of home foster care in T.M.'s home. At the time of filing of this Complaint, the minor children H.C. and Y.C. remain placed with T.M. as their relative foster parent. T.M. has not been informed by anyone affiliated with ODJFS or Hamilton Family Services or any other state official, of the availability of Foster Care Maintenance Payments to support her as an approved relative foster parent. The minor children H.C. and Y.C. satisfy all applicable eligibility requirements for T.M. to receive Foster Care Maintenance Payments on their behalf under Title IV-E of the Social Security Act, 42 U.S.C. § 672, but Defendants have failed to make these payments as required. The minor Named Plaintiffs H.C. and Y.C. bring this case by and through T.M. as their adult Next Friend pursuant to Fed. R. Civ. P. 17(c).

**B.F.**

17.     B.F. is a two-year-old girl, who was removed from her home by ODJFS due to substantiation of parental child dependency, neglect, or abuse and placed in the out-

6

of-home relative foster home of her grandmother, Named Plaintiff Relative Foster Parent D.R. The child B.F. is in the temporary legal custody of ODJFS in Franklin County, through the Franklin County Department of Job and Family Services Children Services Division ("Franklin Children Services"). In April 2019, the Court of Common Pleas of Franklin County, Ohio, Division of Domestic Relations and Juvenile Branch, found that reasonable efforts had been made to prevent the child's removal, return to the home would be contrary to the child's best interest, and granted interim temporary legal custody of B.F. to Franklin Children Services. Franklin Children Services approved D.R. as a relative foster parent and placed B.F. in out of home foster care in D.R.'s home. At the time of filing of this Complaint, the minor child B.F. remains placed with D.R. as her relative foster parent. D.R. has not been informed by anyone affiliated with ODJFS, Franklin Children Services, or any other state official, of the availability of Foster Care Maintenance Payments to support her as an approved relative foster parent. The minor child B.F. satisfies all applicable eligibility requirements for D.R. to receive Foster Care Maintenance Payments on her behalf under Title IV-E of the Social Security Act, 42 U.S.C. § 672, but Defendants have failed to make these payments as required. The minor Named Plaintiff B.F. brings this case by and through D.R. as her adult Next Friend pursuant to F. R. Civ. P. 17(c).

**T.E.**

18.     T.E. is a one year-old boy, who was removed from his home due to substantiation of parental child dependency, neglect or abuse and placed in the out-of-home relative foster care of his maternal aunt and uncle, Named Plaintiff Relative Foster Parents K.T. and T.T. The child T.E. is in the temporary legal custody of ODJFS, through

the Cuyahoga County Division of Children and Family Services ("Cuyahoga Children Services"). In November 2019, the Court of Common Pleas, Juvenile Division of Cuyahoga County, Ohio, found that reasonable efforts had been made to prevent the child's removal, return to the home would be contrary to the child's best interest, and ordered T.E. into the emergency temporary legal custody of Cuyahoga Children Services. In December 2019, Cuyahoga Children Services approved K.T. and T.T. as relative foster parents and placed T.E. in out of home foster care in K.T. and T.T.'s home.

19.     In April 2020, the court dismissed this case because a dispositional hearing was not held within 90 days of the filing of the complaint alleging that the child was abused, neglected or dependent.

20.     ODJFS brought a second action before the same court that was heard later in April 2020. The court again found that reasonable efforts had been made to prevent the children's removal, return to the home would be contrary to the child's best interest and welfare, and committed T.E. into the emergency temporary care and custody of ODJFS.

21.     At the time of filing of this Complaint, the minor child T.E. remains placed with K.T. and T.T. as his relative foster parents. K.T. and T.T. have not been informed by anyone affiliated with ODJFS or Cuyahoga Children Services or any other state official, of the availability of Foster Care Maintenance Payments to support them as approved relative foster parents. The minor child T.E. satisfies all applicable eligibility requirements for K.T. and T.T. to receive Foster Care Maintenance Payments on his behalf under Title IV-E of the Social Security Act, 42 U.S.C. §672, but Defendants have failed to make them. The minor Named Plaintiff T.E. brings this case by and through K.T. and T.T. as his adult Next Friends pursuant to Fed. R. Civ. P. 17(c).

8

B.      **The Named Plaintiff Relative Foster Parents**

**T.M.**

22.     T.M. is an approved relative foster parent and Next Friend to her grandchildren, Named Plaintiffs H.C. and Y.C. T.M. is not receiving the required Foster Care Maintenance Payments for H.C. and Y.C.'s care and brings suit on her own behalf.

