IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| H.C. & Y.C., et al., | : | |
| *Plaintiffs*, | : | Case No. 1:20-CV-944-MRB |
| v. | : | JUDGE MICHAEL R. BARRETT |
| GOVERNOR MIKE DeWINE, et al., | : | |
| *Defendants*. | : | |

**GOVERNOR DeWINE'S COMBINED MOTION TO DISMISS AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Now comes Governor DeWine and hereby moves this Court to dismiss the Complaint against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The reasons for this Motion are set forth in the attached Memorandum, which also serves as Governor DeWine's Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
ANDREW D. MCCARTNEY (0099853)\*
　\**Admitted pro hac vice*
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAttorneyGeneral.gov
Andrew.McCartney@OhioAttorneyGeneral.gov

*Counsel for Defendant State of Ohio Governor Mike DeWine*

**MEMORANDUM IN SUPPORT**

### INTRODUCTION

Plaintiffs are minor children and relative foster parents who bring claims against the Ohio Department of Job and Family Services ("ODJFS") Director Kimberly Hall and Governor DeWine, in their official capacities, alleging that ODJFS has denied or delayed payments to relative foster caregivers to which Plaintiffs say they are entitled. Plaintiffs seek an order enjoining Defendants from "failing or refusing to make, or further delaying in making" such payments to them. Compl. at Prayer for Relief, Doc. No. 7 at PageID 88.

Plaintiffs' claim for relief is now moot. Shortly after the filing of this lawsuit, the General Assembly enacted Amended Substitute Senate Bill 310 ("S.B. 310"), which is intended to provide kinship caregivers with $10.20 per day per child placed in their custody. Governor DeWine signed S.B. 310 on December 29, 2020, and the law went into effect that day. The enactment of S.B. 310 gives Plaintiffs the relief they seek, fundamentally alters this litigation, and moots Plaintiffs' claims as currently pleaded. Accordingly, this Court should dismiss Plaintiffs' Complaint. In the alternative, the Court should deny Plaintiffs' motion for preliminary injunction because S.B. 310 now provides for the payments Plaintiffs have requested.

### FACTUAL BACKGROUND

The following facts alleged in Plaintiffs' Complaint are taken as true only for purposes of Governor DeWine's motion to dismiss. *Means v. U.S. Conf. of Catholic Bishops*, 836 F.3d 643, 646 n.1 (6th Cir. 2016). Should the Court deny Governor DeWine's motion to dismiss, he will dispute many of the following allegations, including certain misstatements of Ohio law.

The named Plaintiffs are minor children and relative foster parents who bring a class-action lawsuit alleging they have unlawfully not received payments under the federal Foster Care Maintenance Payments Program, 42 U.S.C. § 672. Compl. ¶ 1, Doc. No. 7 at PageID 63.

1

According to Plaintiffs, States with federally approved programs must make maintenance payments to all eligible foster children. *Id*. ¶ 33 at PageID 74. This includes foster children in certified foster homes, as well as "relative foster children who are removed from their homes and placed in approved relative foster family homes." *Id*.

Plaintiffs state that "[t]he Ohio Department of Job and Family Services ('ODJFS') is the state agency responsible for the statewide administration and oversight of Ohio's child welfare system," and administers the State's federally approved Foster Care Maintenance Payments Program. *Id*. ¶¶ 2, 34, at PageID 64, 74. According to Plaintiffs, ODJFS is "the state agency statutorily mandated to administer federal payments for foster care made pursuant to Title IV-E and [ODJFS] Director Hall has the authority and responsibility to adopt rules to implement this authority." *Id*. ¶ 32 at PageID 73.

Plaintiffs allege that ODJFS has "placement and care" responsibility of the named plaintiff foster children. *Id*. ¶ 34 at PageID 74. According to Plaintiffs, ODJFS "approved the Relative Foster Parents as foster family homes, and removed the Relative Foster Children and placed them in their approved relative foster homes." *Id*. ¶ 6 at PageID 65; *see also id*. ¶ 34 at PageID 74. These children allegedly "remain in these relative placements, and have not been affirmatively and permanently discharged from the care and responsibility of ODJFS." *Id*. ¶ 35 at PageID 75. Accordingly, Plaintiffs allege that the named plaintiff foster children are eligible to receive payments under the Foster Care Maintenance Payments Program. *Id*. ¶ 36 at PageID 75.

