UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
*Electronically filed*

| | |
|---|---|
| **H.C.** and **Y.C.**, minors by their Next Friend, T.M.; **B.F.**, a minor by her Next Friend, D.R.; and **T.E.**, a minor by his Next Friends, K.T. and T.T.; | ) ) ) ) ) |
| and **T.M.**; **D.R.**; **K.T.** and **T.T.**, | ) ) ) |
| Plaintiffs, | ) No. 1:20-cv-00944-MRB ) ) Judge Michael Barrett |
| v. | ) ) |
| **MIKE DeWINE**, in his official capacity as Governor of the state of Ohio; | ) ) ) |
| and | ) ) |
| **KIMBERLY HALL**, in her official capacity as Director of the Ohio Department of Jobs and Family Services, | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' REPLY TO DEFENDANT HALL'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

In their motion for a preliminary injunction, Plaintiffs and putative classes of Relative Foster Children and Relative Foster Parents present an overwhelming case for preliminary injunctive relief to stop Defendants, in their official capacities, from withholding from Plaintiffs full and equal Foster Care Maintenance Payments ("FCMPs") as required by federal law (42 U.S.C. sec. 672) and binding precedent established three years ago in *D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017), *cert. denied* 138 S. Ct. 316 (2017) ("*Glisson*").

In response, Defendants—including Director Kimberly Hall—do not contest *Glisson*'s mandate, but present instead a series of straw man arguments that demonstrably fail to undermine the case for preliminary injunctive relief. Most notably, Defendants rely on the future implementation of Ohio's newly enacted "kinship support program" (Senate Bill 310) to argue that Plaintiffs' federal statutory claim is moot, despite Plaintiffs remaining in the same unlawful and inequitable position now as when they filed their Complaint. Defendants' new kinship program and the Governor's related Executive Order fail to provide for approved relatives the required federal Foster Care Maintenance Payments program afforded non-related foster parents that Plaintiffs are entitled to, much less an equal one under *Glisson*. The new program replaces the grossly unequal state support already available to Plaintiffs with similarly grossly deficient state support, will be time-limited, and only available if and when state funds are available. On its face, Defendants' touted kinship support program—that will not even be implemented until June 2021—will continue to harmfully and unlawfully treat approved relative foster homes differently and unequally from licensed foster homes.

Defendants' reliance on Eleventh Amendment immunity is equally unavailing. An injunction ensuring that a public benefits program be prospectively managed in compliance with federal law, including requiring federally-mandated state payments to Plaintiffs as sought here, falls squarely within the *Ex parte Young* exception. Defendant Hall's challenge to Plaintiffs' standing also fails quickly because Defendants do not dispute and thus concede that at a minimum, Named Plaintiff child T.E. and his Named Plaintiff Relative Foster Parents K.T. and T.T. met all eligibility requirements for FCMPs upon filing and remain eligible today.

Every day Defendants continue their willful failure to comply with well-established federal law, they are irreparably harming Named Plaintiffs and all similarly-situated Relative Foster

Parents and Relative Foster Children. It is well-settled that children's developmental and familial needs are immediate and cannot be fully redressed by a delayed award of federally-required FCMPs that are explicitly meant to provide for the *current* basic needs of foster children in the State's care. Plaintiffs have a clearly established likelihood of success and have presented sufficient evidence to warrant immediate class-wide injunctive relief.

For all the reasons set forth in Plaintiffs' opening motion and supporting materials and set forth herein, Plaintiffs' motion for preliminary injunction should be granted in full.

## ARGUMENT

I.      **Plaintiffs Have Established An Extremely High Likelihood of Success on the Merits**

In this case, Plaintiffs have established that they are extremely likely to succeed on the merits of their federal claim. Indeed, the controlling legal issue in this case has already been decided. The Sixth Circuit held unequivocally in *Glisson*, that 42 U.S.C. Section 672 requires the same FCMPs to approved Relative Foster Parents as is provided to licensed foster parents. As stated by the Sixth Circuit "it isn't optional." *Glisson*, 847 F.3d at 379. It also remains undisputed that the state of Ohio, through Governor DeWine and Director Hall, does not provide approved Relative Foster Parents the same FCMPs available to licensed foster parents. Those are the undisputed facts.[1] Plaintiffs thus have an extremely high likelihood of success of the merits, far beyond the standard required for a preliminary injunction.

A.      **Plaintiffs Have Established They Will Suffer Irreparable Harm Absent An Injunction**

1.      Plaintiffs Did Not Delay Seeking Injunctive Relief

Defendant Hall erroneously asserts that Plaintiffs delayed in bringing this action for injunctive relief. The Sixth Circuit, however, has made it clear that the timing of an injunctive suit

---

[1] *See* Section C, p. 11 *infra*.

