UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
*Electronically filed*

| | |
|---|---|
| **H.C.** and **Y.C.**, minors by their Next Friend, T.M.; **B.F.**, a minor by her Next Friend, D.R.; and **T.E.**, a minor by his Next Friends, K.T. and T.T.;  <br><br>and **T.M.**; **D.R.**; **K.T.** and **T.T.**, <br><br><br>Plaintiffs, <br><br>v. <br><br>**MIKE DeWINE**, in his official capacity as Governor of the state of Ohio; <br><br>and <br><br>**KIMBERLY HALL**, in her official capacity as Director of the Ohio Department of Jobs and Family Services, <br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) <br><br>No. 1:20-cv-00944-MRB <br><br>Judge Michael Barrett |

**PLAINTIFFS' OPPOSITION TO DEFENDANT DEWINE'S MOTION TO DISMISS AND REPLY TO HIS OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     Enactment of Senate Bill 310 Does Not Moot Plaintiffs' Federal Statutory Claims...........2

     A.     Defendants Fail to Meet Their Heavy Burden To Demonstrate Mootness .............3

     B.     Ohio's New SB 310 Kinship Support Program Fails to Meet the Federal
             Statutory Requirements of 42 U.S.C. Section 672....................................................5

II.    Defendants Cannot Mischaracterize This Case as One For Money Damages To
      Avoid The Clear Application Of The *Ex Parte Young* Exception To Eleventh
      Amendment Immunity .........................................................................................8

III.   Governor DeWine Is A Proper Defendant........................................................11

IV.   Plaintiffs' Motion for Preliminary Injunction Should Be Granted ....................14

     A.     Plaintiffs Have Established an Extremely High Likelihood of Success
             on the Merits ................................................................................................15

     B.     Plaintiffs Will Suffer Irreparable Harm from Defendants' Continuing
             Failure to Pay Foster Care Maintenance Payments .................................15

     C.     The Balance of Harms Weighs in Favor of Granting Injunctive Relief,
             the State Having No Legitimate Interest in Continuing to Deny Plaintiffs
             Federally Mandated Benefits ...................................................................19

     D.     Immediate Class-Wide Injunctive Relief Is Appropriate And Necessary ............19

CONCLUSION....................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ball by Burba v. Kasich*,
    244 F. Supp. 3d 662 (S.D. Ohio 2017) .................................................................13

*Banas v. Dempsey*,
    742 F.2d 277 (6th Cir. 1984), *aff'd sub nom. Green v. Mansour*,
    474 U.S. 64 (1985)...................................................................................................10

*Barton v. Summers*,
    293 F.3d 944 (6th Cir. 2002) .............................................................................10, 11

*Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefits Programs*,
    No. 2:13-CV-357, 2013 WL 3147956 (S.D. Ohio June 19, 2013),
    *aff'd*, 606 F. App'x 798 (6th Cir. 2015)...............................................................18

*Cam I, Inc. v. Louisville/Jefferson Cty. Metro Gov't*,
    460 F.3d (6th Cir. 2006) ..........................................................................................4

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
    92 F.3d 1412 (6th Cir. 1996) .................................................................................13

*Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio*,
    263 F.3d 513 (6th Cir. 2001) ................................................................................4, 8

*Coal. for Basic Human Needs v. King*,
    654 F.2d 838 (1st Cir. 1981)....................................................................................9

*D.O. v. Glisson*,
    847 F.3d 374 (6th Cir. 2017), *cert. denied* 138 S. Ct. 316 (2017)................... *passim*

*Day v. Shalala*,
    23 F.3d 1052 (6th Cir. 1994) .................................................................................17

*In re DeLorean Motor Co.*,
    755 F.2d 1223 (6th Cir. 1985) ...............................................................................14

*Edelman v. Jordan*,
    415 U.S. 651 (1974)...............................................................................................10

*In re Flint Water Cases*,
    960 F.3d 303 (6th Cir. 2020) .................................................................................13

*Hill v. Snyder*,
    878 F.3d 193 (6th Cir. 2017) ...................................................................................4

*Hinkley v. Kelsey-Hayes Co.*,
    866 F. Supp. 1034 (E.D. Mich. 1994) ...................................................................20

*Holden v. Heckler*,
    584 F. Supp. 463 (N.D. Ohio 1984) ......................................................................18

*Hurley v. Sec'y of Health & Human Servs.*,
    676 F.2d 1095 (6th Cir. 1982) .........................................................................9, 11

*JDC Mgmt., LLC v. Reich*,
    644 F. Supp. 2d 905 (W.D. Mich. 2009) ..............................................................18

*Jolivette v. Husted*,
    694 F.3d 760 (6th Cir. 2012) ...............................................................................14

*Kelley v. Metro. Cty. Bd. of Educ. of Nashville & Davidson Cty., Tenn.*,
    836 F.2d 986 (6th Cir. 1987) ...............................................................................10

*Lapeer Cty. Med. Care Facility v. Michigan*,
    765 F. Supp. 1291 (W.D. Mich. 1991) .................................................................20

*Lee v. Orr*,
    No. 13-cv-8719, 2013 WL 6490577 (N.D. Ill. Dec. 10, 2013) ..............................20

*Little Caesar Enters., Inc. v. Miramar Quick Service Rest. Corp.*,
    No. 19-1860, 2020 WL 4516289 (6th Cir. June 25, 2020) ....................................14

*Milliken v. Bradley*,
    433 U.S. 267 (1977) ...............................................................................................9

*Ne. Ohio Coal. for Homeless v. Husted*,
    696 F.3d 580 (6th Cir. 2012) ...............................................................................15

*Overstreet v. Lexington-Fayette Urban Cty. Gov't*,
    305 F.3d 566 (6th Cir. 2002) ...............................................................................18

*Price v. Medicaid Dir.*,
    838 F.3d 739 (6th Cir. 2016) ..............................................................................8, 9

*Rodriguez v. Providence Comty. Corr., Inc.*,
    155 F. Supp. 3d 758 (M.D. Tenn. 2015) ..............................................................20

*Russell v. Lundergan-Grimes*,
    784 F.3d 1037 (6th Cir. 2015) .............................................................................12

*S & M Brands, Inc. v. Cooper*,
    527 F.3d 500 (6th Cir. 2008) ...............................................................................10