**D.R.**

23.     D.R. is an approved relative foster parent and Next Friend to her grandchild, Named Plaintiff B.F. D.R. is not receiving the required Foster Care Maintenance Payments for B.F.'s care and brings suit on her own behalf.

**K.T. and T.T.**

24.     K.T. and T.T. are approved relative foster parents and Next Friends to their nephew, Named Plaintiff T.E. K.T. and T.T. are not receiving the required Foster Care Maintenance Payments for T.E.'s care and bring suit on their own behalf.

C.      **The Defendants**

25.     Defendant Mike DeWine is the duly elected and functioning Governor of Ohio. Article III, Section 05, of the Ohio Constitution vests the supreme executive power of the state in the Governor. The ODJFS is an Ohio Executive Level Agency under Governor DeWine's control.

26.     Even before he was elected, Governor DeWine proclaimed that "the core of his policy agenda was going to be Ohio's children: educating them and keeping them safe."[2] Since taking office, Governor DeWine has taken numerous direct actions related

---

2 Phillip Morris, *Gov. Mike DeWine keeping a promise to protect Ohio's most vulnerable children*, Cleveland.com (Mar. 1, 2020), *available at* https://www.cleveland.com/metro/2020/03/governor-mike-dewine-works-to-keep-a-promise-regarding-ohios-most-vulnerable-children-phillip-morris.html.

to kinship care in Ohio. In the 2020-2021 Ohio budget, Governor DeWine pledged to more than double the State's investment in Ohio's children services, including more than $13 million related to kinship care.

27. On November 4, 2019, Governor DeWine issued an Executive Order creating, "by the virtue of the authority vested in [him] by the Constitution and laws of" Ohio, the Children Services Transformation Advisory Council (the "Children Services Council").[3] In its Initial Findings Report, the Children Services Council reported that Governor DeWine established the Children Services Council "[t]o improve outcomes for Ohio's children."[4] The Children Services Council committed to "[d]evelop strategies and recommendations to strengthen all areas of the system," including kinship care as a "key priorit[y]."[5] The Children Services Council further reported that "agencies increasingly depend on kinship care as a permanency option for children" and, therefore, many stakeholders "expressed the need for more support for kinship families," including financial assistance.[6]

28. In early February 2020, Governor DeWine stated that he would soon be releasing a proposal for "dealing with an issue related to approved relatives caring for children taken from their parents even when the relatives aren't licensed caregivers."[7] However, now ten months later, no such proposal had been released.

---

3 Mike DeWine, *Executive Order 2019-27D, Creating the Governor's Children Services Transformation Advisory Council* (Nov. 4, 2019), *available at* https://governor.ohio.gov/wps/wcm/connect/gov/e6a6132d-5664-4e8f-96b8-729ed16155c7/EO+2019-27D.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_M1HGGIK0N0JO00QO9DDDDM3000-e6a6132d-5664-4e8f-96b8-729ed16155c7-m-AT.BS.
4 Office of Children Services Transformation, *Initial Findings Report* at 3 (Feb. 5, 2020), *available at* https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/releases-children-services-transformation-initial-findings.
5 *Id.* at 7.
6 *Id.* at 11.
7 Associated Press, *Ohio governor has plan to address relatives caring for kids*, APNews.com (Feb. 4,

29.     In all his actions and omissions alleged herein, Defendant Governor DeWine is and was acting under color of state law and is joined in this action in his official capacity pursuant to OH Const. art. III, § 05, and *Ex parte Young*, 209 U.S. 123 (1908).

30.     Defendant Kimberly Hall is the duly appointed and functioning Director of the ODJFS. Pursuant to 51 Ohio Rev. Code. (O.R.C.) § 5101.02, Defendant Hall is the executive head of ODJFS, with all duties conferred on the various work units of the department by law or by order of the Director to be performed under such rules as she prescribes and shall be under her control.

31.     In her official capacity as Director of the ODJFS, Defendant Hall has the responsibility to promulgate, administer, comply with and enforce regulations, policies, and practices necessary to carry out the terms and requirements of federal spending programs, and to qualify Ohio for the receipt of federal funds under such programs, and to cooperate with other state and federal agencies for the proper administration of Agency programs including, *inter alia*, the administration of child welfare and protective services, foster care and adoption assistance services, family support services and related programs, and specifically including the federal foster care maintenance program set out in in Title IV-E and the CWA.