But according to Plaintiffs, "Defendants have failed, and continue to fail, to make the required Foster Care Maintenance Payments" to Plaintiffs." *Id*. ¶ 38 at PageID 76. Plaintiffs allege that "[p]er ODJFS policy, licensed foster parents receive a daily per diam [sic] rate for each foster child placed in the home," while approved relative foster homes are "directed to apply for Ohio

Works First (OWF) benefits or other general public benefits programs." *Id.* ¶ 39 at PageID 76 (footnotes omitted) (internal quotation marks omitted).  Plaintiffs claim that this benefit amounts to a fraction of what they are entitled to under the federal Foster Care Maintenance Payments Program.  *Id.* ¶ 40 at PageID 76-77.  So, Plaintiffs brought this lawsuit, seeking a declaration that they are owed payments and an order enjoining Defendants from failing or refusing to make such payments.  *Id.* at Prayer for Relief, PageID 87-88.

In addition to suing the ODJFS Director for this relief, Plaintiffs have named Ohio Governor Mike DeWine as a defendant.  *See id.* ¶ 1 at PageID 63.  Plaintiffs allege that the Governor, before he was elected, stated that his policy agenda would focus on "educating [Ohio children] and keeping them safe."  *Id.* ¶ 26 at PageID 71 (internal quotation marks omitted).  In 2019, the Governor issued an executive order that created the Children Services Transformation Advisory Council to "improve outcomes for Ohio's children."  *Id.* ¶ 27 at PageID 72 (internal quotation marks omitted).  According to Plaintiffs, "[i]n early February 2020, Governor DeWine stated that he would soon be releasing a proposal for 'dealing with an issue related to approved relatives caring for children taken from their parents even when the relatives aren't licensed caregivers.'"  *Id.* ¶ 28 at PageID 72.  Plaintiffs state that this proposal has not yet been released.  *Id.*

Plaintiffs filed this lawsuit on November 19, 2020, and subsequently sought preliminary injunctive relief on December 3.  *See* Doc. Nos. 1, 21.  A few weeks later, the General Assembly passed S.B. 310, which established foster care payments for kinship caregivers and altered the foster-care legal landscape that undergirded Plaintiffs' Complaint.  *See* Ex. 1 at pp. 4-6.  On December 29, 2020, Governor DeWine signed S.B. 310 into law.

3

S.B. 310 creates a kinship support program coordinated and administered by ODJFS.  Ohio Rev. Code § 5101.881, Ex. 1 at p. 5.  The kinship support program provides financial payments to kinship caregivers who:

(A) Receive placement of a child who is in the temporary or permanent custody of a public children services agency or under the Title IV-E agency with legal responsibility for the care and placement of the child; and

(B) Do not have foster home certification under section 5103.03 of the Revised Code.

Ohio Rev. Code § 5101.884, Ex. 1 at p. 5.  Payments to kinship caregivers who qualify for the program generally are to be $10.20 per child per day.  Ohio Rev. Code § 5101.885, Ex. 1 at p. 5.

The payments are designed to bridge the gap between the placement of the child with kinship caregivers and the kinship caregivers' receipt of foster home certification.  Accordingly, kinship caregivers receive payments under the program for up to nine months after the placement of the child with the kinship caregivers.  Ohio Rev. Code § 5101.886, Ex. 1 at p. 5.  If the child "has been placed with the kinship caregiver as of the effective date" of S.B. 310, the kinship caregivers receive payments under the program for up to nine months after the effective date of the statute.  Ohio Rev. Code § 5101.886(A), Ex. 1 at p. 5.  Payments cease after nine months, when the kinship caregiver obtains foster home certification, or when the child's placement with the kinship caregiver ends.  Ohio Rev. Code § 5101.887, Ex. 1 at p. 5.

The General Assembly declared S.B. 310 an emergency, so it went into immediate effect.  S.B. 310 § 813.10, Ex. 1 at p. 128 ("This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. . . . Therefore, this act shall go into immediate effect.").

The day after Governor DeWine signed S.B. 310, he issued Executive Order 2020-43D.  *See* Ex. 2, Executive Order 2020-43D, *available at* https://governor.ohio.gov/wps/portal/gov/governor/media

4

/news-and-media/e xecutive-order-12302020. This order directed ODJFS to "establish a methodology to provide kinship caregivers, as defined by Ohio Revised Code Section 5101.85, with kinship support payments no later than June 1, 2021 and to issue eligible kinship caregivers support payments retroactively from the date the legislation is effective." *Id*.