is contextual and that even an actual delay does not prejudice injunctive relief unless it is "unreasonable."[2] Here, as a threshold matter, Plaintiffs did not delay. While the legal requirement that Ohio must make equal FCMPs to approved relative foster parents was clearly established three years ago in *Glisson*, Named Plaintiffs were not approved Relative Foster Parents for their Relative Foster Children until more recently. (Class Action Complaint for Declaratory and Injunctive Relief ("Compl."), ECF No. 7 at 68-70, ¶¶ 16-18; Decl. of T.M. at ¶ 3, Decl. of D.R. at ¶ 3, and Decl. of K.T. at ¶ 3 [filed under seal].) Defendant Hall argues that Plaintiffs knew they were entitled to FCMPs when each of them became approved foster parents and waited between 8 and 20 months before acting. (Kimberly Hall's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Hall Opp."), ECF No. 35 at 726) But as their Declarations make clear, Plaintiffs were all redirected by Defendants' own officials away from FCMPs toward the Ohio Works First ("OWF") payments and/or told by Defendants' agents that they did not qualify for FCMPs. (Decl. of T.M. at ¶ 7, Decl. of D.R. at ¶¶ 6-9, and Decl. of K.T. at ¶ 8 [filed under seal].) In addition, there was an ongoing expectation that payments would be forthcoming given Governor DeWine's repeated acknowledgments of the need to comply with *Glisson* and his pronouncements that Ohio was in the process of developing relative caregiver benefits that would satisfy the state's federal obligations under Title IV-E. (Compl., ECF No. 7 at 71-72, ¶¶ 26-28.)

More importantly, Plaintiffs filed their motion for preliminary injunction within days after

---

[2] *See, e.g. York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 309 (6th Cir. 2019) (affirming preliminary injunction where delay was not unreasonable and did not weigh against a finding of irreparable harm); *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004) (finding that a six-month delay between a cause of action arising and seeking a preliminary injunction was not "sufficient grounds for a reversal of the district court's decision to grant the preliminary injunction"); *Grand Lodge, Fraternal Order of Police v. Labor Council Mich. Fraternal Order of Police, Inc.*, 38 F.3d 1215, 1994 WL 589569, at *2–3 (6th Cir. Oct. 24, 1994) (unpublished table opinion) (affirming preliminary injunction where two or three-year delay from the first occurrence of copyright infringement to the filing of the lawsuit was not unreasonable and did not mandate a ruling that irreparable harm did not exist).

the Governor's own Children's Services Transformation Advisory Council finally issued its Final Recommendations on November 20, 2020, acknowledging the lack of financial support to kinship foster families, but failing to commit to or even recommend FCMPs for approved kin.[3]

Accordingly, Plaintiffs filed this action and a motion for preliminary injunctive relief promptly, and certainly without any unreasonable delay.

      2.  <u>Plaintiffs Will Suffer Irreparable Harm From Defendants' Continuing Failure to Pay Foster Care Maintenance Payments</u>

Director Hall argues that Plaintiffs fail to show irreparable harm because the relief they seek is a simple monetary recovery that is compensable by a retroactive award of damages. (Hall Opp., ECF No. 35 at 726.) She is wrong on the law and the facts.

Plaintiffs are not seeking a monetary "recovery," but injunctive and declaratory relief requiring that Defendants operate a public benefits program in compliance with settled federal law. That this will have the ancillary effect of requiring payments to Plaintiffs does not convert Plaintiffs' lawsuit into one for recovery of money damages. (*See* Section B *infra*.) Indeed, even the "fact that plaintiffs may eventually receive full retroactive benefits does not require the conclusion that their injury is not irreparable." *Day v. Shalala*, 23 F.3d 1052, 1059 (6th Cir. 1994) ("plaintiffs have presented a colorable claim of irreparable harm" because" [d]enial of [disability] benefits [under the Social Security Act] result[ed] in a failure to receive income required to purchase the necessities of life, including medication, and cause[d] anxiety and distress which can aggravate existing conditions."); *Holden v. Heckler*, 584 F. Supp. 463, 483 (N.D. Ohio 1984) (no later lump sum payment can redress the forms of deprivation resulting from the denial of disability

---

[3] *See* Office of Children Services Transformation, *Final Recommendations of the Children Services Transformation Advisory Council* (Nov. 2020), at 15*, available at* https://content.govdelivery.com/attachments/OHOOD/2020/11/19/file_attachments/1606570/Transformation%20Final%20Report%20FINAL.pdf.

benefits); *see also Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Benefits Programs*, No. 2:13-CV-357, 2013 WL 3147956, at *13 (S.D. Ohio June 19, 2013), aff'd, 606 F. App'x 798 (6th Cir. 2015) (denial of health insurance benefits constitutes irreparable harm) (citing cases).[4]

The irreparable harm Plaintiffs are suffering and will continue to suffer absent preliminary injunctive relief most assuredly cannot be compensated by money damages at a later date. That Defendant Hall, Director of the state agency tasked with seeing to the welfare of Ohio's children and families, inexplicably ignores the presented facts that children's needs are particularly immediate and can never be fully compensated through a delayed award of mandated benefits that are specifically meant to meet current basic needs is particularly indefensible. (*See* 42 U.S.C. sec. 675(4)(A) (FCMPs are statutorily designed to cover the cost of such basic needs as "food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, . . . [and] reasonable travel to the child's home for visitation."); Compl., ECF No. 7 at 78-80, ¶ 43-46; Decl. of T.M at ¶ 8-9, Decl. of D.R. at ¶¶ 10-11, and Dec. K.T. ¶ 9 [filed under seal]; Plaintiffs' Memorandum of Points and Authorities in Support of Its Motion for Preliminary Injunction ("Plfs' Br."), ECF No. 21-1 at 215-221.)