*Smith v. Grady*,
　960 F. Supp. 2d 735 (S.D. Ohio 2013) (J. Barrett) ...................................................................9

*In re Techs. Int'l Holdings, Inc.*,
　234 B.R. 699 (Bankr. E.D. Ky. 1999) ...................................................................................19

*Ex parte Young*,
　209 U.S. 123 (1908) ................................................................................... *passim*

**Statutes**

42 U.S.C. § 672 ................................................................................... *passim*

42 U.S.C. § 675(4)(A) ...................................................................................6, 16

42 U.S.C. § 1396a(a)(34) ...................................................................................9

Ohio Admin. Code 5101:2-47-18 ...................................................................................6

Ohio Rev. Code §§ 5101.881, 5101.884-886 ...................................................................................3, 5, 6, 7

Senate Bill 310 ...................................................................................3, 7, 8

Social Security Act ...................................................................................9, 24

**Other Authorities**

Eleventh Amendment ................................................................................... *passim*

Fourteenth Amendment ...................................................................................20

Executive Order 2019-27D ...................................................................................12

Executive Order 2020-43D ................................................................................... *passim*

U.S. Constitution Article III ...................................................................................13

Plaintiffs submit this memorandum of law in opposition to Governor DeWine's motion to dismiss and in further support of their motion for a preliminary injunction.

## INTRODUCTION

In their motion for a preliminary injunction, Plaintiffs and putative classes of Relative Foster Children and Relative Foster Parents present an overwhelming case for preliminary injunctive relief to stop Defendants, in their official capacities, from withholding from Plaintiffs full and equal Foster Care Maintenance Payments ("FCMPs") as required by federal law (42 U.S.C. sec. 672) and binding precedent established three years ago in *D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017), *cert. denied* 138 S. Ct. 316 (2017) ("*Glisson*").

In response, Defendants—including Governor Mike DeWine—do not contest *Glisson*'s mandate, but present instead a series of straw man arguments that demonstrably fail to undermine the case for preliminary injunctive relief. Most notably, Defendants rely on the future implementation of Ohio's newly enacted "kinship support program" (Senate Bill 310) to argue that Plaintiffs' federal statutory claim is moot, despite Plaintiffs remaining in the same unlawful and inequitable position now as when they filed their Complaint. Defendants' new kinship program and the Governor's related Executive Order fail to provide for approved relatives the required federal Foster Care Maintenance Payments program afforded non-related foster parents that Plaintiffs are entitled to, much less an equal one under *Glisson*. The new program replaces the grossly unequal state support already available to Plaintiffs with similarly grossly deficient state support, will be time-limited, and only available if and when state funds are available. On its face, Defendants' touted kinship support program—that will not even be implemented until June 2021—will continue to harmfully and unlawfully treat approved relative foster homes differently and unequally from licensed foster homes.

Defendants' reliance on Eleventh Amendment immunity is equally unavailing. An

injunction ensuring that a public benefits program be prospectively managed in compliance with federal law, including requiring federally mandated state payments to Plaintiffs as sought here, falls squarely within the *Ex parte Young* exception.

Every day Defendants continue their willful failure to comply with well-established federal law, they are irreparably harming Named Plaintiffs, and all similarly situated Relative Foster Parents and Relative Foster Children. It is well-settled that children's developmental and familial needs are immediate and cannot be fully redressed by a delayed award of federally required FCMPs that are explicitly meant to provide for the *current* basic needs of foster children in the State's care. Plaintiffs have a clearly established likelihood of success and have presented sufficient evidence to warrant immediate class-wide injunctive relief.

For all the reasons set forth in Plaintiffs' opening motion and supporting materials and set forth herein, Defendant Governor DeWine's motion to dismiss should be denied, and Plaintiffs' motion for preliminary injunction should be granted in full.

## ARGUMENT

## I.     Enactment of Senate Bill 310 Does Not Moot Plaintiffs' Federal Statutory Claims

Defendants do not contest that federal law compels the state to provide FCMPs to approved Relative Foster Parents on behalf of Relative Foster Children per its approved State Plan.[1] 42 U.S.C. § 672(a)(1) ("[e]ach State with a plan approved under this part *shall* make foster care maintenance payments on behalf of each child who has been removed from the home of a relative . . . [and placed with a] 'foster family home' [ ] that is licensed *or approved* by the State.") (emphasis added); *D.O. v. Glisson*, 847 F.3d 374, 383 (6th Cir. 2017), *cert. denied* 138 S.

---

[1] *See* ODJFS, Agency Plan for Title IV-E of the Social Security Act Foster Care and Adoption Assistance, State of Ohio (amended Jan. 11, 2018), *available at* https://jfs.ohio.gov/ocf/2018-Ohio-Title-IV-E-State-Plan-amended-1-30-18.stm.

Ct. 316 (2017) (approved relative foster parents have a privately enforceable federal statutory right to FCMPs and to the same FCMPs afforded licensed foster parents). Nor do Defendants contest that Ohio does not currently provide FCMPs, let alone equal FCMPs, to approved Relative Foster Parents, making available only approximately $300 per month in general state welfare funding, as Plaintiffs allege.[2] (Class Action Complaint for Declaratory and Injunctive Relief ("Compl."), ECF No. 7 at 76-77, ¶¶ 39-41.)

Instead, Defendants argue that after the November 2020 filing of this federal action, the creation of a "kinship support program" that may eventually provide a time-limited (nine months maximum) payment of approximately $300 per month ($10.20 per day) to approved kinship foster homes, to begin by June 2021, contingent on state funding, provides "Plaintiffs with the relief they seek" and moots Plaintiffs' claims. (Governor DeWine's Combined Motion to Dismiss and Memorandum in Opposition to Plaintiffs' Motion For A Preliminary Injunction ("DeWine Opp."), ECF No. 37 at 755, 759-762; Kimberly Hall's Memorandum in Opposition to Plaintiffs' Motion For Preliminary Injunction ("Hall Opp."), ECF No. 35 at 720, 730-734; Senate Bill 310 ("SB 310"), Ohio Rev. Code §§ 5101.881, 5101.884, and 5101.886; Executive Order 2020-43D ("EO") at 1.) Defendants' argument demonstrably fails on both the law and the facts.