32.     ODJFS is the state agency statutorily mandated to administer federal payments for foster care made pursuant to Title IV-E and Director Hall has the authority and responsibility to adopt rules to implement this authority. O.R.C. § 5101.141(B). In all her actions and omissions alleged herein Defendant Hall is and was acting under color of

---

2020), *available at* https://apnews.com/article/805f7ebc4d6787b14af02554bc101806.

state law and is joined in this action in her official capacity pursuant to 51 O.R.C. §

5101.02, and *Ex parte Young*, 209 U.S. 123 (1908).

## FACTUAL ALLEGATIONS

**A. Plaintiffs are Eligible for Foster Care Maintenance Payments Under 42 U.S.C §
672.**

33.     Ohio has a federally-approved "Foster Care Maintenance Payments

Program" as part of its State Plan under 42 U.S.C § 672. 42 U.S.C § 672 requires Foster

Care Maintenance Payments on behalf of all eligible foster children, including relative

foster children who are removed from their homes and placed in approved relative foster

family homes. As the Sixth Circuit held in *Glisson*, "Indeed, once the Secretary approves

the state's plan, the state '*shall* make foster care maintenance payments.' 42 U.S.C. §

672(a)(1) (emphasis added). It isn't optional." *Glisson*, 847 F.3d at 379.

34.     As the state agency administering Ohio's federally-approved State Plan, the

ODJFS has the "placement and care" responsibility of the Named Plaintiff Foster Children.

42 U.S.C. § 672(a)(2)(B)(i); *see also* Ohio Admin. Code 5101:2-47-13. The ODJFS,

through its county ODJFS offices or county PCSAs, investigated and substantiated

allegations of neglect and abuse of all Named Plaintiff Foster Children and determined that

each of their health, welfare, or physical, mental, or emotional condition was subjected to

or threatened with real and substantial harm, and that there were no reasonable less drastic

alternatives to removal, pursuant to 42 U.S.C §672(a)(2)(A)(ii). ODJFS then physically

removed the Named Plaintiff Foster Children from their homes, and through its county

ODJFS offices or county PCSAs, identified their Relative Foster Parents and approved

their homes as foster family homes pursuant to 42 U.S.C. § 672(c)(1)(A)(i), placing Named

Plaintiff Relative Foster Children with them.

12

35.     Pursuant to 42 U.S.C. § 672(a)(2)(A)(ii), Courts of appropriate jurisdiction found that continuation of the Named Plaintiff Foster Children in their homes would have been contrary to their welfare, that reasonable efforts pursuant to 42 U.S.C. § 671(a)(15) had been made for the children and ordered the children into the custody of ODJFS through its county ODJFS offices or county PCSAs. Named Plaintiff Foster Children remain in these relative placements, and have not been affirmatively and permanently discharged from the care and responsibility of ODJFS. ODJFS continues to provide ongoing supervision, family support, and permanency planning services through its county offices, and retains legal responsibility for the children's care and placement. *See* Ohio Admin. Code 5101:2-47-13.

36.     The Named Plaintiff Foster Children meet all of the federal eligibility requirements to receive Foster Care Maintenance Payments for their benefit, including meeting the AFDC income eligibility requirements (i.e. the households from which they were removed were receiving or were eligible to receive AFDC benefits in or for the month of removal). 42 U.S.C. § 672(a)(3).

37.     42 U.S.C. §672 thus commands the state of Ohio, through the ODJFS, which is under the Defendants' supervision and control, to make these Foster Care Maintenance Payments to the Plaintiff Relative Foster Parents on behalf of the Named Plaintiff Foster Children under Ohio's federally-approved State Plan. *See, e.g.*, *Glisson*, 847 F.3d at 381.

**B. Defendants Refuse and Fail to Make Foster Care Maintenance Payments in Violation of Federal Law.**

38.     Defendants have failed, and continue to fail, to make the required Foster Care Maintenance Payments to the Plaintiff Relative Foster Parents on behalf of the Plaintiff Relative Foster Children, consistent with their state-wide pattern, practice, custom, and/or policy.