The upshot of the changes described above is this: S.B. 310 and the executive order provide the relief Plaintiffs seek. The Complaint alleges that the next-friend plaintiffs have custody of minor children who are their relatives. Compl. ¶ 16, Doc. No. 7 at PageID 68 (H.C. and Y.C. have been placed in the care of their grandmother, T.M.); *id*. ¶ 17 at PageID 68-69 (B.F. has been placed in the care of her grandmother, D.R.); *id*. ¶ 18 at PageID 69-70 (T.E. has been placed in the care of his aunt and uncle, K.T. and T.T.). The Complaint further asserts that the next-friend plaintiffs have been approved as relative foster parents. *See id*. And finally, the Complaint does not allege that the next-friend plaintiffs have foster home certification. *See generally* Compl., Doc. No. 7. Accordingly, Plaintiffs may be eligible for the kinship support program created by S.B. 310, with payments to begin no later than June 1, 2021, retroactive to December 29, 2020.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE MOOT.

#### A. Legal standard.

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack "goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction," *i.e.*, the sufficiency of the pleading itself. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). But here, Defendant asserts a "factual attack" on subject matter jurisdiction because he challenges "the factual existence of subject matter jurisdiction." *Id*. On a factual attack, the allegations of the complaint are not presumed true and "the court is free to weigh the

5

evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie*, 15 F.3d at 598. Thus, on a factual attack, "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright*, 751 F.3d at 759-60.

### B. The enactment of S.B. 310 mooted Plaintiffs' claims.

"[T]he jurisdiction of federal courts is limited to the resolution of actual 'cases' and 'controversies.'" *Wedgewood Ltd. P'Ship I v. Twp. of Liberty*, 456 F. Supp. 2d 904, 923 (S.D. Ohio 2006); *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997); *NRA of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). The Supreme Court has repeatedly described mootness as "the doctrine of standing set in a time frame." *Wedgewood Ltd. P'Ship I*, 456 F. Supp. 2d at 923 n.22 (internal quotation marks omitted) (collecting cases). While standing is the "requisite personal interest that must exist at the commencement of the litigation," mootness means that the personal interest "must continue throughout [the litigation's] existence." *Id*. (internal quotation marks omitted) (collecting cases). Thus, "[i]f events occur during the pendency of the litigation that render a decision on the merits meaningless or cause a court not to be able to grant the requested relief, the case becomes moot." *Hirt v. Richardson*, 127 F. Supp. 2d 849, 853 (W.D. Mich. 2001) (citing *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986)).

"Among the events that may moot a claim is the legislative repeal or amendment of a challenged statute, which usually eliminates" the case or controversy. *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (internal quotation marks omitted); *see also Miller v. Benson*, 68 F.3d 163, 164 (7th Cir. 1995) (finding a case moot because the State enacted a new statute "minus the word" that had been the object of the plaintiffs' constitutional challenge). Likewise, the enactment of new legislation remedying the alleged constitutional violation "will presumptively moot the

6

case." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019). Unless the legislature clearly indicates that the remedial legislation is not genuine, legislative action ordinarily moots a case. *Id*.

On December 29, 2020, Governor DeWine signed S.B. 310, which creates a kinship support program that establishes payments to relative foster caregivers. Accordingly, Plaintiffs' request that Defendants be enjoined from "failing or refusing to make, or further delaying in making" payments to relative foster caregivers is moot. *See* Compl. at Prayer for Relief, Doc. No. 7 at PageID 88.

Admittedly, the kinship support program established by S.B. 310 ("kinship support") employs different terminology than Plaintiffs' Complaint ("foster care maintenance payments"). But the underlying payments achieve the same goals. The federal statutory scheme under which Plaintiffs demand payments defines "foster care maintenance payments" as "payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement." 42 U.S.C. § 675(4)(A). Payments under the kinship support program also meet this definition because they provide financial support to individuals caring for relative foster children.[1]

S.B. 310 provides what Plaintiffs seek: payments to relative foster caregivers. Nothing indicates that the General Assembly did not act genuinely or plans to repeal S.B. 310 after this

---

[1] Should Plaintiffs wish to argue that S.B. 310's kinship support program fails to satisfy the requirements of 42 U.S.C. § 672 or the Sixth Circuit's decision in *D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017), that challenge is for another day and another complaint. Any substantive challenges to S.B. 310 are outside Plaintiffs' Complaint and Motion for Preliminary Injunction.