Specifically, Director Hall fails to address *any* of the following:

- That by the state's own admission, "Many kinship caregivers are asked to take on the full-time care of youth with little notice and minimal information. They often receive no training, little or no financial support, and insufficient information regarding the youth they are being asked to care for;" *See* Office of Children Services Transformation, *Final Recommendations of the Children Services Transformation Advisory Council* (Nov. 2020), at 15*, available at* https://content.govdelivery.com/attachments/OHOOD/2020/11/19/file_attachments/1606570/Transformation%20Final%20Report%20FINAL.pdf.

- That providing FCMPs at a later date cannot retroactively improve the childhoods of Plaintiff Relative Foster Children, nor will it retroactively account for the

---

[4] The cases Defendant Hall cites are inapposite. *See*, *e.g.*, *111 Debt Acquisition LLC v. Six Ventures, Ltd.*, 2008 WL 3874630 (S.D. Ohio Aug. 15, 2008) (no irreparable harm in breach of contract action between corporate entities where economic loss due to default on a corporate loan of over twenty million dollars is easily calculable).

hardships faced by Plaintiff relative households as a result of the continued denial of such full support payments; (Plfs' Br., ECF No. 21-1 at 216.)

- That the absence of FCMPs means jeopardizing activities that are critically necessary for day-to-day living, development, and maintaining familial relationships, and that prepare children for life as adults; (Compl., ECF No. 7 at 78, ¶ 43; Plfs' Br., ECF No. 21-1 at 216.)

- That the continued denial of FCMPs risks some Relative Foster Parents being unable to provide kinship care at all, rendering it impossible for Plaintiff Foster Children to remain with the people they know and trust, and subjecting them to even more trauma from being removed from their relative's homes; (Plfs' Br., ECF No. 21-1 at 216.)

- That given the admission that Ohio already does not have enough kinship foster homes to meet the needs of children in foster care, the continued denial of full FCMPs perpetuates Ohio's inadequate array of housing for children in foster care, including the placement of foster children far from their homes and the overuse of institutional settings; (*Id.* at 221-222.)

- That the continued denial of FCMPs has the potential to force Plaintiff Relative Foster Parents to sacrifice their own health and well-being for the benefit of Plaintiff Relative Foster Children; (*Id.* at 217.)

- That the continued denial of FCMPs could also require choosing between providing adequate care to Plaintiff Relative Foster Children and falling behind on rent or mortgage payments or other sacrifices; (*Id.*)

- That the challenges imposed by Defendants' failure to pay FCMPs are exacerbated by the COVID-19 pandemic and its economic impact on Ohio; (Compl., ECF No. 7 at 66, 78-79, ¶¶ 11, 44, 45; Plfs' Br., ECF No. 21-1 at 218-19.)

- That Defendants' ongoing failure to pay required FCMPs is disproportionately harming Black Relative Foster Children and their Relative Foster Parents; (Compl., ECF No. 7 at 66-67, 79-80, ¶¶ 12, 45, 46; Plfs' Br., ECF No. 21-1 at 220.)

- And that the Named Plaintiffs have articulated in detail the challenges they face, and will continue to face, as a result of Defendants' continued failure to pay the statutorily mandated FCMPs, including but not limited to, the inability to enroll the Plaintiff Foster Children in activities recommended by therapists, obtain necessary child care, or even move into an appropriately-sized home. (Decl. of T.M. at ¶¶ 8-9, Decl. of D.R. at ¶¶ 10-11, and Decl. of K.T. at ¶ 9 [filed under seal]; Plfs' Br., ECF No. 21-1 at 219-220.)

A future award of legally-required FCMPs, even if retroactive, will not allow Plaintiffs or thousands of other relative foster families across Ohio to go back in time and provide children with, by way of limited example, therapy, tutoring, extracurricular activities recommended by therapists, or an appropriately-sized home during the children's formative years. Plaintiffs have clearly demonstrated irreparable harm.

      3.   <u>Defendant Hall's Argument that Preliminary Injunctions Can Only Maintain the Status Quo is Contrary to Law.</u>

Defendant Hall argues that the purpose of a preliminary injunction is exclusively to preserve the status quo, but ignores the law in this Circuit.[5] Rather, "[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Com. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (citing *Stenberg v. Cheker Oil Co.,* 573 F.2d 921, 925 (6th Cir. 1978)). As the Sixth Circuit explained in *Stenberg,* "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury." *Stenberg,* 573 F.2d at 925. That is precisely the circumstance here.

**B. Defendants Cannot Mischaracterize This Case As One For Money Damages To Avoid The Clear Application Of The *Ex Parte Young* Exception To Eleventh Amendment Immunity**

Over a century of federal jurisprudence establishes that "a federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law." *Price v. Medicaid Dir*., 838 F.3d 739, 746-47 (6th Cir. 2016)

---

[5] *See* Hall Opp., ECF No. 35 at 738, citing *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997). Notably, Defendants use the Third Circuit's language on this point out of context. In *Anderson*, the Court was deciding whether a strict interpretation of Fed. R. Civ. P 6(d)'s five-day notice requirement should apply in the context of a Preliminary Injunction, and found it should not because the hearing on a preliminary injunction was deciding whether to "preserve the status quo" rather than decide the issue on the merits.