## A. Defendants Fail to Meet Their Heavy Burden To Demonstrate Mootness

"[A] case becomes moot only when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and "interim relief or events

---

[2] According to the Ohio Department of Jobs and Family Services ("ODJFS"), which is responsible for the implementation of child welfare programs, including the provision of services and payments to licensed and approved foster caregivers, licensed foster parents "receive a daily per diem rate [FCMPs] for each foster child placed in the home." ODJFS, *Kinship Care Versus Foster Care* (June 6, 2019), *available at* https://fosterandadopt.jfs.ohio.gov/wps/portal/gov/ofc/kinship-care/resources-for-kinship-caregivers/kinship-vs-foster-care. Meanwhile, relative caregivers, who have been "approved" but not certified and licensed by the child welfare system, like Plaintiff Relative Foster Parents, are not provided FCMPs for eligible children placed in their home by Defendants, but are directed to apply for Ohio Works First benefits or other general public benefits programs. *Id. See* Compl., ECF No. 7 at 64, ¶ 2.

have completely and irrevocably eradicated the effects of the alleged violation." *Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 530-31 (6th Cir. 2001). "The heavy burden on demonstrating mootness rests on the party claiming mootness." *Id.* at 531. The repeal or amendment of challenged legislation may moot a case if the court determines that the "statute has been sufficiently altered so as to present a substantially different controversy." *Hill v. Snyder,* 878 F.3d 193, 204 (6th Cir. 2017) (internal citations omitted).

Nowhere do Defendants expressly claim that the "kinship support program" created by SB 310 brings them into compliance with federal law, because they cannot. While SB 310 creates a new program, it does not amend or repeal Ohio's State Plan that implements Title IV-E and requires payments of FCMPs to all foster care providers, nor is it even remotely comparable. *See Hill v. Snyder,* 878 F.3d at 204 (if a challenged provision is repealed or amended the court must determine whether the statute has been sufficiently altered so as to present a substantially different controversy); *Cam I, Inc. v. Louisville/Jefferson Cty. Metro Gov't,* 460 F.3d 717, 720 (6th Cir. 2006) (where changes in the law do not remove the harm or threatened harm the case remains live and suitable for judicial determination). Defendants' alternative assertion that SB 310 kinship payments vaguely "achieve the same goals" as federal law, and thus somehow negate Plaintiffs' federal FCMP claims, is completely meritless, as further discussed below. (DeWine Opp., ECF No. 37 at 761; *see also* Hall Opp., ECF No. 35 at 731-732.)

Plaintiffs remain in the same unlawful and inequitable position now as when they filed their Complaint. The new program creates no federal FCMP program at all for approved relative foster homes, much less an equal one under *Glisson*. The new program offers grossly unequal, time-limited payments, to begin in June 2021, and only if or when funds are available. On its face, the new program continues to harmfully and unlawfully treat approved relative foster homes

differently, because they involve relative caregivers. Nothing has changed in regard to Plaintiffs' claim.

**B.    Ohio's New SB 310 Kinship Support Program Fails to Meet the Federal Statutory Requirements of 42 U.S.C. Section 672**

Contrary to Defendants' mischaracterization, Plaintiffs are not seeking just any "payments to relative foster caregivers." (*See* DeWine Opp., ECF No. 37 at 761; Hall Opp., ECF No. 35 at 731.) Plaintiffs are seeking to enforce their recognized federal right to receive full and equal FCMPs pursuant to 42 U.S.C. Section 672 and the binding *Glisson* precedent. (Compl., ECF No. 7 at 63, 85-88, ¶¶ 1, 65-75 and Prayers for Relief.) SB 310 *may* provide minimal support beginning in June 2021, for only up to nine months to approved relative caregivers who have received placement of a child from a state Title IV-E agency with legal responsibility for the care and placement of that child, and who has not received foster home certification. Ohio Rev. Code §§ 5101.881, 5101.884, 5101.886. Thus, SB 310 on its face does not address, let alone moot, Plaintiffs' claims.

First, Defendants do not and cannot claim that SB 310 provides the actual relief Plaintiffs seek—the same required FCMPs for all levels of care that licensed foster parents receive pursuant to 42 U.S.C. Section 672. *See Glisson*, 847 F.3d at 383. Indeed, Defendants are well aware that SB 310 payments do not qualify as the FCMPs Plaintiffs seek. Just last week, in answering public questions and comments on the Kinship Support Program created under SB 310, ODJFS explicitly conceded that Ohio will not be claiming SB 310 payments for federal reimbursement under Title IV-E and 42 U.S.C. 672, acknowledging that the program "will be funded entirely through state [funds], not from IV-E or other federal funds."[3]

---

[3] *See* Exhibit A, at p. 24, Jan. 15, 2021, email from Becky Murray, OJDFS, "Subject: CCN 8520 (Kinship Support Program) Clearance comments and responses" with attachment (answering questions and comments raised during the

The reasons are obvious. SB 310 sets the amount of financial payments at only $10.20 per child, per day, subject to yearly cost of living adjustments, but without consideration of location, age, and special needs of the child. Ohio Rev. Code at § 5101.885.[4] By contrast, under 42 U.S.C. Section 672, and per ODJFS policy, licensed foster parents in Ohio currently receive FCMPs ranging from several hundred to several thousands of dollars per child, per month, based on the county they are in and the age and special needs of the child. *See, e.g.*, Compl., ECF No. 7 at 76-77, ¶¶ 39-40 (Cuyahoga County FCMP rates range from $615 to $2,371 per month, per child; Hamilton County FCMP rates range from $1,500 to $9,667 per month, per child).

Plaintiffs thus do not receive FMCPs under the new program, let alone payments equal to licensed foster parents as required under *Glisson*. Approved relative foster parents are left to apply to purely state-funded programs like the Ohio Works First ("OWF") program for generally available welfare support of only approximately $300 per month, until similarly minimal substitute payments become available under the purely state-funded kinship support program. *See* ODJFS, *Kinship Care Versus Foster Care* (June 6, 2019), *available at* https://fosterandadopt.jfs.ohio.gov/wps/portal/gov/ofc/kinship-care/resources-for-kinship-caregivers/kinship-vs-foster-care; Compl., ECF No. 7 at 76-77, ¶ 40; Decl. of D.R. at ¶ 6 (receives $302 per month in OWF payments), Decl. of K.T. at ¶ 8 (receives $302 per month in OWF payments), and Decl. of T.M. at ¶ 7 (receives $406 per month in OWF payments for two children) [filed under seal]; ODJFS, *Kinship Support Program (KSP) Frequently Asked Questions*, *available at* https://jfs.ohio.gov/ocf/KinshipSupportProgramFAQ122020.stm (last updated Dec. 30, 2020)

---

public clearance period on the draft Rule 5101:2-42-18.2 of the Ohio Administrative Code for the Kinship Support Program) ("KSP payments will be funded entirely through state GRF, not from IV-E or other federal funds.").