39.     Defendants' pattern, practice, custom, and/or policy of failing to make mandatory Foster Care Maintenance Payments is formalized in Ohio state policy. Per ODJFS policy, licensed foster parents "receive a daily per diem rate for each foster child placed in the home."[8] By contrast approved relative foster homes are directed to apply for Ohio Works First (OWF) benefits or other general public benefits programs.[9] This state-wide policy of not providing Foster Care Maintenance Payments to relative foster parents is also reflected in the policies of individual county agencies, including in information provided to kinship families.[10]

40.     The OWF child-only payment provides $302 per month for one child and $412 per month for two children, with decreasing support for each additional child. Such public benefits provide a fraction of the financial support provided by the Foster Care Maintenance Payments given to licensed foster parents. For example, Named Plaintiff K.T. receives $302 per month in OWF benefits to care for Named Plaintiff T.E. However, upon information and belief, in Cuyahoga County where she resides, Foster Care Maintenance

---

8 ODJFS, *Kinship Care Versus Foster Care* (June 06, 2019), *available at* https://fosterandadopt.jfs.ohio.gov/wps/portal/gov/ofc/kinship-care/resources-for-kinship-caregivers/kinship-vs-foster-care.
9 *Id.*
10 *See e.g.*, Cuyahoga County Division of Children and Family Services, *Cuyahoga County Continuum of Care Kinship, Foster and Adoptive Families*, *available at* http://www.jitcuyahoga.org/documents/2015ContinuumofCareforKinshipFosterandAdoptiveFamilies.pdf.

Payments provided to licensed foster parents range from $615 to $2,371 per month per child, with even higher payments available for children with special needs. Named Plaintiff T.M. receives only $406 per month in OWF benefits, to care for both Named Plaintiffs H.C. and Y.C. However, upon information and belief, in Hamilton County where she resides the statutory Foster Care Maintenance Payments provided to licensed foster parents range from $1,500 to $9,667 per month for two children, with even higher payments available for children with special needs.

41.     Defendants' admitted failure to make Foster Care Maintenance Payments to Plaintiffs and members of the putative Plaintiff Classes is well known by the Defendants and has been publicized across the state. Just this year, an article in the January 19, 2020 edition of the Columbus Dispatch, quoted the ODJFS: "The Ohio Department of Job and Family Services said in an email . . . that it continues 'to deliberate carefully on a plan to comply with the Glisson ruling' and is grateful for grandparents and other relatives who step up to care for children in need."[11]

42.     Other news articles have similarly reported on Defendants' ongoing failure to make these mandatory payments to Plaintiffs and members of the proposed Plaintiff classes.[12] U.S. Senator Sherrod Brown issued a press release on January 24, 2020, urging the Defendant Governor to make the required Foster Care Maintenance Payments: "This week, U.S. Sen. Sherrod Brown (D-OH) is urging Gov. [DeWine] to release court ordered

---

11 Rita Price, *Ohio slow to comply with court order to pay kinship caregivers*, The Columbus Dispatch (Jan. 19, 2020), *available at* https://www.dispatch.com/news/20200119/ohio-slow-to-comply-with-court-order-to-pay-kinship-caregivers.
12 *See e.g.*, Andrew Welsh-Huggins, *Ohio to give relatives caring for kids more help*, The Columbus Dispatch (Oct. 25, 2019), *available at* https://www.dispatch.com/news/20191025/ohio-to-give-relatives-caring-for-kids-more-help#:~:text=By%20Andrew%20Welsh-Huggins%20%2F%20The%20Associated%20Press%20Posted,removed%20from%20their%20homes%20a mid%20the%20opioid%20crisis (citing ODJFS Director Hall as indicating the state was still "designing a program," despite pressure from child advocates to follow the federal appeals court ruling).

15

funds made available for Ohio kinship caregivers by the Sixth Circuit Court's [2017] ruling in *D.O. v. Glisson*. The Court ruling made clear that 'approved' kinship caregivers must receive the same payments as 'licensed' foster parents. It has been three years since the court order and Ohio has yet to make these payments available to kinship caregivers."[13]

**C.** **Defendants' Ongoing Noncompliance with Federal Law is Harming Plaintiffs.**

43.     Defendants' persistent and ongoing denial of Plaintiffs' federal right to Foster Care Maintenance Payments is causing irreparable harm by, among other things, depriving Plaintiffs adequate resources to meet the children's basic needs, including, but not limited to, food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel for a child's visitation with family, or other caretakers, among other needs.