7

litigation ends. Plaintiffs' Complaint is moot, and it should be dismissed. *See Hill*, 878 F.3d at 203-04.

## II. THE ELEVENTH AMENDMENT BARS THIS LAWSUIT.

Even if the Court ignores S.B. 310's effect on Plaintiffs' claims, Plaintiffs' Complaint against the Governor would still fail. First, the Eleventh Amendment bars Plaintiffs' lawsuit because it seeks to compel disbursement of money from the state treasury—a clear violation of the Eleventh Amendment that fails to come within *Ex parte Young*'s narrow exception for prospective non-monetary injunctive relief. Second, the Complaint fails to state a claim against the Governor, as it does not allege a sufficient connection between the Governor and the harm alleged.

### A. Plaintiffs' suit is an attempt to sue the State of Ohio for future monetary payments, which the Eleventh Amendment forbids.

Plaintiffs' claims must be dismissed under the Eleventh Amendment to the United States Constitution. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (quoting *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984)). Although Plaintiffs name state officials as defendants, their Complaint is a thinly veiled attempt to plead claims against the State of Ohio. *See, e.g.*, Compl. ¶ 3, Doc. No. 7 at PageID 64 (alleging that "[f]ederal law requires Ohio . . . to pay monetary benefits"). Such a suit is strictly barred by the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Additionally, the Eleventh Amendment bars suits that, at their core, seek the recovery of money from the State. Specifically, "a long line of Supreme Court decisions teaches that 'when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual

8

officials are nominal defendants.'" *Kelley v. Metro. Cty. Bd. of Educ.*, 836 F.2d 986, 988-89 (6th Cir. 1987) (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945)). Thus, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

Here, Plaintiffs' requested relief is "essentially one for the recovery of money from the state" and "[t]he 'absolute bar' of sovereign immunity therefore applies." *Kelley*, 836 F.2d at 989. Plaintiffs allege that "[f]ederal law requires Ohio . . . to pay monetary benefits." Compl. ¶ 3, Doc. No. 7 at PageID 64. And Plaintiffs seek a court order permanently enjoining the defendants "from failing or refusing to make, or further delaying in making" payments to them as relative foster caregivers. *Id*. at Prayer for Relief, PageID 88. A court order compelling the State to stop refraining from making payments is just a longer way to say a court order compelling the State to make payments. Plain and simple, Plaintiffs seek money from the State. Thus, the Eleventh Amendment bars Plaintiffs' suit because it is "in essence one for the recovery of money from the state." *Kelley*, 836 F.2d at 988-89 (quoting *Ford Motor Co.*, 323 U.S. at 464).

> **B.** ***Ex parte Young*'s limited exception to Eleventh Amendment immunity does not apply here because the "primary thrust" of Plaintiffs' lawsuit is the demand for money from the state treasury.**

The only possible exception to Eleventh Amendment immunity here is the *Ex parte Young* exception—and that exception does not apply. "In *Ex parte Young*, 209 U.S. 123, 159-60 (1908), the Supreme Court carved out an exception to the States' constitutional immunity from suit, one that permits federal courts to enjoin state officials from the future enforcement of state legislation that violates federal law." *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005). But *Ex parte Young* does not automatically apply whenever plaintiffs plead claims for prospective relief. It is the "substance of the legal claim, not its formal description" that dictates whether a claim falls within

9

the exception. *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008). That is, Plaintiffs cannot avoid the Eleventh Amendment bar "by phrasing their requests for monetary relief as requests for future payments." *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002). Instead, courts must determine, on a claim-by-claim basis, whether "the money or the non-monetary injunction is the primary thrust of the suit." *Id.* at 949. The primary thrust is monetary where the request has more than an "incidental" or "ancillary" effect on the State treasury. *Id.* at 949-50.