(*citing Ex parte Young*, 209 U.S. 123, 159 (1908)). "More to the point here, <u>in suits concerning a state's payment of public benefits under federal law</u>, a federal court may enjoin the state's officers to comply with federal law by awarding those benefits in a certain way going forward . . . ." *Price*, 838 F.3d at 747 (emphasis added) (*citing Edelman v. Jordan*, 415 U.S. 651, 667-68 (1974)).

Plaintiffs simply seek to have this Court enjoin Defendants to comply with 42 U.S.C. Section 672 by prospectively awarding full and equal FCMPs in compliance with federal law. *See D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017) at 382-84 (state's failure to make FCMPs based on distinction between relative and non-relative foster care providers that "plainly violates federal law" justifies award of benefits pursuant to 42 U.S.C. Section 672). "That is the kind of prospective injunctive relief that *Ex parte Young* squarely permits." *Price*, 838 F.3d at 747 ("plaintiffs sought (and the district court ordered) prospective relief in the form of an injunction directing the defendants, Ohio's Medicaid administrators, to cease their practice of providing waiver-program benefits only for the period following an eligibility determination, in purported violation of 42 U.S.C. § 1396a(a)(34).").[6]

Defendants' attempts to mischaracterize the relief Plaintiffs seek as a "recovery of money from the state" barred by the Eleventh Amendment (Governor DeWine's Combined Motion to Dismiss and Memorandum in Opposition to Plaintiffs' Motion for A Preliminary Injunction ("DeWine Opp."), ECF No. 37 at 762-64; Hall Opp., ECF No. 35 at 728-30), are contrary to controlling precedent and the plain legal claim asserted here. An injunction ensuring that a public benefit program be prospectively managed in compliance with federal law that will perforce require state funding and payments to Plaintiffs falls squarely within the *Ex parte Young* exception. *Price*, 838 F.3d at 746-747; *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (the *Ex parte*

---

[6] That the Sixth Circuit ultimately reversed the district court is of no moment, as the reversal was exclusively based on its finding that there was no statutory violation. *Price*, 838 F.3d at 750 (rev'd on other grounds).

*Young* exception, "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury"); *Hurley v. Sec'y of Health & Human Servs.*, 676 F.2d 1095, 1097 (6th Cir. 1982) (restoration of AFDC benefit payments was not prevented by the Eleventh Amendment, but was the "permissible and often an inevitable consequence of the principle announced in *Ex parte Young*" (internal citations omitted)); *Smith v. Grady*, 960 F. Supp. 2d 735, 750–51 (S.D. Ohio 2013) (J. Barrett).[7] The "ancillary effect" on the state treasury that occurs in such cases is simply the "necessary consequence" of state officials being forced to comply with federal law. *Edelman*, 415 U.S. at 668; *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) ("a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury"); *Banas v. Dempsey*, 742 F.2d 277, 285 (6th Cir. 1984), *aff'd sub nom. Green v. Mansour*, 474 U.S. 64, 81 (1985).

Nor are Plaintiffs seeking a monetary recovery from the state disguised as prospective relief as Defendants suggest. (DeWine Opp., ECF No. 37 at 764; Hall Opp., ECF No. 35 at 730, n. 6). Defendants' reliance on *Barton v. Summers*, 293 F.3d 944 (6th Cir. 2002) and *Kelley v. Metro. Cty. Bd. of Educ. of Nashville & Davidson Cty., Tenn.*, 836 F.2d 986 (6th Cir. 1987) for this premise is entirely misplaced. In *Barton*, Plaintiffs sought an award of money damages from State Defendants due under a settlement agreement with tobacco manufacturers. *Barton*, 293 F.3d at 949 (Plaintiffs "couched their claim in prospective language" by arguing that the money requested were future installments to be paid by the companies and not yet state property). In *Kelley*, the

---

[7] *See generally, Coal. for Basic Human Needs v. King*, 654 F.2d 838, 842 (1st Cir. 1981) (finding no Eleventh Amendment bar to enjoining the state to pay AFDC benefits and collecting cases that "have required payment of money directly from a state treasury to bring about compliance with the requirements of a state-federal cooperative federalism program" similar to the state-federal Title IV-E program at issue here).

Plaintiff School Board sought to have the State pay the full cost of implementing a desegregation order entered against the Board 26 years earlier. The original unconstitutional conduct was not at issue, nor were the original plaintiffs whose rights had been violated even party to the proceedings. *Kelley*, 836 F.2d at 992 (Plaintiffs argued that the relief requested was prospective because it sought for the State to take on all future costs of implementing the decree rather than reimburse past expenses). Unlike here, the analysis in both cases of "whether the money or the non-monetary injunction [was] the primary thrust of the suit" turned on whether there was any violation of federal law at issue at all beyond Plaintiffs' attempts to seek a pay-out of State funds. *Barton*, 293 F.3d at 949.

In contrast, and consistent with the well-established *Ex parte Young* exception to Eleventh Amendment immunity, Plaintiffs here are seeking a prospective injunction compelling Defendants to manage a public benefits program in compliance with federal law. Any impact of such an injunction on state coffers is the "inevitable consequence" of state officers' compliance with their legal obligations. *Hurley*, 676 F.2d at 1097.