[4] While the exact amount of FCMPs is not set in 42 U.S.C. Section 672, or the State Plan and implementing legislation, it is based on an analysis of numerous factors, including the location, age, and special needs of the child. *See* Ohio Admin. Code 5101:2-47-18 (e.g. licensed foster parents are eligible to receive supplemental difficulty of care reimbursement rates for children with special, exceptional, or intensive needs). *See also* 42 U.S.C. § 675(4)(A).

(kinship support program payments will replace other state aid payments such as OWF payments).

The continuing gross disparity between FCMPs for licensed foster parents and payments to approved relative foster parents set by SB 310 is no secret. For example, as conceded by the Executive Director of Ohio's Belmont County Department of Jobs and Family Services only days after Defendants claimed in their filings that SB 310 provides the relief Plaintiffs seek: "Right now [payments under SB 310] will be $306 a month per child, which is clearly better than nothing. But compared to what we pay our foster parents, which is about $900 a month, we still have a ways to go . . . to support our kinship providers."[5]

Second, unlike FCMPs under 42 U.S.C. Section 672, SB 310 payments are expressly subject to appropriation, allocation, and availability of adequate state funding. Ohio Rev. Code §§ 5101.881, 5101.885 ("[k]inship support program payments . . . shall be ten dollars and twenty cents per child, per day, to the extent funds are available"). That eligibility for these "kinship support program" payments is contingent on sufficient Ohio appropriations is in direct contravention of 42 U.S.C. Section 672 FCMP requirements. *See Glisson,* 847 F. 3d at 383 (Kentucky's failure to make state "kinship program" payments to approved relative caregivers due to inadequate funding violates Sec. 672's federal FCMP requirement).

Third, SB 310 payments are time limited. SB 310 states that payments under the kinship program will stop when the "kinship caregiver" receives foster home certification and in no event continue longer than nine months. Ohio Rev. Code at §§ 5101.886, 5101.887. This contravenes 42 U.S.C. Section 672, which does not put time limits on FCMPs. 42 U.S.C. § 672(a)(1). In his Opposition brief, Defendant Governor DeWine concedes that "kindship support payments" are not

---

[5] *"Kinship Households" now will receive some funding*, WTRF.COM (Jan. 12, 2021) (posting video of interview with Belmont County Director of the County Department of Job and Family Services), https://www.wtrf.com/belmont-county/kinship-households-now-will-receive-some-funding/?utm_medium=email&utm_source=govdelivery (last visited Jan. 19, 2021).

the equivalent of FCMPs, stating: "[t]he [SB 310] payments are designed to bridge the gap between the placement of the child with kinship caregivers and the kinship caregivers' receipt of foster home certification. Accordingly, kinship caregivers receive payments under the program for up to nine months after the placement of the child with the kinship caregivers." (DeWine Opp., ECF No. 37 at 758.)

Finally, payments under SB310 may not begin until June 2021. *See* EO at 1. Meanwhile, irreparable harm to Plaintiffs continues as discussed below. Defendants fail to meet the heavy burden of demonstrating that SB 310 makes "it absolutely clear" that their violations of 42 U.S.C. Section 672 have been cured. *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 530. Indeed, nothing has changed—SB 310 is not a FCMP program, remains woefully inadequate and nowhere near equal to the FCMPs made to licensed non-kinship foster parents, is not even operational until months from now, and even then will be contingent on state funding. Plaintiffs' federal statutory claim is not moot.

## II. Defendants Cannot Mischaracterize This Case as One For Money Damages To Avoid The Clear Application Of The *Ex Parte Young* Exception To Eleventh Amendment Immunity

Over a century of federal jurisprudence establishes that "a federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law." *Price v. Medicaid Dir.*, 838 F.3d 739, 746-47 (6th Cir. 2016) (*citing Ex parte Young*, 209 U.S. 123, 159 (1908)). "More to the point here, in suits concerning a state's payment of public benefits under federal law, a federal court may enjoin the state's officers to comply with federal law by awarding those benefits in a certain way going forward . . . ." *Price*, 838 F.3d at 747 (emphasis added) (*citing Edelman v. Jordan*, 415 U.S. 651, 667-68 (1974)).

Plaintiffs simply seek to have this Court enjoin Defendants to comply with 42 U.S.C. 672 by prospectively awarding full and equal FCMPs in compliance with federal law. *See D.O. v.*

*Glisson*, 847 F.3d 374 (6th Cir. 2017) at 382-84 (state's failure to make FCMPs based on distinction between relative and non-relative foster care providers that "plainly violates federal law" justifies award of benefits pursuant to 42 U.S.C. sec. 672). "That is the kind of prospective injunctive relief that *Ex parte Young* squarely permits." *Price*, 838 F.3d at 747 ("plaintiffs sought (and the district court ordered) prospective relief in the form of an injunction directing the defendants, Ohio's Medicaid administrators, to cease their practice of providing waiver-program benefits only for the period following an eligibility determination, in purported violation of 42 U.S.C. § 1396a(a)(34).").[6]

Defendants' attempts to mischaracterize the relief Plaintiffs seek as a "recovery of money from the state" barred by the Eleventh Amendment (DeWine Opp., ECF No. 37 at 762-764, ECF No. 37; Hall Opp. ECF No. 35 at 728-30), are contrary to controlling precedent and the plain legal claim asserted here. An injunction ensuring that a public benefit program be prospectively managed in compliance with federal law that will perforce require state funding and payments to Plaintiffs falls squarely within the *Ex parte Young* exception. *Price*, 838 F.3d at 746-747; *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (the *Ex parte Young* exception, "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury"); *Hurley v. Sec'y of Health & Human Servs.*, 676 F.2d 1095, 1097 (6th Cir. 1982) (restoration of AFDC benefit payments was not prevented by the Eleventh Amendment, but was the "permissible and often an inevitable consequence of the principle announced in *Ex parte Young*") (internal citations omitted); *Smith v. Grady*, 960 F. Supp. 2d 735, 750–51 (S.D. Ohio 2013) (J. Barrett).[7] The "ancillary effect" on the state treasury that