44.     The Defendants' continuing failure to comply with Plaintiffs' federal statutory rights to Foster Care Maintenance Payments is particularly harmful now, given the current economic harm and instability resulting from the COVID-19 pandemic. In Ohio, families are struggling and those caring for children are especially hard hit. The unemployment rate in Ohio remains at nearly double pre-pandemic levels.[14] Recent studies have documented that one in ten Ohioans currently don't have enough to eat.[15] This is even

---

13 *Brown Urges DeWine to Follow Court Order to Make Funds Available for Ohio Kinship Caregivers* (Jan. 24, 2020), *available at* https://www.brown.senate.gov/newsroom/press/release/brown-urges-dewine-to-follow-court-order-to-make-funds-available-for-ohio-kinship-caregivers-#:~:text=%E2%80%93%20This%20week%2C%20U.S.%20Sen.%20Sherrod%20Brown%20%28D-OH%29,receive%20the%20same%20payments%20as%20%E2%80%9Clicensed%E2%80%9D%20foster%20parents.

14 The unemployment rate in Ohio, which was at a low of 4.1% in January 2020 spiked when the COVID-19 pandemic hit, rising to 17.6% in April 2020 and remaining at 8.4% as of September 2020. *See e.g.*, US Bureau of Labor Statistics, *Unemployment Rate in Ohio*, Federal Reserve Bank of St. Louis (Oct. 20, 2020), *available at* https://fred.stlouisfed.org/series/OHUR.

15 Catherine Candisky, *Thousands of Ohioans struggle to put food on table during pandemic*, The Columbus Dispatch (Sept. 25, 2020), *available at* https://www.dispatch.com/story/news/2020/09/25/hunger-among-ohio-families-increasing-covid-19-pandemic-persists/3519850001/; Ctr. on Budget and Policy Priorities, *Tracking the COVID-19 Recession's*

higher for households caring for children, with 13% reporting that children in their households are not getting enough to eat. Nearly one in three Ohio families reported having difficulty paying household expenses.[16] As of October 2020, 16% of Ohioans reported not being caught up on rent.[17] National data indicates that families with children are struggling even more than the general population, with nearly a quarter of all families with children nationally reporting they were behind on rent payments.[18] As a Professor of Economic Development at Ohio State University recently described, "People's jobs and incomes have disappeared, and they aren't coming back until people's threat of dying from the virus dissipates."[19] Ohio families need financial support now more than ever.

45.    The economic fallout of the pandemic has particularly harmed Black and minority households. Nationally, one in four Black families reported being behind on rent and one in five Black families reported not having enough to eat.[20]

46.    Additionally, Defendants' ongoing failure to pay required Foster Care Maintenance Payments is disproportionately violating the rights of and harming Black relative foster children and their relative foster parents. In Ohio, children of color and specifically Black children, are disproportionately removed from their homes and placed in foster care, as compared to White/Caucasian children. While Black children represent

---

*Effects on Food, Housing, and Employment Hardships* (Nov. 13, 2020), *available at* https://www.cbpp.org/research/poverty-and-inequality/tracking-the-covid-19-recessions-effects-on-food-housing-and.

16 *Id*.

17 *Id*.

18 *Id*.

19 Michelle Conlin, *The great divergence: U.S. COVID-19 economy has delivered luxury houses for some, evictions for others*, Reuters (Oct. 31, 2020), *available at* https://www.reuters.com/article/uk-health-coronavirus-usa-inequality-ins/the-great-divergence-u-s-covid-19-economy-has-delivered-luxury-houses-for-some-evictions-for-others-idINKBN27G0H9.

20 Ctr. on Budget and Policy Priorities, *Tracking the COVID-19 Recession's Effects on Food, Housing, and Employment Hardships* (Nov. 13, 2020), *available at* https://www.cbpp.org/research/poverty-and-inequality/tracking-the-covid-19-recessions-effects-on-food-housing-and.

only 12% of Ohio's total population, they account for *30%* of children in foster care custody.[21] Black children also make up 24% of the children placed in kinship homes.[22] Accordingly, the unfair burden of inadequately supported kinship placements falls particularly heavily on Black relative foster children and their relative foster parents.

## CLASS ACTION ALLEGATIONS

### A.    The Relative Foster Child Class

47.    The Named Plaintiff Children H.C., Y.C., B.F., and T.E., through their Next Friends, bring this action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and a Class of similarly situated Relative Foster Children in the state of Ohio.

48.    The Relative Foster Child Class (or "RFC Class") is comprised of:

> "All Ohio children who are now, or will be in the future, temporarily placed in out-of-home foster care in the home of a relative approved by the ODJFS in dependency, neglect and abuse cases pursuant to Ohio Rev. Code 2151.31 and Ohio Admin. Code 5101:2-47-13, and who are otherwise eligible for Foster Care Maintenance Payments under Title IV-E of the Social Security Act."