Here, Plaintiffs seek to obtain payments from the State of Ohio, and *Ex parte Young* does not apply. Plaintiffs state that they bring this lawsuit to "secur[e] declaratory and prospective injunctive relief from this Court ordering Defendants to make" payments to relative foster caregivers. Compl. ¶ 10, Doc. No. 7 at PageID 66. Plaintiffs believe they have an established federal right to these payments; the purpose of their lawsuit is to compel the State of Ohio to pay. *See id.* ¶¶ 8-10 at PageID 65-66; *id.* at Prayer for Relief, PageID 88. Simply put, "there is no other purpose underlying the requested 'injunctive' relief other than the recovery of cash that is the property of the state." *Barton*, 293 F.3d at 950. The Eleventh Amendment therefore bars this lawsuit. *See id.*

**C. Plaintiffs' suit against the Governor fails under both the Eleventh Amendment and federal pleading standards because there is no connection between the Governor and the harm alleged.**

Finally, Plaintiffs' suit against Ohio Governor Mike DeWine fails because Plaintiffs have not connected the Governor to the harm alleged.

The *Ex parte Young* exception allows federal courts to enjoin state officials from enforcing state legislation that violates federal law. *See Ex parte Young*, 209 U.S. at 157. But the exception applies only when there is some nexus between the official being sued, the injury suffered, and the remedy sought. *See Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415-18 (6th Cir. 1996). Put another way, state officials must have "some connection" with the alleged

10

federal law violations before they can be named as defendants in lawsuits to redress violations of federal law. *Ex parte Young*, 209 U.S. at 157. Without a sufficient connection, the state official is merely a stand-in for the State, making the State the real party in violation of the Eleventh Amendment.

Complaints lacking allegations of any nexus between the challenged statutes and the state officials' actions must be dismissed. For example, in *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 634-35 (6th Cir. 2013), the Sixth Circuit affirmed the district court's dismissal of the Michigan Attorney General because he had no connection to the harm alleged. There, the plaintiffs challenged the administrative denials of licenses permitting "millionaire parties" (gambling events) at the plaintiffs' adult entertainment club. *Id.* at 627. The Lottery Commissioner, who possessed the statutory power to issue the millionaire-party licenses and who allegedly adopted the challenged blanket policy with respect to the licenses, was an appropriate defendant. *Id.* at 634. By contrast, the complaint failed to allege "a sufficient connection between [the Attorney General] and the alleged unconstitutional acts to sustain their claims against him in his official capacity." *Id.* Specifically, the complaint contained no allegations showing that the Attorney General enforced the relevant statute, issued licenses under the statutory scheme, or participated in the challenged policy of denying certain categories of licenses. *Id.* Accordingly, the Attorney General was entitled to Eleventh Amendment immunity. *Id.*

Accepting all of Plaintiffs' material allegations as true and in the light most favorable to Plaintiffs, the Complaint simply does not contain any material allegations of a nexus between Governor DeWine and the injuries claimed. That is, Plaintiffs do not connect Governor DeWine to the denial or delay of payments allegedly owed to relative foster caregivers.

11

As to Governor DeWine, the Complaint includes only press statements and policy goals, not any allegations tying Governor DeWine to the failure to make maintenance payments or to the other harms Plaintiffs allege. Plaintiffs claim that the Governor, before he was elected, stated that his policy agenda would focus on "educating [Ohio children] and keeping them safe." Compl. ¶ 26, Doc. No. 7 at PageID 71. In 2019, the Governor issued an executive order that created the Children Services Transformation Advisory Council to "improve outcomes for Ohio's children." *Id.* ¶ 27 at PageID 72. According to Plaintiffs, "[i]n early February 2020, Governor DeWine stated that he would soon be releasing a proposal for 'dealing with an issue related to approved relatives caring for children taken from their parents even when the relatives aren't licensed caregivers.'" *Id.* ¶ 28 at PageID 72 (footnote omitted). Plaintiffs state that this proposal has not yet been released. *Id.* Notably absent is any allegation that Governor DeWine is at all connected to the allegedly unconstitutional failure to make foster care payments to relative caregivers.

Nor can Plaintiffs rely on Governor DeWine's role as the chief executive of the State of Ohio to supply the missing nexus between Governor DeWine and the alleged harm. Governor DeWine serves as Ohio's chief executive and oversees ODJFS, Director Hall, and other cabinet departments and officials. But the mere fact of Governor DeWine's authority does not suffice to state a claim against him. *See, e.g.*, *Deters*, 92 F.3d at 1416 ("General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." (quoting *1st Westco Corp. v. Sch. Dist.*, 6 F.3d 108, 113 (3d Cir. 1993))); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."). Were the law otherwise, "[g]overnors who influence state executive branch policies (which virtually all governors do) would always be subject to suit under

12

*Ex parte Young.* The exception would become the rule[.]" *Ball v. Kasich*, 244 F. Supp. 3d 662, 674 (S.D. Ohio 2017) (internal quotation marks omitted). Accordingly, as in *Top Flight*, Plaintiffs have not alleged a sufficient connection between Governor DeWine and "the alleged unconstitutional acts to sustain their claims against him." *Top Flight*, 729 F.3d at 634.