**C.  Enactment of Senate Bill 310 Does Not Moot Plaintiffs' Federal Statutory Claims**

Defendants do not contest that federal law compels the state to provide FCMPs to approved Relative Foster Parents on behalf of Relative Foster Children per its approved State Plan.[8] 42 U.S.C. Section 672 ("[e]ach State with a plan approved under this part *shall* make foster care maintenance payments on behalf of each child who has been removed from the home of a relative . . . [and placed with a] 'foster family home' [ ] that is licensed *or approved* by the State.") (emphasis added); *D.O. v. Glisson*, 847 F.3d 374, 383 (6th Cir. 2017), *cert. denied* 138 S.

---

[8] *See* ODJFS, *Agency Plan for Title IV-E of the Social Security Act Foster Care and Adoption Assistance*, OHIO.GOV (amended Jan. 11, 2018), *available at* https://jfs.ohio.gov/ocf/2018-Ohio-Title-IV-E-State-Plan-amended-1-30-18.stm.

Ct. 316 (2017) (approved relative foster parents have a privately enforceable federal statutory right to FCMPs and to the same FCMPs afforded licensed foster parents). Nor do Defendants contest that Ohio does not currently provide FCMPs, let alone equal FCMPs, to approved Relative Foster Parents, making available only approximately $300 per month in general state welfare funding, as Plaintiffs allege.[9] (Compl., ECF No. 7 at 76-77, ¶¶ 39-41.)

Instead, Defendants argue that after the November 2020 filing of this federal action, the creation of a "kinship support program" that may eventually provide a time-limited (nine months maximum) payment of approximately $300 per month ($10.20 per day) to approved kinship foster homes, to begin by June 2021 and contingent on state funding, provides "Plaintiffs with the relief they seek" and moots Plaintiffs' claims. (DeWine Opp., ECF No. 37 at 755, 759-762; Hall Opp., ECF No. 35 at 720, 730-734; Senate Bill 310 ("SB 310"), Ohio Rev. Code §§ 5101.881, 5101.884, and 5101.886; Executive Order 2020-43D ("EO") at 1.) Defendants' argument demonstrably fails on both the law and the facts.

### 1. Defendants Do Not Meet Their Heavy Burden To Demonstrate Mootness

"[A] case becomes moot only when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 530-31 (6th Cir. 2001). "The heavy burden of demonstrating mootness rests on the party claiming mootness." *Id.* at 531. The repeal or

---

[9] According to the Ohio Department of Jobs and Family Services ("ODJFS"), which is responsible for the implementation of child welfare programs, including the provision of services and payments to licensed and approved foster caregivers, licensed foster parents "receive a daily per diem rate [FCMPs] for each foster child placed in the home." ODJFS, *Kinship Care Versus Foster Care,* OHIO.GOV (June 6, 2019), *available at* https://fosterandadopt.jfs.ohio.gov/wps/portal/gov/ofc/kinship-care/resources-for-kinship-caregivers/kinship-vs-foster-care. Meanwhile, relative caregivers, who have been "approved" but not certified and licensed by the child welfare system, like Plaintiff Relative Foster Parents, are not provided FCMPs for eligible children placed in their home by Defendants, but are directed to apply for OWF benefits or other general public benefits programs. *Id. See* Compl., ECF No. 7 at 64, ¶ 2.

amendment of challenged legislation may moot a case if the court determines that the "statute has been sufficiently altered so as to present a substantially different controversy." *Hill v. Snyder,* 878 F.3d 193, 204 (6th Cir. 2017) (internal citations omitted).

Nowhere do Defendants expressly claim that the "kinship support program" created by SB 310 brings them into compliance with federal law, because they cannot. While SB 310 creates a new program, it does not amend or repeal Ohio's State Plan that implements Title IV-E and requires payments of FCMPs to all foster care providers, nor is it even remotely comparable. *See Hill v. Snyder,* 878 F.3d at 204 (if a challenged provision is repealed or amended the court must determine whether the statute has been sufficiently altered so as to present a substantially different controversy); *Cam I, Inc. v. Louisville/Jefferson Cty. Metro Gov't,* 460 F.3d 717, 720 (6th Cir. 2006) (where changes in the law do not remove the harm or threatened harm the case remains live and suitable for judicial determination). Defendants' alternative assertion that SB 310 kinship payments vaguely "achieve the same goals" as federal law, and thus somehow negate Plaintiffs' federal FCMP claims, is completely meritless, as further discussed below. (DeWine Opp., ECF No. 37 at 761; *see also* Hall Opp., ECF No. 35 at 731-732.)

Plaintiffs remain in the same unlawful and inequitable position now as when they filed their Complaint. The new program creates no federal FCMP program at all for approved relative foster homes, much less an equal one under *Glisson*. The new program offers grossly unequal, time-limited payments, to begin by June 2021, and only if or when funds are available. On its face, the new program continues to harmfully and unlawfully treat approved relative foster homes differently, because they involve relative caregivers. Nothing has changed in regard to Plaintiffs' claim.