---

[6] That the Sixth Circuit ultimately reversed the district court is of no moment, as the reversal was exclusively based on its finding that there was no statutory violation. *Price*, 838 F.3d at 750 (rev'd on other grounds).
[7] *See generally, Coal. for Basic Human Needs v. King*, 654 F.2d 838, 842 (1st Cir. 1981) (finding no Eleventh

occurs in such cases is simply the "necessary consequence" of state officials being forced to comply with federal law. *Edelman*, 415 U.S. at 668; *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) ("a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury"); *Banas v. Dempsey*, 742 F.2d 277, 285 (6th Cir. 1984), *aff'd sub nom. Green v. Mansour*, 474 U.S. 64, 81 (1985).

Nor are Plaintiffs seeking a monetary recovery from the state disguised as prospective relief as Defendants suggest. (DeWine Opp., ECF No. 37 at 764; Hall Opp., ECF No. 35 at 730, n. 6.) Defendants' reliance on *Barton v. Summers*, 293 F.3d 944 (6th Cir. 2002) and *Kelley v. Metro. Cty. Bd. of Educ. of Nashville & Davidson Cty., Tenn*., 836 F.2d 986 (6th Cir. 1987) for this premise is entirely misplaced. In *Barton*, Plaintiffs sought an award of money damages from State Defendants due under a settlement agreement with tobacco manufacturers. *Barton*, 293 F.3d at 949 (Plaintiffs "couched their claim in prospective language" by arguing that the money requested were future installments to be paid by the companies and not yet state property). In *Kelley*, the Plaintiff School Board sought to have the State pay the full cost of implementing a desegregation order entered against the Board 26 years earlier. The original unconstitutional conduct was not at issue, nor were the original plaintiffs whose rights had been violated even party to the proceedings. *Kelley*, 836 F.2d at 992 (Plaintiffs argued that the relief requested was prospective because it sought for the State to take on all future costs of implementing the decree rather than reimburse past expenses). Unlike here, the analysis in both cases of "whether the money or the non-monetary injunction [was] the primary thrust of the suit" turned on whether there was any violation of federal

---

Amendment bar to enjoining the state to pay AFDC benefits and collecting cases that "have required payment of money directly from a state treasury to bring about compliance with the requirements of a state-federal cooperative federalism program" similar to the state-federal Title IV-E program at issue here).

law at issue at all beyond Plaintiffs' attempts to seek a pay-out of State funds. *Barton*, 293 F.3d at 949.

In contrast, and consistent with the well-established *Ex parte Young* exception to Eleventh Amendment immunity, Plaintiffs here are seeking a prospective injunction compelling Defendants to manage a public benefits program in compliance with federal law. Any impact of such an injunction on state coffers is the "inevitable consequence" of state officers' compliance with their legal obligations. *Hurley*, 676 F.2d at 1097.

**III.        Governor DeWine Is A Proper Defendant**

Governor DeWine's argument that he is not a proper defendant "because Plaintiffs have not connected the Governor to the harm alleged" (DeWine Opp., ECF No. 37 at 764), ignores governing law and the Governor's admitted involvement in the claims in this action. Indeed, Governor DeWine undermines his own claim of insufficient connection to the federal law violations at issue here by simultaneously arguing (unpersuasively) that his signing of SB 310 into law, along with his Executive Order—his own direct personal intervention and executive action—cure the failure to comply with federal law requiring FCMPs to Plaintiffs. (DeWine Opp., ECF No. 37 at 756-758, 759-761, 765, 768-769 (lauding Executive Order 2020-43D as the remedy for the complained of violations).) Governor DeWine cannot claim to have personally fixed the problem *and* simultaneously claim he has nothing to do with it so he can benefit from Eleventh Amendment immunity. Governor DeWine has admittedly inserted himself into the very issue in this lawsuit.

Governor DeWine's personal connection to the conduct at issue in this case overwhelmingly satisfies the *Ex parte Young* exception to Eleventh Amendment immunity. Where, as here, an official is "actively involved with administering [a] statute, and [] regularly acts in furtherance of its execution," the *Ex parte Young* exception to Eleventh Amendment immunity is

satisfied. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015). Not only is Governor DeWine the highest executive authority in the State, with direct control over the action of ODJFS, the State agency charged with implementing Ohio's State Plan and distributing FCMPs, he has declared Ohio's children and fixing Ohio's foster care system the core of his policy agenda. (Compl., ECF No. 7 at 71-72, ¶¶ 25-26.) Moreover, Governor DeWine's declarations were not mere articulation of policy principles, as he has personally executed his stated agenda by setting the State budget specifically to address deficits in kinship care (Compl., ECF No. 7 at 71-72, ¶ 26), by issuing Executive Order 2019-27D creating the Children Services Transformation Advisory Council, instructing that Advisory Council to "submit written, actionable recommendations *to me*" for further action, including in the area of kinship care (Compl., ECF No. 7 at 72, ¶ 27, (emphasis added)), and he has specifically promised to address issues "related to approved relatives caring for children . . . even when the relatives aren't licensed caregivers" (Compl., ECF No. 7 at 72-73, ¶ 28.)