49.    The RFC Class is sufficiently numerous to make joinder impractical. As of July 1, 2018, there were 4,141 Ohio foster children removed from their homes and placed with an approved relative caregiver.[23] Upon information and belief, a substantially similar number of RFC Class members exists today. Upon information and belief, none of these children is receiving Foster Care Maintenance Payments for their benefit as required by

---

21 Pub. Children Services Ass'n of Ohio, *PCSAO Factbook, 14th Edition* (2019), *available at* https://www.pcsao.org/pdf/factbook/2019/StateOfOhioProfile.pdf.
22 Data pull from AFCARS database, analysis performed by Children's Right's policy department (run for Sept. 30, 2019 data).
23 *See* Pub. Children Services Ass'n of Ohio, *PCSAO Factbook, 14th Edition* (2019), *available at* https://www.pcsao.org/pdf/factbook/2019/StateOfOhioProfile.pdf.

federal law. It would be impractical to join in an individual lawsuit thousands of similarly situated minor children housed across the state who, together, make up the RFC Class.

50.     The questions of fact and law raised by the Named Plaintiffs' claims are common to and typical of members of the RFC Class whom they seek to represent and predominate over any questions affecting individual members. Each Named Plaintiff and putative RFC Class member relies on the ODJFS for placement and is subject to the same systemic failure to provide Foster Care Maintenance Payments for their adequate care, safety, and well-being.

51.     The common questions of fact shared by the Named Plaintiffs and the members of the RFC Class include, among others, whether Defendants have a policy, pattern, custom and/or practice of failing to pay required Foster Care Maintenance Payments to Relative Foster Parents on behalf of Plaintiff Relative Foster Children.

52.     The common questions of law shared by the Named Plaintiffs and the members of the RFC Class include, but are not limited to: (1) whether Defendants are required by 42 U.S.C. § 672 to make payments for the benefit of members of the RFC Class; and (2) whether Defendants' policy, pattern, custom and/or or practice of failing to make required Foster Care Maintenance Payments for their benefit violates RFC Class members' federal statutory rights pursuant to 42 U.S.C. § 672.

53.     Defendants have acted or failed and/or refused to act, and continue to do so, on grounds generally applicable to Named Plaintiff Children H.C., Y.C., B.F., and T.E., and all members of the RFC Class, necessitating and rendering appropriate class-wide declaratory and injunctive relief. Fed. R. Civ. P. 23(b)(2).

54.     The Named Plaintiff Children are adequate representatives of the RFC Class. Their interests are aligned with, and are not antagonistic to, the interests of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the RFC Class.

55.     Each Named Plaintiff Foster Child appears by a Next Friend, who is also a Named Plaintiff Relative Foster Parent. As their relative foster parents, each Next Friend has sufficient knowledge of the children's situation to fairly and adequately represent the children's interests in this litigation as well as those of the RFC Class. Plaintiffs' counsel know of no conflicts between or among members of the putative class.

**B.     The Relative Foster Parent Class (the "RFP Class")**

56.     The Named Plaintiff Relative Foster Parents T.M., D.R., K.T., and T.T. bring this action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated relative foster parents.

57.     The Relative Foster Parent Class (or "RFP Class") is comprised of:

> "All relative foster caregivers in Ohio who are now, or will be, approved by the ODJFS to provide temporary substitute care to members of the RFC Class."

58.     The RFP Class is sufficiently numerous to make joinder impractical. As set forth in paragraph 49 above, as of July 1, 2018, there were 4,141 Ohio foster children removed from their homes and placed with an approved relative caregiver, meaning that relative foster parent caregivers number in the thousands. Upon information and belief, a substantially similar number of RFP Class members exists today. Upon information and belief, none of these relative foster parent caregivers is receiving Foster Care Maintenance Payments for the benefit of the relative foster children they are caring for as required by

federal law. It would be impractical to join in an individual lawsuit thousands of similarly situated approved relative foster parents who live across the state who, together, make up the RFP Class.

59.    The questions of fact and law raised by the Named Plaintiffs' claims are common to and typical of members of the RFP Class whom they seek to represent, and predominate over any questions affecting individual members. Each Named Plaintiff and putative RFP Class member relies on the ODJFS for placement of his or her relative foster children and is subject to the same systemic failures to provide Foster Care Maintenance Payments for the children's adequate care, safety, and well-being.