Plaintiffs need to plead more than policy goals or general executive authority—they need to allege a connection between the Governor and the harm alleged. Because they failed to do so, their Complaint is facially insufficient to sustain any claim against Governor DeWine.

For substantially the same reasons that it fails to show the requisite connection between Governor DeWine and the harm alleged under *Ex parte Young*, the Complaint fails to state any claim against the Governor under federal pleadings standards. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For the reasons discussed above, the Complaint fails to do so.

### III. PLAINTIFFS HAVE NOT DEMONSTRATED ENTITLEMENT TO A PRELIMINARY INJUNCTION.

To obtain a preliminary injunction, Plaintiffs must show: (1) they have strong likelihood of success on the merits; (2) they would suffer irreparable injury absent the injunction; (3) issuance of an injunction would not cause substantial harm to others; and (4) the public interest would be served by issuance of an injunction. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

#### A. Plaintiffs have no likelihood of success on the merits of their claims.

To be entitled to preliminary relief, a plaintiff must establish a strong likelihood of success on the merits. *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012). For the reasons discussed in Sections I and II above, Plaintiffs have no likelihood of success on their claims.

### B. Plaintiffs will not suffer any irreparable harm.

Plaintiffs cannot show that, without the injunction, they will suffer actual and imminent irreparable injury. To establish the irreparable harm element, Plaintiffs must show that, unless their motion is granted, they will suffer "actual and imminent" harm rather than harm that is "speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006); *see also D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) ("If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit."). The Court's role on a motion for preliminary injunction is to assess not whether a particular outcome or harm is possible or certain, but whether "irreparable injury is *likely* in the absence of an injunction." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). An injunction is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).

Typically, injuries cannot qualify as irreparable when monetary payments will redress them. Indeed, "[a]s a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm." *Performance Unlimited, Inc. v. Questar Publishers*, 52 F.3d 1373, 1382 (6th Cir. 1995) (internal quotation marks omitted). The Sixth Circuit has even held that a total loss of income, even "for some extended period of time[,] does not result in irreparable harm," because monetary damages at the conclusion of the litigation can compensate for the wrongly withheld income. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 579 (6th Cir. 2002); *see also JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 941 (W.D. Mich. 2009) ("But even temporary unemployment or other *total* loss of income, remediable later by payment of money, is not irreparable harm for this purpose."). Similarly,

14

losing insurance benefits and raiding alternative funding sources to satisfy expenses do not constitute irreparable harm. *See Doe v. Ronan*, No. 1:09-cv-243, 2009 U.S. Dist. LEXIS 146501, at *5-6 (S.D. Ohio Apr. 20, 2009) ("Loss of income, loss of insurance benefits and even the need to draw early from one's pension are damages that can be calculated and may be recovered by monetary damages."). Simply put, there is no irreparable harm when plaintiffs seek monetary payments that can be calculated and awarded at the end of the litigation.[2]

Here, Plaintiffs have not shown irreparable harm for two reasons: (1) the General Assembly has already created a program to administer the relief they seek, and (2) any harm suffered by Plaintiffs can be compensated at the conclusion of this lawsuit.

As set forth in Section I, *supra*, Governor DeWine signed S.B. 310 on December 29, 2020, which will result in daily per-child payments to qualifying kinship caregivers. To the extent Plaintiffs can show that they qualify for these payments, they may apply for them and receive them under that statute. There is no further harm, let alone irreparable harm, under the new statutory scheme. Moreover, Executive Order 2020-43D commands ODJFS to establish the payment mechanism no later than June 1, 2021, less than five months from now and merely four months

---

[2] Although suits seeking monetary payments typically preclude a finding of irreparable harm, impending "financial ruin can constitute irreparable harm." *Mount Clemens Inv. Grp., LLC v. Borman's Inc.*, No. 10-12679, 2010 U.S. Dist. LEXIS 108700, at *9 (E.D. Mich. Oct. 12, 2010). Under the financial-ruin theory, the Sixth Circuit has found that a plaintiff who presented evidence that its business would be destroyed or driven into insolvency demonstrated irreparable harm traceable to the defendant's failure to make royalty payments. *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381-82 (6th Cir. 1995).