2. **Ohio's New SB 310 Kinship Support Program Fails To Meet The Federal Statutory Requirements Of 42 U.S.C. Section 672**

Contrary to Defendants' mischaracterization, Plaintiffs are not seeking just any "payments to relative foster caregivers." (*See* DeWine Opp., ECF No. 37 at 761; Hall Opp., ECF No. 35 at 731.) Plaintiffs are seeking to enforce their recognized federal right to receive full and equal FCMPs pursuant to 42 U.S.C. Section 672 and the binding *Glisson* precedent. (Compl., ECF No. 7 at 63, 85-88, ¶¶ 1, 65-75 and Prayers for Relief.) SB 310 *may* provide minimal support beginning in June 2021, for only up to nine months to approved relative caregivers who have received placement of a child from a state Title IV-E agency with legal responsibility for the care and placement of that child, and who has not received foster home certification. Ohio Rev. Code §§ 5101.881, 5101.884, 5101.886. SB 310 on its face does not address, let alone moot, Plaintiffs' claims.

First, Defendants do not and cannot claim that SB 310 provides the actual relief Plaintiffs seek—the same required FCMPs for all levels of care that licensed foster parents receive pursuant to 42 U.S.C. Section 672. *See Glisson*, 847 F.3d at 383. Indeed, Defendants are well aware that SB 310 payments do not qualify as the FCMPs Plaintiffs seek. Just last week, in answering public questions and comments on the Kinship Support Program created under SB 310, ODJFS explicitly conceded that Ohio will not be claiming SB 310 payments for federal reimbursement under Title IV-E and 42 U.S.C. 672, acknowledging that the program "will be funded entirely through state [funds], not from IV-E or other federal funds."[10]

The reasons are obvious. SB 310 sets the amount of financial payments at only $10.20 per

---

[10] *See* Exhibit A, at p. 24, Jan. 15, 2021, email from Becky Murray, OJDFS, "Subject: CCN 8520 (Kinship Support Program) Clearance comments and responses" with attachment (answering questions and comments raised during the public clearance period on the draft Rule 5101:2-42-18.2 of the Ohio Administrative Code for the Kinship Support Program) ("KSP payments will be funded entirely through state GRF, not from IV-E or other federal funds.").

14

child, per day, subject to yearly cost of living adjustments, but without consideration of location, age, and special needs of the child. Ohio Rev. Code at § 5101.885.[11] By contrast, under 42 U.S.C. Section 672, and per ODJFS policy, licensed foster parents in Ohio currently receive FCMPs ranging from several hundred to several thousands of dollars per child, per month, based on the county they are in and the age and special needs of the child. *See*, *e.g*., Compl., ECF No. 7 at 76-77, ¶¶ 39-40 (Cuyahoga County FCMP rates range from $615 to $2,371 per month, per child; Hamilton County FCMP rates range from $1,500 to $9,667 per month, per child).

Plaintiffs thus do not receive FMCPs under the new program, let alone payments equal to licensed foster parents as required under *Glisson*. Approved relative foster parents are left to apply to purely state-funded programs like the OWF program for generally available welfare support of only approximately $300 per month, until similarly minimal substitute payments become available under the purely state-funded kinship support program. *See* ODJFS, *Kinship Care Versus Foster Care* (June 6, 2019), *available at* https://fosterandadopt.jfs.ohio.gov/wps/portal/gov/ofc/kinship-care/resources-for-kinship-caregivers/kinship-vs-foster-care; Compl., ECF No. 7 at 76-77, ¶ 40; Decl. of D.R. at ¶ 6 (receives $302 per month in OWF payments), Decl. of K.T. at ¶ 8 (receives $302 per month in OWF payments), and Decl. of T.M. at ¶ 7 (receives $406 per month in OWF payments for two children) [filed under seal]; ODJFS, *Kinship Support Program (KSP) Frequently Asked Questions*, *available at* https://jfs.ohio.gov/ocf/KinshipSupportProgramFAQ122020.stm (last updated Dec. 30, 2020) (kinship support program payments will replace other state aid payments such as OWF payments).

The continuing gross disparity between FCMPs for licensed foster parents and payments

---

[11] While the exact amount of FCMPs is not set in 42 U.S.C. Section 672, or the State Plan and implementing legislation, it is based on an analysis of numerous factors, including the location, age, and special needs of the child. *See* Ohio Admin. Code 5101:2-47-18 (e.g. licensed foster parents are eligible to receive supplemental difficulty of care reimbursement rates for children with special, exceptional, or intensive needs). *See also* 42 U.S.C. 675(4)(A).

to approved relative foster parents set by SB 310 is no secret. For example, as conceded by the Executive Director of Ohio's Belmont County Department of Jobs and Family Services only days after Defendants claimed in their filings that SB 310 provides the relief Plaintiffs seek: "Right now [payments under SB 310] will be $306 a month per child, which is clearly better than nothing. But compared to what we pay our foster parents, which is about $900 a month, we still have a ways to go . . . to support our kinship providers."[12]

Second, unlike FCMPs under 42 U.S.C. Section 672, SB 310 payments are expressly subject to appropriation, allocation, and availability of adequate state funding. Ohio Rev. Code §§ 5101.881, 5101.885 ("[k]inship support program payments . . . shall be ten dollars and twenty cents per child, per day, to the extent funds are available"). That eligibility for these "kinship support program" payments is contingent on sufficient Ohio appropriations is in direct contravention of 42 U.S.C. Section 672 FCMP requirements. *See Glisson,* 847 F. 3d at 383 (Kentucky's failure to make state "kinship program" payments to approved relative caregivers due to inadequate funding violates Sec. 672's federal FCMP requirement).