Following the filing of this federal action and the release of the final report and recommendations from the Governor's Advisory Council, Governor DeWine issued Executive Order 2020-43D, in which he "order[ed] and direct[ed] the Ohio Department of Job and Family Services to establish a methodology to provide kinship caregivers . . . with kinship support payments no later than June 1, 2021 and to issue eligible kinship caregivers support payments retroactively from the date the legislation is effective" (DeWine Opp., ECF No. 37 at 758-759, 769-770; EO at 1.)[8]

---

[8] Plaintiffs and Governor DeWine are not the only ones to perceive his direct personal role in resolving the violations at issue here. Last year, U.S. Senator Sherrod Brown wrote to Governor DeWine, stating that he appreciated Governor DeWine's "efforts to enhance support services for kinship caregivers and youth in their care" and that he was encouraged "that the State of Ohio will comply with the Sixth Circuit's decision in *D.O. v. Glisson*, which makes clear that 'approved' kinship caregivers must receive the same payments as 'licensed' foster parents." Sherrod Brown,

This is exactly the type of personal involvement that the Sixth Circuit has recognized is sufficient to defeat Eleventh Amendment immunity. *See, e.g., In re Flint Water Cases*, 960 F.3d 303, 313-320, 333-35 (6th Cir. 2020) ("the district court rightly rejected [Governor Snyder's successor's] Eleventh Amendment argument" where Governor Snyder, *inter alia*, was "briefed on" and "issued directions" as to the Flint water crisis, personally knew of the issue resulting in legal violations, relied on misleading talking points claiming to address the violations at issue, and created a task force to address the crisis). Here, Governor DeWine knows of and has requested and received reports concerning Ohio's deficient payments to Plaintiffs; he ordered, directed, instructed, and authorized action by other State officials to address those deficiencies; issued an Executive Order purporting to rectify the deficiency in kinship payments; and now falsely claims that the deficiencies resulting in federal law violations have been rectified by a new state program he created. The Governor's personal conduct establishes more than enough connection to the violations at issue here to apply the *Ex parte Young* exception to Eleventh Amendment immunity.

None of the Governor's cited authorities say otherwise.[9] Notably, some of Governor DeWine's own cited authority *supports* Plaintiffs' position. In *Top Flight Entm't, Ltd. v. Schuette*, the attorney general was held to be an improper party because, unlike here, the plaintiff did "not allege[] how [the] Attorney General[] was involved in the" complained of denial of licenses "or the enforcement of rules under the Bingo Act," or that the attorney general "had knowledge of, or participated in, [the] alleged policy of denying" licenses. 729 F.3d 623, 634 (6th Cir. 2013). The

---

*Dear Governor DeWine Letter,* BROWN.SENATE.GOV (Jan. 22, 2020), *available at* https://www.brown.senate.gov/imo/media/doc/GAP%20Letter%20to%20DeWine.pdf.

[9] *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (attorney general was an improper defendant where the plaintiffs did "not complain[] of any action by" the attorney general); *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 674 (S.D. Ohio 2017) (Governor John Kasich improper party where plaintiffs relied only on the "virtue of his role as Governor" and his ability to appoint the heads of executive agencies). *Shell Oil Co. v. Noel* is simply inapposite. There, the Court noted "at least the Attorney General if not the Governor would be a proper party defendant in this case" due to their connection to the law; rather, the plaintiff lacked standing under both the Declaratory Judgment Act and Article III of the U.S. Constitution. 608 F.2d 208, 210, 212-13 (1st Cir. 1979).

13

Sixth Circuit went on to hold, though, that the Commissioner of the Michigan Bureau of the State Lottery was "a proper party to the lawsuit in his official capacity" because the plaintiff alleged the Commissioner adopted a "blanket policy" of refusing certain event licenses, which was sufficient to establish under *Ex Parte Young* "'some connection' to the unconstitutional acts alleged by Plaintiffs." 729 F.3d at 634. Plaintiffs here allege Governor DeWine's personal involvement in perpetuating a blanket policy of unlawful and unequal state benefits for Relative Foster Parents and Relative Foster Children. (Compl. ECF No. 37 at 76-86, ¶¶ 38-39, 51-52, 60-61, 67, 70.) The Governor's recent Executive Order continues that unlawful conduct.

Governor DeWine's assertion of Eleventh Amendment immunity thus fails. He is a proper defendant in this lawsuit under *Ex parte Young*, and the Court should reject arguments to the contrary as to both his Motion to Dismiss and his Opposition to Plaintiffs' Motion for Preliminary Injunction.

## IV. Plaintiffs' Motion for Preliminary Injunction Should Be Granted

The Sixth Circuit has made clear that, in determining whether to grant a preliminary injunction, "the district court considers <u>and balances</u> four factors: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.'" *Little Caesar Enters., Inc. v. Miramar Quick Service Rest. Corp.*, No. 19-1860, 2020 WL 4516289 (6th Cir. June 25, 2020) (emphasis added). No one factor is controlling. *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012); *see also In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir. 1985) ("The varying language applied to the likelihood of success factor can best be reconciled by recognizing that the four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met."). All that is required is that Plaintiffs show more than a mere

14

possibility of success. *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012); *see also In re DeLorean Motor Co.*, 755 F.2d 1223, 1230 (6th Cir. 1985) (irrefutable proof is not required, nor is a party required to prove his or her case in full).

### A.    Plaintiffs Have Established an Extremely High Likelihood of Success on the Merits

In this case, Plaintiffs have established that they are extremely likely to succeed on the merits of their federal claim. Indeed, the controlling legal issue in this case has already been decided. The Sixth Circuit held unequivocally in *D.O. v. Glisson*, that 42 U.S.C. sec. 672 requires the same FCMPs to approved Relative Foster Parents as is provided to licensed foster parents. As stated by the Sixth Circuit "it isn't optional." 847 F.3d at 379. It also remains undisputed that the state of Ohio, through Governor DeWine and Director Hall, does not provide approved Relative Foster Parents the same FCMPs available to licensed foster parents. Those are the undisputed facts.[10] Plaintiffs thus have an extremely high likelihood of success of the merits, far beyond the standard required for a preliminary injunction.

### B.    Plaintiffs Will Suffer Irreparable Harm from Defendants' Continuing Failure to Pay Foster Care Maintenance Payments

The crux of Governor DeWine's irreparable injury argument is that (1) the General Assembly has already created a program to administer the relief that Plaintiffs seek and (2) any harm suffered by Plaintiffs can be compensated by money damages at the conclusion of this lawsuit. (DeWine Opp., ECF No. 37 at 15.) These arguments fail because the new kinship support program by design does *not* provide full and equal FCMPs (*see* Section II, *supra*), and Plaintiffs' injuries most assuredly cannot be compensated by money damages at a later date. Defendants' unpersuasive attempt to recast this injunctive case as one for damages for Eleventh Amendment

---

[10] *See* Section I, *supra*.

purposes fails again here as to irreparable harm.