60.    The common questions of fact shared by the Named Plaintiffs and the members of the RFP Class include, among others, whether Defendants have a policy, pattern, custom and/or practice of failing to pay them Foster Care Maintenance Payments for the benefit of the RFC Class members for which they are caring.

61.    The common questions of law shared by the Named Plaintiffs and the members of the RFP Class include, but are not limited to: (1) whether Defendants are required by 42 U.S.C. § 672 to make payments to members of the RFP Class for the benefit of members of the RFC Class; and (2) whether Defendants' policy, pattern, custom and/or practice of failing to make Foster Care Maintenance Payments violates RFP Class members' federal statutory rights pursuant to 42 U.S.C. § 672.

62.    Defendants have acted or failed and/or refused to act, and continue to do so, on grounds generally applicable to members of the RFP Class, necessitating and rendering appropriate class-wide declaratory and injunctive relief. Fed. R. Civ. P. 23(b)(2).

63.     The Named Plaintiff Relative Foster Parents are adequate representatives of the RFP Class. Their interests are aligned with, and are not antagonistic to, the interests of the Class they seek to represent, and the interests of the Relative Foster Children for whom they serve as Next Friends, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the RFP Class. Plaintiffs' counsel know of no conflicts between or among members of the putative class.

64.     Plaintiffs are represented by:

a.  Jay R. Langenbahn of Lindhorst & Dreidame, Co., L.P.A, a law firm established in Cincinnati, Ohio. Jay R. Langenbahn has over forty years of experience as a trial lawyer and has tried over one hundred cases to verdict;

b.  Richard Dawahare, an attorney based in Lexington, Kentucky, who successfully sued on behalf of two children and their relative foster caregiver who were denied Foster Care Maintenance Payments, establishing the controlling precedent in the seminal Sixth Circuit case *D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017), *cert. denied* 138 S. Ct. 316 (2017);

c.  Attorneys associated with Children's Rights, a national non-profit organization, who have significant experience in complex class actions related to child welfare; and

d.  Attorneys from DLA Piper (US) LLP, a national and global law firm with lawyers located in dozens of locations around the United States and more than 40 countries around the world, who have experience with complex litigation, including class actions and federal court litigation.

Collectively, these attorneys have deep experience litigating complex class action lawsuits in federal court as well as specific experience representing foster children and relative caregivers and litigating those issues when required. Plaintiffs' attorneys have committed sufficient resources to investigate these claims and are well-suited to fairly and adequately represent the interests of the RFC and RFP classes.

22

## COUNT I
## __VIOLATIONS OF 42 U.S.C. § 672(a)__

65.    Paragraphs 1 – 64 above are incorporated by reference as if fully set forth herein.

66.    Plaintiff Relative Foster Children and members of the RFC Class and Plaintiff Relative Foster Parents and members of the RFP Class have the right to Foster Care Maintenance Payments under 42 U.S.C. § 672(a)(1).

67.    Defendants have a persistent and ongoing policy, pattern, custom and/or practice of failing to provide Foster Care Maintenance Payments to the Plaintiff Relative Foster Parents and members of the RFP Class on behalf of the Plaintiff Relative Foster Children and members of the RFC Class.

68.    The Plaintiff Relative Foster Children and members of the RFC Class are suffering, and will continue to suffer, irreparable harm as a result of Defendants' ongoing violations of federal law because they are being, and will continue to be, denied the benefit of their federal right to Foster Care Maintenance Payments essential for the out-of-home care, safety, and well-being of Relative Foster Children.

69.    Defendants, acting under the color of state law, are depriving Plaintiff Foster Children and members of the RFC Class and Plaintiff Relative Foster Parents and members of the RFP Class of their statutory rights under 42 U.S.C. § 672(a), in violation of 42 U.S.C. § 1983.

23

## INJUNCTIVE RELIEF ALLEGATIONS

70.     Defendants' violations are a continuation of their longstanding policy, pattern, custom and/or practice of failing to provide Foster Care Maintenance Payments to the Plaintiff Relative Foster Parents and members of the RFP Class, on behalf of the Plaintiff Relative Foster Children and members of the RFC Class, in violation of their clearly defined federal statutory rights. Due to Defendants' conduct, Plaintiff Foster Children and members of the RFC Class and Plaintiff Relative Foster Parents and members of the RFP Class are being denied vital Foster Care Maintenance Payments to which they are entitled.