Here, Plaintiffs do not appear to allege that they are at risk of financial ruin. Plaintiffs describe certain extracurricular activities, such as swimming and gymnastics lessons, that they cannot provide with their current means. *See, e.g.*, T.M. Decl. ¶ 8, Doc. No. 32 at PageID 664 (filed under seal); D.R. Decl. ¶ 10, Doc. No. 32 at PageID 671 (filed under seal). But these do not rise to the level of financial ruin under Sixth Circuit precedent. And with retroactive payments potentially available to them under S.B. 310, Plaintiffs do not, based on the record before the Court, stand at risk of financial ruin.

from the date scheduled for oral argument on Plaintiffs' motion for preliminary-injunctive relief. And because the executive order awards "support payments retroactively from the date the legislation is effective," Plaintiffs will be eligible to be made whole as of June of this year. Ex. 2, Executive Order 2020-43D.

But even if the Court overlooks S.B. 310 and the payments it provides, the fact remains that irreparable harm is absent when monetary payments will compensate for the asserted harm. *See Performance Unlimited*, 52 F.3d at 1382. And here, Plaintiffs ask this Court to order immediate payments from the State of Ohio to relative foster caregivers. Compl. at Prayer for Relief, Doc. No. 7 at PageID 88. This is an open demand for monetary relief. Under clear Sixth Circuit precedent, the loss of these maintenance payments during the pendency of the lawsuit is not irreparable harm. *See Overstreet*, 305 F.3d at 579 (wrongfully withheld income "may be recovered through monetary damages" and is not irreparable harm).

    **C.**    **The balance of harms weighs heavily against granting the requested injunctive relief, and the requested injunctive relief would harm the public interest.**

Preliminary relief in this case would harm the Defendants, the General Assembly, and the public interest. Members of the public elect the members of the General Assembly, which passes legislation and sets the State's appropriations. Governor DeWine either signs or vetoes the legislation passed by the General Assembly. Meanwhile, ODJFS administers the State's foster care maintenance payments and new kinship support program according to the statutory scheme established by the General Assembly.

These parties all acted within their spheres of authority in establishing the kinship support program through S.B. 310. Specifically, the General Assembly exercised its legislative prerogative in enacting S.B. 310, and Governor DeWine signed the bill shortly thereafter. In turn, S.B. 310 empowers ODJFS to adopt rules to administer the kinship-caregiver payments established

16

by that statute.  *See* Ohio Rev. Code § 5101.8811, Ex. 1 at p. 5.  The relief Plaintiffs seek here would usurp the authority of the General Assembly, the Governor, and ODJFS, which weighs against a preliminary injunction.  *See, e.g.*, *Libertarian Party of Ohio v. Husted*, No. 2:13-cv-953, 2014 U.S. Dist. LEXIS 49841, at *35 (S.D. Ohio Mar. 19, 2014) ("The Court does not intrude upon the Ohio legislature's prerogative lightly and finds that this factor weighs against granting an injunction.").  And finally, enforcement of a statute, like S.B. 310, passed through the ordinary democratic process, is in the public interest.  *Tri-County Wholesale Distribs. v. Wine Grp., Inc.*, 565 F. App'x 477, 483-84 (6th Cir. 2012).  Here, the balance of harms weighs against granting a preliminary injunction, and the Court should deny Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, this case is moot and, in any event, Governor DeWine enjoys Eleventh Amendment immunity from this action.  Therefore, the Complaint should be dismissed, and Plaintiffs' Motion for Preliminary Injunction should be denied.

                Respectfully submitted,

                DAVE YOST
                Ohio Attorney General

                */s/ Ann Yackshaw*
                ANN YACKSHAW (0090623)
                ANDREW D. MCCARTNEY (0099853)*
                   **Admitted pro hac vice*
                Assistant Attorneys General
                Constitutional Offices Section
                30 East Broad Street, 16th Floor
                Columbus, Ohio 43215
                Tel: 614-466-2872 | Fax: 614-728-7592
                 Ann.Yackshaw@OhioAttorneyGeneral.gov
                Andrew.McCartney@OhioAttorneyGeneral.gov

                *Counsel for Defendant State of Ohio*
                *Governor Mike DeWine*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of January, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General