Third, SB 310 payments are time limited. SB 310 states that payments under the kinship program will stop when the "kinship caregiver" receives foster home certification and in no event continue longer than nine months. Ohio Rev. Code at §§ 5101.886, 5101.887. This contravenes 42 U.S.C. Section 672, which does not put time limits on FCMPs. 42 U.S.C. § 672(a)(1). In his Opposition brief, Defendant Governor DeWine concedes that "kindship support payments" are not the equivalent of FCMPs, stating: "[t]he [SB 310] payments are designed to bridge the gap between the placement of the child with kinship caregivers and the kinship caregivers' receipt of foster

---

[12] *"Kinship Households" now will receive some funding*, WTRF.COM (Jan. 12, 2021) (posting video of interview with Belmont County Director of the County Department of Job and Family Services), https://www.wtrf.com/belmont-county/kinship-households-now-will-receive-some-funding/?utm_medium=email&utm_source=govdelivery (last visited Jan. 19, 2021).

home certification. Accordingly, kinship caregivers receive payments under the program for up to nine months after the placement of the child with the kinship caregivers." (DeWine Opp., ECF No. 37 at 758.)

Finally, payments under SB310 may not begin until June 2021. *See* EO at 1. Meanwhile, irreparable harm to Plaintiffs continues as discussed below. Defendants fail to meet the heavy burden of demonstrating that SB 310 makes "it absolutely clear" that their violations of 42 U.S.C. Section 672 have been cured. *Cleveland Branch, N.A.A.C.P.,* 263 F.3d at 530. Indeed, nothing has changed—SB 310 is not a FCMP program, remains woefully inadequate and nowhere near equal to the FCMPs made to licensed non-kinship foster parents, is not even operational until months from now, and even then will be contingent on state funding. Plaintiffs' federal statutory claim is not moot.

### D. Plaintiffs Have Presented Sufficient Evidence of Entitlement to Foster Care Maintenance Payments and Irreparable Harm To Warrant Immediate Class-Wide Injunctive Relief

Defendants challenge to Plaintiffs' standing fails quickly because Defendants do not dispute and thus concede that at a minimum, Named Plaintiff child T.E. and his Named Plaintiff Relative Foster Parents K.T. and T.T. met all eligibility requirements for FCMPs upon filing and remain eligible today. While Plaintiffs dispute and reserve the right to further dispute arguments attacking the standing of other named plaintiffs as it may be relevant at class certification, for purposes of their likelihood of success on the merits to secure a preliminary injunction, Plaintiffs have sufficient standing.

Plaintiffs have submitted sworn Declarations with corresponding state court orders establishing that, at the time of filing, all Named Plaintiff children were in the custody of the state and in placement with their approved Named Plaintiff relative caregivers as required by Section

672(a) for FCMP eligibility. (Decl. of T.M. at ¶ 6; Decl. of D.R. at ¶ 5; Decl. of K.T. at ¶ 7, and attached exhibits [filed under seal].) Indeed, Defendants do not contest that they had "placement and care" responsibility for all the Named Plaintiff children and that they approved the Named Plaintiff relative caregivers for placement as alleged in the Complaint.[13] (Compl., ECF No. 7 at 74, ¶ 34, ECF; *see generally* Hall Opp., ECF No. 35 at 734-737.) Moreover, Defendant Hall submits a Declaration from a ODJFS Bureau Chief establishing after her review of state files, including Title IV-E eligibility determination information, that only Named Plaintiff children H.C. and Y.C. have been determined Title-IV-E ineligible, thus conceding eligibility for Named Plaintiff children T.E. and B.F.[14] (Ghering Declaration, ECF No. 35-1 at ¶¶ 7-8.) Plaintiffs thus present ample evidence to enter a preliminary injunction at least as to Named Plaintiff child T.E. and his Named Plaintiff relative caregivers K.T. and T.T. *See Ne. Ohio Coal. for Homeless, Local 1199 v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (Plaintiffs need not "prove [their] case in full" at the preliminary injunction stage) (internal quotation marks omitted); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1230 (6th Cir. 1985) (same).

---

[13] Defendants argue that B.F. and D.R. were subsequently mooted out of the case when D.R. obtained legal custody of B.F. in December 2020, and are no longer entitled to Foster Care Maintenance Payments. (Hall Opp., ECF No. 35 at 734-735.) Even assuming this is true for the purposes of the preliminary injunction motion, B.F. and D.R. may still serve as Named Plaintiffs for class claims. *See, e.g.*, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980) ("Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."); *Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 462 (2007) (class claims may not be moot if they are "capable of repetition, yet evading review"). Such Named Plaintiff standing and adequacy questions are appropriately dealt with at the class certification stage.