The needs of Relative Foster Children are particularly immediate and can never be fully compensated through a delayed award of benefits that are specifically meant to meet current needs. 42 U.S.C. sec. 672, 675(4)(A) (FCMPs are statutorily designed to cover the cost of such basic needs as "food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, . . . [and] reasonable travel to the child's home for visitation."). Governor DeWine ignores—and does not even attempt to address—the numerous examples set forth in Plaintiffs' Complaint, Declarations, and opening brief as to why money damages at a later date cannot possibly cure the irreparable harm Plaintiffs are suffering and will continue to suffer without preliminary injunctive relief. (*See, e.g.,* Compl., ECF No. 7 at 78-80, ¶¶ 43-46; Decl. of T.M at ¶ 8-9, Decl. of D.R. at ¶¶ 10-11, and Dec. K.T. ¶ 9 [filed under seal]; (Plaintiffs' Memorandum of Points and Authorities in Support of Its Motion for Preliminary Injunction ("Plfs' Br."), ECF No. 21-1 at 215-221.)

Specifically, Defendant DeWine fails to address *any* of the following:

- That by the state's own admission, "Many kinship caregivers are asked to take on the full-time care of youth with little notice and minimal information. They often receive no training, little or no financial support, and insufficient information regarding the youth they are being asked to care for;" *See* Office of Children Services Transformation, *Final Recommendations of the Children Services Transformation Advisory Council,* (Nov. 2020), at 15*, available at* https://content.govdelivery.com/attachments/OHOOD/2020/11/19/file_attachments/1 606570/Transformation%20Final%20Report%20FINAL.pdf.

- That providing FCMPs at a later date cannot retroactively improve the childhoods of Plaintiff Relative Foster Children, nor will it retroactively account for the hardships faced by Plaintiff relative households as a result of the continued denial of such full support payments; (Plfs' Br., ECF No. 21-1 at 216.)

- That the absence of FCMPs means jeopardizing activities that are critically necessary for day-to-day living, development, and maintaining familial relationships, and that prepare children for life as adults; (Compl., ECF No. 7 at 78, ¶ 43; Plfs' Br., ECF No. 21-1 at 216.)

- That the continued denial of FCMPs risks some Relative Foster Parents being unable to provide kinship care at all, rendering it impossible for Plaintiff Foster

Children to remain with the people they know and trust, and subjecting them to even more trauma from being removed from their relative's homes; (Plfs' Br., ECF No. 21-1 at 216.)

- That given the admission that Ohio already does not have enough kinship foster homes to meet the needs of children in foster care, the continued denial of full FCMPs perpetuates Ohio's inadequate array of housing for children in foster care, including the placement of foster children far from their homes and the overuse of institutional settings; (*Id.* at 221-222.)

- That the continued denial of FCMPs has the potential to force Plaintiff Relative Foster Parents to sacrifice their own health and well-being for the benefit of Plaintiff Relative Foster Children; (*Id.* at 217.)

- That the continued denial of FCMPs could also require choosing between providing adequate care to Plaintiff Relative Foster Children and falling behind on rent or mortgage payments or other sacrifices; (*Id.*)

- That the challenges imposed by Defendants' failure to pay FCMPs are exacerbated by the COVID-19 pandemic and its economic impact on Ohio; (Compl., ECF No. 7 at 66, 78-79, ¶¶ 11, 44, 45; Plfs' Br., ECF No. 21-1 at 218-19.)

- That Defendants' ongoing failure to pay required FCMPs is disproportionately harming Black Relative Foster Children and their Relative Foster Parents; (Compl., ECF No. 7 at 66-67, 79-80, ¶¶ 12, 45, 46; Plfs' Br., ECF No. 21-1 at 220.)

- And that the Named Plaintiffs have articulated in detail the challenges they face, and will continue to face, as a result of Defendants' continued failure to pay the statutorily mandated FCMPs, including but not limited to, the inability to enroll the Plaintiff Foster Children in activities recommended by therapists, obtain necessary child care, or even move into an appropriately-sized home. (Decl. of T.M. at ¶¶ 8-9, Decl. of D.R. at ¶¶ 10-11, and Decl. of K.T. at ¶ 9 [filed under seal]; Plfs' Br., ECF No. 21-1 at 219-220)).

No amount of future money damages can compensate for the lost opportunities to provide for the basic fundamental care and needs of children during critical times in their development. The Sixth Circuit has already recognized such irreparable harm resulting from the denial of comparable federal benefits such as social security and disability benefits. *See, e.g.*, *Day v. Shalala*, 23 F.3d 1052, 1059 (6th Cir. 1994) ("plaintiffs have presented a colorable claim of irreparable harm" because" [d]enial of [disability] benefits [under the Social Security Act] result[ed] in a failure to receive income required to purchase the necessities of life, including medication, and

17

cause[d] anxiety and distress which can aggravate existing conditions."); *Holden v. Heckler*, 584 F. Supp. 463, 483 (N.D. Ohio 1984) (no later lump sum payment can redress the forms of deprivation resulting from the denial of disability benefits); *see also Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefits Programs*, No. 2:13-CV-357, 2013 WL 3147956, at *13 (S.D. Ohio June 19, 2013), *aff'd*, 606 F. App'x 798 (6th Cir. 2015) (denial of health insurance benefits constitute irreparable harm) (citing cases).[11] The cynical notion that because Plaintiffs do not appear to allege that they are at risk of "financial ruin" (DeWine Opp., ECF No. 37 at 769, n.2) they are not being irreparably harmed, highlights how badly Defendant's position misses the mark on the importance of full and equal support for relative foster homes.

Governor DeWine's case citations are equally inapposite. *See*, *e.g.*, *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578-579 (6th Cir. 2002) ("that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay"); *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 941 (W.D. Mich. 2009) (concerning corporate lost revenues). *Compare* Compl., ECF No. 7 at 65-66, 78-80, ¶¶ 5, 9, 43-46 (denial of federally mandated benefits meant for vulnerable children's basic care and development). A future award of legally-required benefits, even if retroactive, will not allow Plaintiffs or thousands of other relative foster families across Ohio to go back in time and provide children with, by way of limited example, therapy, tutoring, extracurricular activities recommended by therapists, or an appropriately-sized home during the children's formative years. Plaintiffs have clearly

---

[11] Governor DeWine concedes in his Budget Fact Sheet, that there are limited time windows in a child's life when "investing" in them has the most impact. "Brain science is clear that the most important time to invest in a child's life is in their first 1,000 days. These early days create the foundation for a strong future and demonstrate a significant return on investment both for the child and the state." Governor Mike DeWine, *Ohio Budget Fact Sheet, Investing in Ohio's Children and Families (FY 2020-2021)*, *available at* https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/071819 (last visited Jan., 19, 2020).

demonstrated irreparable harm.