71.     If not permanently enjoined by this Court, Defendants and their agents, representatives, and employees will continue their longstanding practice of denying Plaintiffs and members of the RFP and RFC Classes these Foster Care Maintenance Payments, thus depriving Plaintiff Foster Children and Plaintiff Relative Foster Parents of their federal rights in violation of federal statutory law.

72.     Thus, Defendants' actions are now causing and will continue to cause Plaintiffs and members of the RFC Class and RFP Class to suffer irreparable injury. Plaintiffs and Class members have no plain, speedy, and adequate remedy at law for such an injury.

73.     Accordingly, injunctive relief is appropriate pursuant to Fed. R. Civ. P. 65.

## DECLARATORY RELIEF ALLEGATIONS

74.     An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties. Pursuant to 42 U.S.C. § 1983,

Defendants' failure to obey federal law deprives Plaintiffs and members of the RFC Class and RFP Class of their rights under federal statutory law. Plaintiffs and Class members are informed and believe, and on that basis allege, that Defendants contend otherwise on all counts.

75.     Accordingly, declaratory relief is appropriate pursuant to Fed. R. Civ. P. 57.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Relative Foster Children and Plaintiff Relative Foster Parents respectfully ask this Court to enter orders and judgment for the following relief:

a.   To exercise personal and subject matter jurisdiction over this action;

b.   To Order this case to proceed as a class action and certify the Relative Foster Child Class (RFC Class) and the Relative Foster Parent Class (RFP Class), as defined herein, pursuant to the Fed. R. Civ. P. 23(a) and (b)(2);

c.   To enter a Protective Order by consent of the Parties, to keep confidential all information protected by Fed. R. Civ. P. 5.2(a) and otherwise individually-identifying information as to the Plaintiff Relative Foster Children and Plaintiff Relative Foster Parents;

d.   To enter a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, *et seq.,* and Fed. R. Civ. P. 57, declaring that the Defendants' failure or refusal to make or cause to be made Foster Care Maintenance Payments to the Plaintiff Relative Foster Parents on behalf of the Plaintiff Relative Foster Children constitutes a violation of the rights of Plaintiff Relative Foster Parents and Plaintiff Relative Foster Children under 42 U.S.C. § 672(a)(1);

e.  Preliminarily and permanently enjoining the Defendants, and their subordinates within the ODJFS, and all their agents, including county ODJFS offices or county public children's service agencies (PCSAs), pursuant to Fed. R. Civ. P. 65, from failing or refusing to make, or further delaying in making, Foster Care Maintenance Payments to Plaintiff Relative Foster Parents and members of the RFP Class on behalf of the Plaintiff Foster Children and members of the RFC Class.

f.  Awarding to the Plaintiffs their reasonable costs and expenses incurred in the prosecution of this action, including their reasonable attorneys' fees and costs pursuant to Fed. R. Civ. P. 54, 28 U.S.C. § 1920, and 42 U.S.C. §1988; and

g.  Granting such further legal and equitable relief as the Court may deem just, necessary, and proper to rectify the violations of Plaintiffs' and the Plaintiff Class members' rights.

DATED: November 19, 2020

Respectfully submitted,

By: /s/ Jay R. Langenbahn (# 0009460)
Jay R. Langenbahn
**LINDHORST & DREIDAME, CO., L.P.A**
Trial Attorney for Plaintiffs
312 Walnut Street Suite 3100
Cincinnati, OH 45202
513-421-6630
jlangenbahn@lindhorstlaw.com

/s/ Richard F. Dawahare. Ky. Bar #17273
Richard F. Dawahare**
**RICHARD F. DAWAHARE, ESQ.**
3948 Palomar Blvd.
Lexington, Kentucky 40513
859-608-0200
rfdr@msn.com

/s/ Eric Thompson
Eric Thompson**
Ira Lustbader**
Stephanie Persson**
**CHILDREN'S RIGHTS**
88 Pine Street, Suite 800
New York, NY 10005
212-683-2210
ethompson@childrensrights.org
ilustbader@childrensrights.org
spersson@childrensrights.org

/s/ Daniel Turinsky
Daniel Turinsky**
Jonathan M. Kinney**
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
212-335-4500
daniel.turinsky@us.dlapiper.com
jonathan.kinney@us.dlapiper.com

/s/ Erik J. Frick
Erik J. Frick**
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
617-406-6000
erik.frick@us.dlapiper.com

/s/ Julie A. Gryce
Julie A. Gryce**
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
619-699-2700
julie.gryce@us.dlapiper.com

**Pro hac vice* application pending

*Attorneys for Plaintiffs*