[14] As to Plaintiffs H.C. and Y.C.'s alleged Title IV-E ineligibility, it was apparently determined based on Defendants' initial delay in pursuing court custody for more than six months even though Defendants constructively removed the children from their mother's care and placed them with their grandmother T.M. in lieu of a non-relative foster care placement *See* T.M. Decl. at ¶¶ 3-6; Ghering Declaration, ECF No. 35-1 at ¶¶ 7-8. Principles of equitable tolling dictate that these Plaintiffs should not be deprived of their federal statutory benefits by Defendants' own inequitable conduct. *See generally*, *Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017) (equitable tolling appropriate "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control"); *Pairan v. Guardian Prot. Servs. of Ohio, LLC*, No. 1:20-CV-17, 2020 WL 3971602, at *4 (S.D. Ohio July 14, 2020), report and recommendation adopted, No. 1:20-CV-17, 2020 WL 5362049 (S.D. Ohio Sept. 8, 2020) (equitable tolling lies "'solely within the discretion of the trial court'" who may consider additional factors). Plaintiffs reserve the right to more fully brief Named Plaintiffs H.C., Y.C., and T.M.'s standing and adequacy to represent their respective classes at class certification.

What is more, Plaintiffs have sufficiently established a systemic deficiency that applies with equal force to all approved Relative Foster Parents and their Relative Foster Children warranting preliminary <u>class-wide</u> injunctive relief as requested. (*See* Compl., ECF No. 7 at 87, Prayer for Relief, subpart (e); Plaintiffs' Motion for Preliminary Injunction, ECF No. 21 at 193; [Proposed] Order.) That the proposed classes have not yet been certified does not limit the Court's equitable powers to immediately provide necessary relief to all putative class members who are among the state's most vulnerable citizens. *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F.Supp.3d 758, 766-67  (M.D. Tenn. 2015) (class-wide preliminary injunction granted where plaintiffs alleged a systemic Fourteenth Amendment deficiency that applied with equal force to all putative class members trapped in Defendants' probation system); *Lee v. Orr*, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013) ("The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons.") (internal quotation marks and citation omitted); *Hinkley v. Kelsey-Hayes Co.*, 866 F. Supp. 1034, 1044-46 (E.D. Mich. 1994) (preliminary injunction issued as to all putative class members before class certification where plaintiffs established they would suffer irreparable injury absent restoration of health care benefit plans under a collective bargaining agreement and similar harm would befall all similarly affected retired company employees); *Lapeer Cty. Med. Care Facility v. Michigan,* 765 F.Supp. 1291, 1301-02 (W.D. Mich. 1991) (state-wide preliminary injunction against a reduction in federally mandated Medicaid benefits granted, applying general rule that "'[p]rior to the Court's determination whether plaintiffs can maintain a class action, the Court should treat the action as a class suit'") (citation omitted).

## CONCLUSION

For the reasons set forth herein and in Plaintiffs' opening memorandum of law, Plaintiffs'

motion for a class-wide preliminary injunction should be granted.


DATED: January 20, 2021

Respectfully submitted,

By: /s/ Jay R. Langenbahn (# 0009460)
Jay R. Langenbahn
**LINDHORST & DREIDAME, CO., L.P.A**
Trial Attorney for Plaintiffs
312 Walnut Street Suite 3100
Cincinnati, OH 45202
513-421-6630
jlangenbahn@lindhorstlaw.com

/s/ Richard F. Dawahare. Ky. Bar #17273
Richard F. Dawahare**
**RICHARD F. DAWAHARE, ESQ.**
3948 Palomar Blvd.
Lexington, Kentucky 40513
859-608-0200
rfdr@msn.com

/s/ Eric Thompson
Eric Thompson**
Ira Lustbader**
Stephanie Persson**
**CHILDREN'S RIGHTS**
88 Pine Street, Suite 800
New York, NY 10005
212-683-2210
ethompson@childrensrights.org
ilustbader@childrensrights.org
spersson@childrensrights.org

/s/ Daniel Turinsky
Daniel Turinsky**
Jonathan M. Kinney**
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
212-335-4500
daniel.turinsky@us.dlapiper.com
jonathan.kinney@us.dlapiper.com

/s/ Erik J. Frick
Erik J. Frick**
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
617-406-6000
erik.frick@us.dlapiper.com

/s/ Julie A. Gryce
Julie A. Gryce*
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
619-699-2700
julie.gryce@us.dlapiper.com

*\*\*Pro hac vice*
*\*Pro hac vice* pending

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal to the following CM/ECF registrants:

Ann Yackshaw
Andrew D. McCartney
Assistant Attorneys General
**OFFICE OF THE ATTORNEY GENERAL**
**Constitutional Offices Section**
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872
Fax: 614-728-7592
ann.yackshaw@ohioattorneygeneral.gov
andrew.mcCartney@ohioattorneygeneral.gov

*Counsel for Defendant Gov. Mike DeWine*

Angela M. Sullivan
Theresa R. Dirisamer
Assistants Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
**Health and Human Services Section**
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
Tel: 614-752-6447
Fax: 866-429-9087
angela.sullivan@ohioattorneygeneral.gov
theresa.dirisamer@ohioattorneygeneral.gov

*Counsel for Defendant Kimberly Hall*

/s/ Jay R. Langenbahn
Jay R. Langenbahn

22