    **C.**    **The Balance of Harms Weighs in Favor of Granting Injunctive Relief, the State Having No Legitimate Interest in Continuing to Deny Plaintiffs Federally Mandated Benefits**

Governor DeWine's argument that he, the General Assembly, and the public interest will be harmed by a preliminary injunction makes no sense. (DeWine Opp., ECF No. 37 at 770-771.) Defendants have no cognizable interest in non-compliance with federal law (and with Ohio's own State Plan allowing for federal Title IV-E reimbursements).

Moreover, Governor DeWine does not dispute that alleviating the economic hardships faced by Ohio families, particularly in light of the COVID-19 pandemic, providing needed support for the overburdened child welfare system, or alleviating the socio-economic inequities stemming from the fact that children of color are disproportionately removed from their homes and placed with relative foster parents, would be in the public interest. The public interest is clearly served in this case, where a preliminary injunction would prevent continued violations of federal law. *See e.g.*, *In re Techs. Int'l Holdings, Inc.*, 234 B.R. 699, 716 (Bankr. E.D. Ky. 1999) (holding that "the public interest is clearly served by the issuance of a preliminary injunction which prevents action by the state which appears to violate federal law"). The balance of harms weighs heavily in favor of preliminary injunctive relief.

    **D.**    **Immediate Class-Wide Injunctive Relief Is Appropriate And Necessary**

What is more, Plaintiffs have sufficiently established a systemic deficiency that applies with equal force to all approved Relative Foster Parents and their Relative Foster Children, warranting preliminary class-wide injunctive relief as requested. (*See* Compl., ECF No. 7 at 87, Prayer for Relief, subpart (e); Plaintiffs' Motion for Preliminary Injunction, ECF No. 21 at 193; [Proposed] Order.) That the proposed classes have not yet been certified does not limit the Court's equitable powers to immediately provide necessary relief to all putative class members who are

among the state's most vulnerable citizens. *Rodriguez v. Providence Comty. Corr., Inc.*, 155 F. Supp. 3d 758, 766-67 (M.D. Tenn. 2015) (class-wide preliminary injunction granted where plaintiffs alleged a systemic Fourteenth Amendment deficiency that applied with equal force to all putative class members trapped in Defendants' probation system); *Lee v. Orr*, No. 13-cv-8719, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013) ("The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons.") (internal quotation marks and citation omitted); *Hinkley v. Kelsey-Hayes Co.*, 866 F. Supp. 1034, 1044-46 (E.D. Mich. 1994) (preliminary injunction issued as to all putative class members before class certification where plaintiffs established they would suffer irreparable injury absent restoration of health care benefit plans under a collective bargaining agreement and similar harm would befall all similarly affected retired company employees); *Lapeer Cty. Med. Care Facility v. Michigan,* 765 F. Supp. 1291, 1301-02 (W.D. Mich. 1991) (state-wide preliminary injunction against a reduction in federally mandated Medicaid benefits granted, applying general rule that "'[p]rior to the Court's determination whether plaintiffs can maintain a class action, the Court should treat the action as a class suit'") (citation omitted).

## **CONCLUSION**

For the reasons set forth herein, Governor DeWine's motion to dismiss should be denied. For the reasons set forth herein and in Plaintiffs' opening memorandum of law, Plaintiffs' motion for a class-wide preliminary injunction should be granted.


DATED: January 20, 2021

Respectfully submitted,

By: /s/ Jay R. Langenbahn (# 0009460)

Jay R. Langenbahn
**LINDHORST & DREIDAME, CO., L.P.A**
Trial Attorney for Plaintiffs
312 Walnut Street Suite 3100
Cincinnati, OH 45202
513-421-6630
jlangenbahn@lindhorstlaw.com

/s/ Richard F. Dawahare. (Ky. Bar #17273)
Richard F. Dawahare**
**RICHARD F. DAWAHARE, ESQ.**
3948 Palomar Blvd.
Lexington, Kentucky 40513
859-608-0200
rfdr@msn.com

/s/ Eric Thompson
Eric Thompson**
Ira Lustbader**
Stephanie Persson**
**CHILDREN'S RIGHTS**
88 Pine Street, Suite 800
New York, NY 10005
212-683-2210
ethompson@childrensrights.org
ilustbader@childrensrights.org
spersson@childrensrights.org

/s/ Daniel Turinsky
Daniel Turinsky**
Jonathan M. Kinney**
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
212-335-4500
daniel.turinsky@us.dlapiper.com
jonathan.kinney@us.dlapiper.com

/s/ Erik J. Frick
Erik J. Frick**
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
617-406-6000
erik.frick@us.dlapiper.com

/s/ Julie A. Gryce
Julie A. Gryce*
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
619-699-2700
julie.gryce@us.dlapiper.com

**Pro hac vice*
*Pro hac vice* pending

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal to the following CM/ECF registrants:

Ann Yackshaw
Andrew D. McCartney
Assistant Attorneys General
**OFFICE OF THE ATTORNEY GENERAL**
**Constitutional Offices Section**
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872
Fax: 614-728-7592
Ann.Yackshaw@OhioAttorneyGeneral.gov
Andrew.McCartney@OhioAttorneyGeneral.gov

*Counsel for Defendant Gov. Mike DeWine*

Angela M. Sullivan
Theresa R. Dirisamer
Assistants Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
**Health and Human Services Section**
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
Tel: 614-752-6447
Fax: 866-429-9087
angela.sullivan@ohioattorneygeneral.gov
theresa.dirisamer@ohioattorneygeneral.gov

*Counsel for Defendant Kimberly Hall*

/s/ *Jay R. Langenbahn* (# 0009460)
Jay R. Langenbahn