# EXHIBIT A

----- Forwarded Message -----

**From:** "Rebekah.Murray@jfs.ohio.gov" <Rebekah.Murray@jfs.ohio.gov>

**To:** "Traci.Berry@jfs.ohio.gov" <Traci.Berry@jfs.ohio.gov>, "Beth.Rubin@jfs.ohio.gov" <Beth.Rubin@jfs.ohio.gov>, "Melanie.Allen@jfs.ohio.gov" <Melanie.Allen@jfs.ohio.gov>, "Christa.Hissong@jfs.ohio.gov" <Christa.Hissong@jfs.ohio.gov>, "Jeffery.Felton2@jfs.ohio.gov" <Jeffery.Felton2@jfs.ohio.gov>, "Brenda.Duncan@jfs.ohio.gov" <Brenda.Duncan@jfs.ohio.gov>, "David.Haverfield@jfs.ohio.gov" <David.Haverfield@jfs.ohio.gov>, "Heidi.Burns@jfs.ohio.gov" <Heidi.Burns@jfs.ohio.gov>, "Stacy.Cox@jfs.ohio.gov" <Stacy.Cox@jfs.ohio.gov>, "Susan.Walther@jfs.ohio.gov" <Susan.Walther@jfs.ohio.gov>, "Theresa.Ellison@jfs.ohio.gov" <Theresa.Ellison@jfs.ohio.gov>, "Jennifer.Tultz@jfs.ohio.gov" <Jennifer.Tultz@jfs.ohio.gov>, "Stephanie.Kowal@jfs.ohio.gov" <Stephanie.Kowal@jfs.ohio.gov>, "Deanna.Nichols-Stika@jfs.ohio.gov" <Deanna.Nichols-Stika@jfs.ohio.gov>, "Jeffrey.Bloom@jfs.ohio.gov" <Jeffrey.Bloom@jfs.ohio.gov>, "Robin.Reese@jfs.ohio.gov" <Robin.Reese@jfs.ohio.gov>, "Kristie.Heckman@jfs.ohio.gov" <Kristie.Heckman@jfs.ohio.gov>, "Deborah.Watkins@jfs.ohio.gov" <Deborah.Watkins@jfs.ohio.gov>, "BART.SHARKEY@jfs.ohio.gov" <BART.SHARKEY@jfs.ohio.gov>, "Randall.Galbraith2@jfs.ohio.gov" <Randall.Galbraith2@jfs.ohio.gov>, "Mary Wachtel" <mary@pcsao.org>, "office@ofcaonline.org" <office@ofcaonline.org>, "tpohnalon@gmail.com" <tpohnalon@gmail.com>, "AndreaHall@childrenservices.org" <AndreaHall@childrenservices.org>, "Barbara Turpin" <angel_51350@yahoo.com>, "Amy.Davidson@summitkids.org" <Amy.Davidson@summitkids.org>, "ryann@ocda.us" <ryann@ocda.us>, "breadcolumbus@gmail.com" <breadcolumbus@gmail.com>, "wpetrik@policymattersohio.org" <wpetrik@policymattersohio.org>, "cmspinni@fccs.us" <cmspinni@fccs.us>

**Cc:** "Tara.Shook@jfs.ohio.gov" <Tara.Shook@jfs.ohio.gov>

**Sent:** Fri, Jan 15, 2021 at 3:41 PM

**Subject:** CCN 8520 (Kinship Support Program) Clearance comments and responses

Attached please find your clearance comments and responses regarding the Kinship Support Program, rule 5101:2-42-18.2 of the Administrative Code.

Becky Murray, LISW

Human Services Program Developer

Ohio Department of Job and Family Services

Office of Families and Children

Rebekah.Murray@jfs.ohio.gov

CCN 8520 – **Kinship Support**

| Name and email address | Comment | Response |
|---|---|---|
| Traci Berry<br>Tuscarawas County CSEA<br>traci.berry@jfs.ohio.gov | The rule does not address if the Kinship payment program payments are in addition to or in lieu of any child support paid or ordered to be paid for a child.<br><br>(G) After the information regarding the KSP are entered into SACWIS, will SACWIS interface with SETS to create a referral for child support services, if the child is not in the permanent custody of the department<br><br>- will child support ordered for this child be assigned to the local PCSA or state? as in foster care eligible and non-eligible placements?<br>- will SACWIS send a term referral to SETS at the end of the 9 months or other conditions in the rule?<br>- at the end of the 9 months and KSP payments end, will child support to to the CTR if CTR still has child in their home<br>(H) if kinship relative received foster home certification, will SACWIS send a new IV-E referral to SETS to redirect or establish support payments and be assigned to the PCSA, in accordance with established foster care referral rules | Thank you for taking the time to review this rule and provide feedback. The Kinship Support Program will not impact the current interface between SACWIS and SETS. |
| Beth Rubin<br>Greene CDJFS<br>beth.rubin@jfs.ohio.gov | Paragraph D would be clearer all around if the actual dates were used since they are known, i.e. 12/29/20 - 9/29/20, or whatever they should be.<br><br>The Q&As state that they cannot receive child-only OWF and KSP simultaneously. The only reference to OWF in the draft rule is paragraph H, and it just references the AG composition rule in the cash assistance manual. I'm not sure this is clear enough. It would be helpful if the KSP rule clearly addressed this. Do they choose between KSP and OWF? Do they get OWF after KSP times out? | Thank you for taking the time to review this rule and provide feedback.<br><br>The appropriate dates will be added to rule language in paragraph (D) to clarify the timeframes.<br><br>The Office of Family Assistance has clarified for the Office of Families and Children that a kinship caregiver who receives KSP will not be eligible for child-only OWF for that same child. Cash assistance rules are expected to be updated to clarify a kinship caregiver's eligibility for child-only OWF when the caregiver is receiving KSP. Clarification will also be included in technical assistance provided by the Office of Families and Children. |

| | | |
|---|---|---|
| Melanie Allen<br>Sandusky County JFS<br>Melanie.Allen@jfs.ohio.gov | From the onset, I am concerned about the contradictory nature of this rule. The concept is great, but I think it is missing the mark on some practice issues, at least in this county. | Thank you for taking the time to review this rule and provide feedback. |
| | C 1 Why does this rule exclude children in placement of kin if they have custody with agency involvement (i.e protective supervision)? Why would the expectation be the agency maintain custody? Placement in a kin home where the agency retains custody requires a more restrictive fingerprinting process and homestudy requirements in order to have child placed with kin. Not only is this costly to families to pay for fingerprints, this is an exorbitant cost for agencies to be expected to pay if that is the expectation in order to fingerprint all kin placement and keep custody. With police background checks, safety audit and other safety clearances in the home, often times, quick placement of children occurs with grandparent or other kin without fingerprints and a full blown homestudy. This also runs counter intuitive to the 30 days to family program we run in this county where families are sought to be a supportive, long term or temporary placement of kin. Once cleared, the kin provider typically obtains custody of the child(ren). | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the child to be in the custody of the PCSA or Title IV-E Agency. |
| | Additionally, agencies must follow rule when looking for placement for children and go with the least restrictive option, which has always been kinship. Encouraging agencies to maintain custody and license kinship homes as foster homes directly opposes placement at the least restrictive level. | A kinship home is still the least restrictive placement option for a child, even if the home is certified to provide foster care for that kinship child. |
| | If the expectation is to provide this payment only to those children placed while agency retains custody, this inflates the number of children in care and excludes those already placed with kin. Would the expectation be to have an agency take custody so these families can get paid? Why would these families be excluded from this program for payment? Is there availability to allow payments for children placed with kin while under agency protective supervision? | Section 5101.884 of the Ohio Revised Code, signed into law on December 29, 2020, requires that a child be in the custody of the PCSA or Title IV-E Agency for the kinship caregiver to receive KSP payments. The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency |

| | | custody. Technical assistance will be provided to agencies to assist with program implementation. |
|---|---|---|
| | Doesn't the language in the bill clarify that they should be receiving placement when they are not licensed? And is the intention to require the agency to hold custody? "The kinship support program shall provide financial payments to kinship caregivers who: (A) Receive placement of a child who is in the temporary or permanent custody of a public children services agency or under the Title IV-E agency with legal responsibility for the care and placement of the child; and (B) Do not have foster home certification under section 5103.03 of the Revised Code. " | The intention of this program is to ensure that kinship caregivers who are not certified foster caregivers will receive payments to support the placement of the kinship child into their home. The time frame that they are able to receive KSP payments will allow for them to pursue foster care certification so that they can receive foster care per diem following the KSP payments. |
| | Is there anything indicating we can't take custody and do initial placement, and give the caregiver custody? In our rule 13 "payments are approved when the child is in the tc, pc or lc " but the actual language of the bill says it is for kinship caregivers who receive placement of a child who is in tc or pc. In the second instance, in the language of the bill, the caregivers receive placement of a child in custody, but does not necessarily say the child must continue to BE in tc, pc or lc like our rule implies. | When a kinship caregiver receives custody of a child, "placement" with the kinship child ends. In accordance with paragraph (E)(3) of the rule, KSP payments would end at that time. |
| | D 1-3 These 3 different time frames are confusing. Can these be clarified using dates so it becomes more clear? | The appropriate dates will be added to rule language in paragraph (D) to clarify the timeframes. |
| | G Enter the necessary data, what is it and how are payments to be initiated or terminated for families? Is there going to be training/clarification on this for staff in order to enter the data, and for fiscal staff to ensure these payments are generated accurately. What are the expectations? Are families paid for a month behind, month ahead, etc? What are the procedures to be for entering data in accurately, or failing to enter timely? For example, if a child is returned home or moved to another relative at the end of a month, and a worker doesn't enter that data, how are we going to ensure payments are accurate? Who | When the PCSA enters in the placement date as a kinship placement, KSP payments will be initiated. Entry of this information into SACWIS is not a new requirement. SACWIS webinars and technical assistance will be provided. |

will ask a caregiver to return funds paid erroneously?  Will there be guidance on changes in caregivers, if for example one placement fails and another placement occurs?  Does the time frame start over with each new placement?  I hope this doesn't encourage caregiver swapping in order to receive the assistance.

H Kin payments can continue until certification occurs.  Why can't those who have placement and custody and aren't seeking certification be provided kin payments?  Why would the agency be required to have custody?  Even with allowance of non-safety related waivers, does anyone realize how time consuming and costly this would be on an agency with a small licensing/assessor staff to get these kin placements licensed?  The optics of this to entice kin to become licensed and paid at least double or triple the kin rate of what has been spelled out for this program are unflattering. This will also become another area of contention as trying to secure permanency with kin could potentially become a money issue where they will no longer continue to receive foster care payment if they take custody of the child. Continuing custody of a child extends the 12/22 requirement for termination of parental rights, and this may not be the right or best direction for most cases if families are discouraged from taking custody of a child as a means of permanency.  The cost involved in court docket for increasing termination of parental rights is also unaccounted for.

| | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the child to be in the custody of the PCSA or Title IV-E Agency.  The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. |

I Although stated on a case by case basis, non-safety related licensing requirements can be waived for kinship licensure.  No doubt, training will routinely be waived as outlined in rule 5101:2-33, however, this rule itself is in clearance and still not yet finalized.  Historically, cultural diversity training has been a topic that is not permitted to be waived. Has licensing provided guidance on what can or will be permissible waivable items?  Does ODJFS licensing staff have guidance for the waivers that can or will be approved or not approved?  Again, the licensing of kin providers will be a costly and time-consuming requirement for most counties who do not have the dedicated

| | Ohio Revised Code 5103.0329 permits for training hours to be waived and does not specifically exclude any topics from waiver eligibility.  Therefore, all training hours and training topics are able to be waived for the certification of kinship caregivers. |

| | | |
|---|---|---|
| | staff to complete an increasing number of certifications/approvals.  Any idea when 5-33 will become effective? | |
| | License as foster parents, then what?  Keep custody, terminate parental rights, move into adoption and negotiations with kin? Again, the ramifications of this could be significantly costly and time consuming. | The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. |
| | While the expectation is that kin providers are paid their kin per diem, the burden of adding foster placement costs is a significant expectation.  The county will be responsible for a portion of their costs if the child is IV-E and responsible for the entire cost if the child is NOT IV-E.  Is this the expectation, that counties are to take on and absorb the foster care costs for this program?  There is no set expectation that the foster per diem be time limited?  Again, the optics of paying kin foster care rates with no end in sight creates issues with financial arguments that need not be there.  Adoption negotiations are difficult enough, there has to some parameters to soften this issue with kin.  As they can and should receive additional help and support, I know adoption assistance negotiations and discussions of money will be difficult, at best. | Agencies are expected to complete the certification process for kinship families in the same manner they would for other families. Likewise, once certified, kinship families are to receive the same foster care per diem payments as any other certified foster family.

The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. |
| | It would honestly make more sense to have increased the OWF caregiver cash amounts to kin since they are now excluded from receiving both. And increase the amounts for the subsequent children. Agencies have always provided the kin families the information on OWF and the cost difference between that and foster care per diem.  Most families have always chosen not to pursue licensure. | OWF is funded by TANF and is subject to federally defined eligibility requirements.  The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers.  The KSP rule has been written in accordance with Ohio Revised Code. |
| Christa Hissong Wayne County CSB Christa.Hissong@jfs.ohio.gov | Im really concerned if Kinship would have to become licensed. There are so many rules for foster parents that have to be met to become licensed. For example, we have an ICPC case we are struggling with  to get things up to par in the homes, that are not "safety issues"  but still wont pass inspections to become | Thank you for taking the time to review this rule and provide feedback.

The KSP does not require that the kinship caregiver become a certified foster parent.  It |

| | | |
|---|---|---|
| | licensed. Also, getting the grandma to get all required paperwork done, etc. In this ICPC, the grandma has a grandchild currently placed in her home through Cuyahoga county, as her home was approved as a kinship home . However, the grandkid in PA she is trying to get, she has to be licensed according to PA, but cant get her home to be approved through licensing requirements. So she has 1 kid right now, but cant get the other kid because they are requiring her to be licensed. I don't know if we will ever be able to get her licensed.<br><br>We want more kids to be with kin, this is going to limit that happening if they must be licensed. | allows for the kinship parent to receive payments for a specified time period to support the placement of the child in the home. During that time, the kinship caregiver may opt to go through the certification process so that they can continue to receive support through foster care per diem payments following certification. The kinship caregiver may or may not become a certified foster caregiver. |
| Jeff Felton<br>Belmont County JFS<br>Jeffrey.Felton2@jfs.ohio.gov | (B)(4) and (5) define kinship caregivers to include those who are a legal guardian or a legal custodian of the child. Should it be noted that an agency must have temporary custody, permanent custody or legal custody of the child to clarify that a person who is a legal guardian or legal custodian is not eligible to receive payment?<br><br>(C)(1). Should PPLA also be included? PPLA is a legal status and is different from temporary or permanent custody.<br><br>(D). 1, 2, and 3 are very confusing. For example, does #3 mean that if a child is placed with a kinship caregiver on September 21st the kinship caregiver can only receive KSP payments for 6 months?<br><br>(E) and (H) seem to imply that kin will be required to be licensed as foster parents. Is this the intent? | Thank you for taking the time to review this rule and provide feedback.<br><br>While the ORC definition of kinship caregiver includes individuals who have legal custody or guardianship of a child, paragraph (C)(1) identifies that the child must be in the temporary or permanent custody of the PCSA or Title IV-E agency.<br><br>PPLA is a legal custody status and is covered under the term "legal custody".<br><br>The appropriate dates will be added to rule language in paragraph (D) to clarify the timeframes.<br><br>Kinship caregivers will have the option to be certified as foster caregivers. They will not be required to be certified. However, the only way they will receive foster care per diem payments for the child after KSP ends is if they choose to become certified. |

| | | |
|---|---|---|
| | Is the payment to be considered as income for the assistance group for the purposes of determining eligibility for SNAP? Publicly funded child care? PRC? | Kinship Support Program (KSP) income will be treated like foster care income for SNAP purposes- meaning, if the SNAP assistance group chooses to include the child in the assistance for whom KSP is being received, then the income for the child (KSP payments) would be countable as well. If the assistance group chooses not to include the child in the assistance group for whom KSP is being received, then the KSP income is excluded. The SNAP rules have been updated for these changes and are in clearance from January 11th through January 24th. <br><br> For the Prevention, Retention, and Contingency (PRC) program, county agencies have the flexibility to design the program, including which types of income to include or exclude. County agencies will need to amend their PRC plan and submit to the Office of Family Assistance for review should they choose to treat KSP differently than what is currently laid out as countable income in their PRC plan. <br><br> The Office of Family Assistance has clarified that KSP payments will not be included in the income calculation for eligibility determination of publicly funded child care. |
| | In cases where there are two children placed in a kinship home (other than #6), could the home receive a KSP payment for one child and "child only" OWF for the other child? | A caregiver cannot receive a KSP payment and an OWF "child only" payment for the same child. However, they may choose to receive KSP for one child and OWF for the other child, assuming all other OWF eligibility factors are met. OWF proposed rules for these changes are currently in clearance from January 11th through January 25th. |

| | Can a kinship home receive SSD for the child and KSP payments simultaneously? | Technical assistance will be provided to PCSAs to address how agencies should handle Social Security Administration benefits. |
|---|---|---|
| Brenda Duncan<br>Butler County JFS/CSB<br>Brenda.Duncan@jfs.ohio.gov | | Thank you for taking the time to review this rule and provide feedback. |
| | The rule does not specify if a family can receive OWF and KSP concurrently. | The Office of Family Assistance has clarified for the Office of Families and Children that a kinship caregiver who receives KSP will not be eligible for child-only OWF for that same child. Cash assistance rules are expected to be updated to clarify a kinship caregiver's eligibility for child-only OWF when the caregiver is receiving KSP. Clarification will also be included in technical assistance provided by the Office of Families and Children. |
| | Also, (G) does not address what the PCSA shall do if SS/SSI/VA benefits are received by the PCSA for a child placed with a kin provider receiving KSP for that child. | Technical assistance will be provided to PCSAs to address how agencies should handle Social Security Administration benefits. |
| | Will the PCSA be the pass through entity for KSP payments, or will they be issued directly to the kin provider similar to KPI payment processing? | ODJFS will make KSP payments directly to the kinship caregiver. When the PCSA enters in the placement date as a kinship placement, KSP payments will be initiated. SACWIS webinars and technical assistance will be provided. |
| David Haverfield<br>Tuscarawas County JFS<br>David.Haverfield@jfs.ohio.gov | As the director of a county agency, efforts to provide additional supports to kinship care givers is welcome news. But I have a number of concerns and requests for additional action and clarification. | Thank you for taking the time to review this rule and provide feedback. |
| | First of all, this was touted and reported in the media as a support for kin. But for well over 99% of the kinship providers in my county it is not. Our agency nor our court have ever placed children and kept custody. Many counties do. But my office was left to tell the myriad of kinship providers who called | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the child to be in the custody of the PCSA or Title IV-E Agency. ODJFS is developing technical assistance documents to include frequently |

| | |
|---|---|
| that the program was just not for them.  ODJFS should provide a easy document that our families can understand about this program. | asked questions and a website article that can be shared with kinship caregivers. |
| Section (A) of the rule defines payment in an amount nearly identical to the OWF-child only payments. For one child, there is a net wash of income.  But with additional children, kinship care givers will receive more money.  The result of this will very likely be many more children entering foster care as kinship care givers rightfully seek additional financial support.  However, the net result will be additional work for an already strapped child welfare workforce. | OWF is funded by TANF and is subject to federally defined eligibility requirements.  The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers. The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. Technical assistance will be provided to agencies to assist with program implementation. |
| Section (c) seems to allow kinship payment over multiple placement episodes.  For instance, a child entering care more than once and being placed with different kinship caregivers.  Some clarification on this is needed. | Payment timeframes are specific to the kinship caregiver.  A kinship caregiver will not be able to receive payments for multiple custody episodes. |
| I am concerned about the lack of an exit plan.  Once the child leaves PCSA custody, the support decreases.  This can impact length of stay and cause issues with meeting CFSR measures. | The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. |
| As the director of a combined agency, I am also concerned about the implementation time line and how this may cause many kinship families to have an overpayment in OWF that exceeds their lump sum retroactive payment.  This program contemplates payments starting in June of 2021, retroactive to January of 2021.  Families either continue to receive OWF for the child during this time and then have a large overpayment, or go without monies and wait for the retroactive payment. And as the OWF is less than the Kinship payment, they will owe more back than the Kinship lump sum payment.

Thank you for considering my comments. | ODJFS is taking these concerns into consideration as KSP is implemented and will make every effort to mitigate any financial burden a kinship caregiver may face through no fault of their own. |

| | | |
|---|---|---|
| Mary Wachtel<br>PCSAO<br>mary@pcsao.org | After review of the proposed rule and dialogue with members, we have the following specific questions.<br><br>•     Section (A).  The rule refers to ORC 5101.885 which defines the payment as "ten dollars and twenty cents per child, per day, to the extent funds are available."  This is equivalent to the current OWF-child only payment for a single child.  We are concerned that the Kinship Support Program as designed could result in more children entering custody so their kinship caregivers can access these payments.  To mitigate this, the OWF child-only payment could be adjusted to be the same amount for each additional child in all kinship placements, reducing the need/incentive for kids to come into custody so their kin caregiver can receive this level of support.   We understand this would need to be GRF for fictive kin who do not hold custody or guardianship.<br><br>•     Section (C).  We read this section to allow for kinship support payments over multiple placement episodes.  For example, if a child re-enters PCSA custody and is re-placed with the eligible kinship caregiver or is placed with a different eligible kinship caregiver.  Please confirm this is correct.<br><br>•     Section (F).  We request that ODJFS produce a brief, family-friendly summary of the KSP that PCSAs and Title IV-E agencies can use to fulfill their responsibility to provide kinship caregivers with information about the KSP.<br><br>•     Section (I).  It will be important that foster caregivers who received a waiver as part of their certification process be identified within SACWIS as having been approved or licensed as a foster caregiver with a waiver.  This information is important so other PCSAs and Title IV-E agencies are informed and aware of any limitations/restrictions associated with that certified foster caregiver.<br><br>In addition to these specific suggestions, we request dialogue on overarching issues including:<br>What is the expected impact on permanency and on CFSR measures? | Thank you for taking the time to review this rule and provide feedback.<br><br>OWF is funded by TANF and is subject to federally defined eligibility requirements.  The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers.  The KSP rule has been written in accordance with Ohio Revised Code.<br><br><br>Payment timeframes are specific to the kinship caregiver.  A kinship caregiver will not be able to receive payments for multiple custody episodes.  However, a new kinship caregiver will be eligible to receive KSP for the child.<br><br>ODJFS is developing technical assistance documents to include frequently asked questions and a website article that can be shared with kinship caregivers.<br><br>SACWIS will include functionality that will cause these caregivers to be flagged so that they will not be available to place foster children who are not kin in the home.<br><br><br>PCSAO will continue to be included in dialogue with ODJFS as this program is implemented. |

| | | |
|---|---|---|
| | Identify the full costs of the program and ensure that these costs are fully covered with new allocations | |
| | How does this program operate in counties that already pay a stipend to kinship caregivers? | KSP will be implemented the same way across all counties. It will be at the discretion of the local PCSA who has a local program to determine how they will proceed with their program. |
| | What happens if a kinship caregiver does not become licensed? They face a "cliff effect" after these payments cease and may expect the PCSA to continue the payments. | PCSAs will need to provide kinship caregivers information about eligibility requirements, the payment timeframes, and the options that they have following those time frames so that caregivers can plan accordingly. |
| Heidi Burns<br>Morgan County JFS<br>Heidi.Burns@jfs.ohio.gov | Section (A). The rule refers to ORC 5101.885 which defines the payment as "ten dollars and twenty cents per child, per day, to the extent funds are available. " This is equivalent to the current OWF-child only payment for a single child. We are concerned that the Kinship Support Program as designed could result in more children entering custody so their kinship caregivers can access these payments. To mitigate this, the OWF child-only payment could be adjusted to be the same amount for each additional child in all kinship placements, reducing the need/incentive for kids to come into custody so their kin caregiver can receive this level of support. We understand this would need to be GRF for fictive kin who do not hold custody or guardianship. | Thank you for taking the time to review this rule and provide feedback.<br><br>OWF is funded by TANF and is subject to federally defined eligibility requirements. The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers. The KSP rule has been written in accordance with Ohio Revised Code. |
| | Section (C). We read this section to allow for kinship support payments over multiple placement episodes. For example, if a child re-enters PCSA custody and is re-placed with the eligible kinship caregiver or is placed with a different eligible kinship caregiver. Please confirm this is correct. | Payment timeframes are specific to the kinship caregiver. A kinship caregiver will not be able to receive payments for multiple custody episodes. However, a new kinship caregiver will be eligible to receive KSP for the child. |
| | Section (F). We request that ODJFS produce a brief, family-friendly summary of the KSP that PCSAs and Title IV-E agencies can use to fulfill their responsibility to provide kinship caregivers with information about the KSP. | ODJFS is developing technical assistance documents to include frequently asked questions and a website article that can be shared with kinship caregivers. |

| | | |
|---|---|---|
| | Section (I). It will be important that foster caregivers who received a waiver as part of their certification process be identified within SACWIS as having been approved or licensed as a foster caregiver with a waiver. This information is important so other PCSAs and Title IV-E agencies are informed and aware of any limitations/restrictions associated with that certified foster caregiver. | SACWIS will include functionality that will cause these caregivers to be flagged so that they will not be available to place foster children who are not kin in the home. |
| | We are concerned that there is no "exit plan" for kinship caregivers under the design of this new program. Once the child leaves PCSA custody, financial support decreases. This likely will impact length of stay in custody and permanency. Will PCSAs be penalized when failing to meet CFSR measures with these cases? | The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. |
| | This program represents new costs for both the state and the PCSAs and Title IV-E agencies. It is critical that new funds be appropriated for covering these new costs for both state and counties in the 2022-2023 budget and beyond. What is included in the county estimated costs? Does it also account for the impact this new program will have on the children service workforce crisis issue (i.e, more staff will be needed)? | Future opportunities for workforce assistance will be forthcoming from our office regarding assessor resources. |
| | If a kinship caregiver does not complete the KSP to become a certified foster parent, but that child remains in the kinship caregiver's care and is still in custody of a PCSA, will there be a formal process for the kinship caregiver to waive any remaining KSP payments and waive becoming a certified foster parent? | Kinship caregivers who do not become certified foster parents will receive the full amount of the KSP in accordance with the timeframes prescribed in the statute and in the rule. |
| Stacy Cox<br>Champaign County JFS<br>Stacy.Cox@jfs.ohio.gov | Section (A). Specific payment amounts in ORC are equal to OWF child only payments for a single child.   OWF child payment decreases (per child) when there is more than one child.  In an effort to avoid additional children entering PCSA custody to access this financial support, please consider adjusting OWF rules to allow for kin providers to receive equal payment amounts, regardless of the number of children. | Thank you for taking the time to review this rule and provide feedback.<br><br>OWF is funded by TANF and is subject to federally defined eligibility requirements.  The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers.  The KSP rule has been written in accordance with Ohio Revised Code. |
| | Section (C). Does this allow for kinship support payments over multiple placement episodes. For example, if a child re-enters | Payment timeframes are specific to the kinship caregiver.  A kinship caregiver will not be able to |

| | | |
|---|---|---|
| | PCSA custody and is re-placed with the eligible kinship caregiver or is placed with a different eligible kinship caregiver. | receive payments for multiple custody episodes. However, a new kinship caregiver will be eligible to receive KSP for the child. |
| | Section (F). Will ODJFS be developing any literature and/or informational packets that PCSAS can provide to kin providers regarding this program? | ODJFS is developing technical assistance documents to include frequently asked questions and a website article that can be shared with kinship caregivers. |
| | Section (I). It will be important that foster caregivers who received a waiver as part of their certification process be identified within SACWIS as having been approved or licensed as a foster caregiver with a waiver. This information is important so other PCSAs and Title IV-E agencies are informed and aware of any limitations/restrictions associated with that certified foster caregiver. | SACWIS will include functionality that will cause these caregivers to be flagged so that they will not be available to place foster children who are not kin in the home. |
| | Overall there is concern of unintended consequences resulting in a long term dependence on the financial support resulting in a lack of permanency for children. How will this be managed/addressed and what will that mean for CFSR outcome measures? | The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. |
| | Is it possible to prioritize the need to transparently review and discuss the financial impact that this could have the PCSAS (keeping in mind the significant administrative costs that will result). What support will be provided to local PCSAS for the financial sustainability and administrative burden in a time when many PCSAs are experiencing significant staffing crises. | Future opportunities for workforce assistance will be forthcoming from our office regarding assessor resources. |
| | How will it be expected for PCSAs to document if/when the kinship provider waives the opportunity to become licensed? | Kinship caregivers who do not become certified foster parents will receive the full amount of the KSP in accordance with the timeframes prescribed in the statute and in the rule. |
| Dot Erickson Anderson<br>Ohio Family Care Association<br>office@ofcaonline.org | How unfortunate this law is with funds needed to be appropriated in each budget year for this program. We hope it does not have the high administrative/staff costs and limitations of other programs designed to assist kinship families: OWF, OhioKAN, 30 days to Family, KPIP, PRTs, KCP and | Thank you for taking the time to review this rule and provide feedback. |

| | | |
|---|---|---|
| | Subsidized childcare program. We hope it produces a true Kinship Support Program that gets resources directly to families vs. building more staff costs. | |
| | D. The language in this section is hard to follow. Reword to clarify the initial 9 month times and the on-going 6 month availability. | The appropriate dates will be added to rule language in paragraph (D) to clarify the timeframes. |
| | E.1 This legislation is pushing the kinship care provider toward foster care licensure. This is unclear that about the limits of that licensure i.e., a limited time while in custody with reunification as the goal? Availability for adoption subsides - clarity on if the child can be classified as special needs. | Any kinship provider who becomes a certified foster parent will have a foster care certification that is valid for two years. As that timeframe comes up, the foster parent may choose to become recertified. The caregiver will also be given the opportunity to become approved for adoption at the time of the homestudy assessment. Any availability for adoption subsidies would go through already established subsidy eligibility requirements. |
| | F. Is any support other than the $10.20 be included in the KSP? If support is a county-by-county decision, that will vary a lot around the state. | There is no additional financial support included in KSP other than $10.20 per child per day required by Ohio Revised Code section 5101.885. This rate applies to all counties across the state. |
| | K. Language difficult. Can you not just say that if you have KSP you cannot receive OWF financial support. | The Office of Family Assistance has clarified for the Office of Families and Children that a kinship caregiver who receives KSP will not be eligible for child-only OWF for that same child. Cash assistance rules are expected to be updated to clarify a kinship caregiver's eligibility for child-only OWF when the caregiver is receiving KSP. Clarification will also be included in technical assistance provided by the Office of Families and Children. |

| | | |
|---|---|---|
| | I This waiver supports a 2-tiered foster home licensing system. Are their trainings for workers on non-safety issues and what training topics can be waived?  As well as whether there are limits of service to homes that are licensed under this system? | Ohio Revised Code 5103.0329 permits for training hours to be waived and does not specifically exclude any topics from waiver eligibility.  Therefore, all training hours and training topics are able to be waived for the certification of kinship caregivers.<br>SACWIS will include functionality that will cause these caregivers to be flagged so that they will not be available to place foster children who are not kin in the home. |
| Timothy O'Hanlon<br>Child Welfare Reform Coalition<br>tpohnalon@gmail.com | The proposed rule, as written, categorically excludes children placed in "approved" relative homes from participation in Ohio's Title IV-E Foster Care Maintenance program.  The proposed rule violates existing federal law in Ohio and places federal IV-E funding for foster care in clear jeopardy.<br><br>1.      Ohio has the authority to establish a state funded program to support kinship care.  But, in light of the 2017 Sixth Circuit Appellate Court decision in D.O. v. Glisson, the proposed rule clearly violates federal law by categorically excluding an entire category of foster children from receiving payments through the federal Title IV-E Foster Care Maintenance program.  The proposed rule, in effect, excludes all children under the care and responsibility of Ohio's IV-E State agency, placed by public county children service agencies in "approved" relative homes. The Appellate Court in D.O. v. Glisson explicitly struck this policy down as a violation of federal law.<br><br>2.      D.O v. Glisson was a Kentucky case, but the decision applies to all states in the federal Sixth Circuit, including Ohio.  The U.S. Supreme Court refused to hear an appeal of D.O. Glisson and thus the decision became federal law for states in the federal Sixth Circuit including Ohio.  The provisions of D.O. v. Glisson are federal law in Ohio and the other states in the Sixth Circuit.<br><br>3.      The proposed rule puts federal funding for Ohio's IV-E Foster Care Maintenance program at severe risk.  By | Thank you for taking the time to review this rule and provide feedback. ODJFS has drafted this rule as authorized by the statute. |

categorically excluding children under the care and responsibility of Ohio's IV-E State agency, placed in "approved" relative homes from receiving Tile IV-E Foster Care Maintenance payments, Ohio is in violation of its IV-E State Plan, the document that sets forth the terms for receiving federal funding for foster care under the IV-E Foster Care Maintenance program.

The Introduction to Ohio's IV-E State Plan reads as follows:

"As a condition of the receipt of Federal funds under title IV-E of the Social Security Act (hereinafter, the Act),the Ohio Department of Job and Family Services submits here a plan for the programs to provide ,in appropriate cases, foster care and adoption assistance, and if the State/Tribal agency elects, guardianship assistance, under title IV-E of the Act and hereby agrees to administer the programs in accordance with the provisions of this plan, title IV-E of the Act, and all applicable Federal regulations and other official issuances of the Department."

4.      Since the proposed rule flies directly in the face of the decision in D.O. v Glisson, the state would have to successfully overturn the Appellate Court's findings and establish that:

(a)      Kinship caregivers must be licensed foster parents in order to receive IV-E Foster Care Maintenance payments, and

(b)      Children placed in "approved" relative homes are not under the care and responsibility of the IV-E State agency.

The Appellate Court in D. O. v Glisson held that there were two categories of foster children potentially eligible for IV-E Foster Care Maintenance.

"The second category," wrote the court, "consists of approved foster homes, which typically care for a relative child. Reflecting Congress's preference that children live with family members, id. § 671(a)(19), the Act allows states to place children with unlicensed relatives. To obtain approval, the home must

"meet[] the standards established for such licensing." Id. § 672(c). Each state may waive non-safety standards on a case-by-case basis for children in relative foster family homes. Id. § 671(a)(10)(D). Furthermore, the Act requires states to give preference to adult relative caregivers only when the relative caregiver meets the relevant safety standards. Id. § 671(a)(19)."

5. If the State of Ohio fails to overturn the Appellate Court's key findings, the proposed rule would establish two separate and unequal classes of foster children with respect to eligibility for IV-E Foster Care Maintenance, clearly a violation of federal law subject loss of federal funding.

• The Kinship Support Program would provide per diem payments of $10.20 (Approximately $310.00 per month to children in relative homes for a maximum of 15 months on the condition that the caregiver work toward becoming a certified foster parent per month  There is no indication that payments would reflect the child's age or level of care.

• Children in licensed foster homes receive foster care maintenance payments for the duration of their stay in foster homes.  The most recent report on foster care rates submitted to the Ohio Department of Job and Family Services by individual county agencies, indicates that the minimum foster care maintenance payment rate is higher than $10.20 per diem in all reporting counties.  (See FCASPL 337, 2018).  All Ohio Counties have specialized "difficulty of care" foster care payment rates based upon the individual child's level of care.  Ohio Administrative Code Rule 5101:2-47-18 identifies three "difficulty of care" categories; special, exceptional and intensive.  Children with extraordinary levels of care might receive foster care payments of $40, $50, $60 per day or higher.

| | | |
|---|---|---|
| Andrea Hall-Miller<br>Lorain County Children Services<br>andreahall@childrenservices.org | | Thank you for taking the time to review this rule and provide feedback. |
| | Section A- Lorain County currently has a stipend program to assist kinship caregivers meet the financial needs of caring for | KSP will be implemented the same way across all counties.  It will be at the discretion of the local |

| | | |
|---|---|---|
| | children that were placed in their care. How will the KSP program affect the agency program? | PCSA who has a local program to determine how they will proceed with their program. |
| | Section B- How does the KSP apply to ICPC cases? Will KSP payments be made retroactively? | KSP will be paid to eligible kinship caregivers out of state when the PCSA or Title IV-E agency has custody of the child. |
| | Section C- Children in temporary custody of kinship caregivers with the PCSA holding protective supervision through juvenile court should be considered for KSP to include all kinship caregivers that are in need of support and assistance. Lorain County has a long history of holding PS while the kinship caregiver becomes the temporary custodian. This allows for the kinship caregiver to make decisions on behalf of the children they are caring for while the agency works with the removal parents on completing their case plan. This practice is the least restrictive for children while ensuring safety and well-being. These caregivers should be part of the group of included caregivers. | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the child to be in the custody of the PCSA or Title IV-E Agency. |
| | Section D- Are kinship providers still eligible for the KPI money after granted legal custody? | A kinship caregiver who meets the requirements of the Kinship Permanency Incentive Program will be eligible for that program. The receipt of KSP will have no bearing on KPIP eligibility. |
| | Is the 9-month time frame for receiving the KSP payment limited with the thought that the kinship caregiver will be working on getting their foster care license and then will receive the regular foster care per diem. COVID has caused delays with parts of the home study process such as fingerprinting and getting those results. Has the pandemic been taken into consideration? Completing foster care home studies will extend our home study assessors beyond a reasonable workload. Section H- Licensing kinship caregivers will delay permanency for children. It will be an additional expense to agencies to train staff for these extensive home studies. There will be additional training session to staff and kinship caregivers. It will require extra staff to complete home studies and oversight to the kinship placement. Will there be new funds appropriated for | The timeframes for receipt of KSP prescribed by Ohio Revised Code are in place to allow for kinship caregivers to proceed through the foster care certification process.<br><br>Future opportunities for workforce assistance will be forthcoming from our office regarding assessor resources |

| | | |
|---|---|---|
| | covering necessary additional costs for counties to complete home studies and license kinship caregivers as foster caregivers? | |
| | If kinship caregivers become licensed, can they become foster parents for other children for the PCSA and will it require additional training and another home study? | Kinship caregivers who have approved non-safety waivers for foster care certification will only be able to provide foster care placement for kin children. If the caregiver becomes a certified foster caregiver without the approval non-safety waivers, then the caregiver can provide foster care to children who are not kin. |
| | GENERAL COMMENTS<br>•Delay the implementation of KSP rule for a period of 90 days to allow agencies to draft policies, procedures and consider budget implications. | The Executive Order issued by the Governor DeWine on December 30, 2020 requires that the KSP is implemented by June 2021 and is retroactive to December 29, 2020. |
| | •We are concerned that there is no "exit plan" for kinship caregivers under the design of this new program. Once the child leaves PCSA custody, financial support decreases. This likely will impact length of stay in custody and permanency. Will PCSAs be penalized when failing to meet CFSR measures with these cases? | The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. |
| | •This program represents new costs for both the state and the PCSAs and Title IV-E agencies. It is critical that new funds be appropriated for covering these new costs for both state and counties in the 2022-2023 budget and beyond. What is included in the county estimated costs? Does it also account for the impact this new program will have on the children service workforce crisis issue (i.e, more staff will be needed)? | Future opportunities for workforce assistance will be forthcoming from our office regarding assessor resources |
| | •If a kinship caregiver does not complete the KSP to become a certified foster parent, but that child remains in the kinship caregiver's care and is still in custody of a PCSA, will there be a formal process for the kinship caregiver to waive any remaining KSP payments and waive becoming a certified foster parent? | Kinship caregivers who do not become certified foster parents will receive the full amount of the KSP in accordance with the timeframes prescribed in the statute and in the rule. |

| | | |
|---|---|---|
| | • If your county is already providing a stipend to kinship caregivers, there may be a need to ask if such a payment should end or be modified when this program becomes effective. | It will be at the discretion of the local PCSA who has a local program to determine how they will proceed with their program. |
| | •Section (A). The rule refers to ORC 5101.885 which defines the payment as "ten dollars and twenty cents per child, per day, to the extent funds are available." This is equivalent to the current OWF-child only payment for a single child. We are concerned that the Kinship Support Program as designed could result in more children entering custody so their kinship caregivers can access these payments. To mitigate this, the OWF child-only payment could be adjusted to be the same amount for each additional child in all kinship placements, reducing the need/incentive for kids to come into custody so their kin caregiver can receive this level of support. We understand this would need to be GRF for fictive kin who do not hold custody or guardianship. | OWF is funded by TANF and is subject to federally defined eligibility requirements. The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers. The KSP rule has been written in accordance with Ohio Revised Code. |
| | • Section (C). We read this section to allow for kinship support payments over multiple placement episodes. For example, if a child re-enters PCSA custody and is re-placed with the eligible kinship caregiver or is placed with a different eligible kinship caregiver. Please confirm this is correct. | Payment timeframes are specific to the kinship caregiver. A kinship caregiver will not be able to receive payments for multiple custody episodes. However, a new kinship caregiver will be eligible to receive KSP for the child. |
| | •Section (F). We request that ODJFS produce a brief, family-friendly summary of the KSP that PCSAs and Title IV-E agencies can use to fulfill their responsibility to provide kinship caregivers with information about the KSP. | ODJFS is developing technical assistance documents to include frequently asked questions and a website article that can be shared with kinship caregivers. |
| | •Section (I). It will be important that foster caregivers who received a waiver as part of their certification process be identified within SACWIS as having been approved or licensed as a foster caregiver with a waiver. This information is important so other PCSAs and Title IV-E agencies are informed and aware of any limitations/restrictions associated with that certified foster caregiver. | SACWIS will include functionality that will cause these caregivers to be flagged so that they will not be available to place foster children who are not kin in the home. |

| | | |
|---|---|---|
| Susan Walther<br>Warren County Children Services<br>susan.walther@jfs.ohio.gov | It would be helpful in providing long term support for kinship to increase the OWF payments that are received when kinship apply for more than one child. OWF guidelines should be reviewed to allow kinship providers continued financial support beyond the KSP at the same rate as the KSP. The likelihood of kinship becoming licensed is slim and not a solution to maintain children in the kinship placement.<br><br>KSP provides funding to kinship beyond what OWF offers but the child would have to be placed in children services custody to receive KSP. This will create an increase of children coming into the PSCA's care in order for kinship to receive KSP. | Thank you for taking the time to review this rule and provide feedback.<br><br>OWF is funded by TANF and is subject to federally defined eligibility requirements. The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers. The KSP rule has been written in accordance with Ohio Revised Code.<br><br>Section 5101.884 of the Ohio Revised Code, signed into law on December 29, 2020, requires that a child be in the custody of the PCSA or Title IV-E Agency for the kinship caregiver to receive KSP payments. The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. Technical assistance will be provided to agencies to assist with program implementation. |
| Barbara Turpin<br>Ohio Grandparent Kinship Coalition<br>angel_51350@yahoo.com | 1. Why the time limited requirements here? What happens after 6-9 months for families that do not choose to get licensed or can't meet licensing requirements? | Thank you for taking the time to review this rule and provide feedback.<br><br>The KSP rule has been written in accordance with Ohio Revised Code statute which requires the payments to be time-limited. The intention of this program is to ensure that kinship caregivers who are not certified foster caregivers will receive payments to support the placement of the kinship child into their home. The time frame that they are able to receive KSP payments will allow for them to pursue foster care certification so that they can receive foster care per diem following the KSP payments. A kinship caregiver may be able to receive child- |

| | | only OWF after KSP payments end if the eligibility requirements for that program are met. |
|---|---|---|
| | 2.  Will any supports be put in place to help families to meet licensure requirements? | The Ohio Revised Code statute governing this rule provides for kinship caregivers to request non-safety waivers, including training hours and topic requirements, which will reduce some of the barriers to kinship caregivers becoming certified foster caregivers. |
| | 3.  Will training be provided to local agency workers on how to request waivers of non-safety licensing standards or training requirements for kin? Is this a well understood and easily accessible process? Are families informed they can waive these requirements? | The submission of requests for non-safety waivers is a practice within SACWIS that agencies should be familiar with.  Technical assistance will be provided as needed.  Agencies should work with kinship caregivers as needed to determine when non-safety waiver requests are necessary and appropriate. |
| | 4.  What about children with higher needs? Will there be any consideration of providing additional payments or services for these children? | Ohio Revised Code does not provide for additional KSP amounts for children who have special needs. |
| | 5.  Will kin have access to any additional services or supports beyond the $10.20 per diem? | The KSP rule has been written in accordance with Ohio Revised Code statute, which is limited to KSP payments. Kinship caregivers are encouraged to work with the Ohio Kinship and Adoption Navigator (OhioKAN) program to determine what additional resources are available and accessible for kinship families. |
| | 6.  Has there been any consideration of families who may choose not to get licensed or certified?  For the thousands of existing approved kin, what if they do not want to be certified / licensed? | Kinship caregivers will have the option to be certified as foster caregivers.  They will not be required to be certified.  However, the only way they will receive foster care per diem payments for the child after KSP ends is if they choose to become certified. |

| | | |
|---|---|---|
| | 7. Are children in foster care ever placed with non kin before full licensure is completed? If so, are there any payments provided for such non-kin foster parents prior to licensure? What are those payments? | No.  In accordance with rule 5101:2-42-05 of the Administrative Code, a PCSA or PCPA shall only place children in the home of an approved relative or non-relative (pursuant to rule 5101:2-42-18) or in a substitute care setting that is licensed, certified, or approved by the agency of the state having responsibility for licensing, certifying, or approving facilities of the type in which the child is placed. |
| | 8. This new program is not described as a foster care maintenance program nor have we seen anything in the materials to indicate that there's any intent or plan to revise the State Plan to have it approved as such, is that correct? Can the state clarify whether they are planning to seek federal IV-E foster care maintenance reimbursements for these payments to kin which will also require a IV-E eligibility determination for the child. | KSP payments will be funded entirely through state GRF, not from IV-E or other federal funds. If the kinship caregiver becomes a certified foster parent, the child's placement would change to a foster care placement and thus their IV-E eligibility would be considered in foster care maintenance determinations. |
| | 9. If the KSP payments are not FCM payments, why are they excluded from receipt of OWF child only payments in addition to KSP, based on rule 5101:1-23-10? | The Office of Family Assistance has clarified for the Office of Families and Children that a kinship caregiver who receives KSP will not be eligible for child-only OWF for that same child. Cash assistance rules are expected to be updated to clarify a kinship caregiver's eligibility for child-only OWF when the caregiver is receiving KSP. |
| | 10. The rule does not specify if the kinship home must be approved by the PCSA prior to placement and licensure. | Language will be added to the rule to clarify that the placement must be approved pursuant to rule 5101:2-42-18. |
| | 11. Is the KSP program intended to address the implementation of the requirements of the Glisson decision to pay approved kinship caregivers with children placed by the PCSA payments equal to non-relative licensed foster parents? | The KSP rule has been written in accordance with Ohio Revised Code statute that was signed and effective December 29, 2020. |
| Amy Davidson Summit County Children Services | On behalf of Summit County Children Services: | Thank you for taking the time to review this rule and providing feedback. |

| amy.davidson@summitkids.org | | |
|---|---|---|
| | •Some of our caregivers will choose not to become licensed for a variety of reasons.  Are they eligible for OWF payments after receiving KSP payments, if the child is still placed in the home? | A kinship caregiver may be able to receive child-only OWF after KSP payments end if the eligibility requirements for that program are met. |
| | •Does this at all impact OWF payments to caregivers who opt to take ETC/TC of a child while a reunification plan is in place?

•Will OWF still exist for caregivers who are granted Legal Custody? | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the child to be in the custody of the PCSA or Title IV-E Agency.  If a caregiver obtains temporary or legal custody or guardianship of the child, they will not be eligible for KSP and can apply for child-only OWF payments for that child. |
| | •Are there any plans to adjust OWF to align with KSP, since KSP provides the same amount for each child placed and OWF amounts decrease for child 2, then 3, etc.  The concern is this is a disincentive for relatives to assume temporary custody (OWF) and will increase agency custody numbers. | OWF is funded by TANF and is subject to federally defined eligibility requirements.  The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers.  The KSP rule has been written in accordance with Ohio Revised Code. |
| | •FCL #003 states under Eligibility that "Kinship caregivers eligible to receive payments are those who have placement of a kin child who is in the custody of a PCSA or under the care and placement of a Title IV-E agency with a subgrant agreement in place."
Will the PCSA need to enter into Subgrant Agreements with Kinship caregivers?
If yes, will ODJFS be providing a template for such an agreement?
If yes, why?  This appears to be an either/or situation with OWF and no subgrant agreement is required with OWF.
Does ODJFS recognize that requiring a Subgrant Agreement places an administrative burden on the local agency because of Subgrantee monitoring? | No, this language is specific to Title IV-E Courts. |
| | •Why is Kinship Support limited to either 6 or 9 months depending on placement date?  Some kinship placements last much longer than 9 months. | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the payments to be time-limited.  The intention |

| | | of this program is to ensure that kinship caregivers who are not certified foster caregivers will receive payments to support the placement of the kinship child into their home. The time frame that they are able to receive KSP payments will allow for them to pursue foster care certification so that they can receive foster care per diem following the KSP payments. |
|---|---|---|
| | •What happens if the placement terminates and then resumes in the near future? Does the eligibility period reset? If not, is there a time frame where it does reset, ie, after 2 years? | Payment timeframes are specific to the kinship caregiver. A kinship caregiver will not be able to receive payments for multiple custody episodes. |
| | •Does KSP count as household income, thus effecting the families eligibility for other OWF benefits and Title XX daycare? | The Office of Family Assistance has clarified that KSP payments will not be included in the income calculation for eligibility determination of publicly funded child care. |
| | •What happens if it takes longer than 6 months for the caregiver to be licensed? | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the payments to be time-limited. KSP payments will end according to the conditions specified in the rule. |
| | •Our agency contracts out our foster home licensing. Are there any plans for additional financial assistance to PCSAs for this extra financial burden? | Future opportunities for workforce assistance will be forthcoming from our office regarding assessor resources. |
| | •Is KSP considered a child only benefit? If not why? | The KSP payments are not the same as the TANF funded child-only OWF benefits. |
| | •If they are getting OWF payments now, how will that effect retro-RSP payments for the first half of 2021? | ODJFS is taking these concerns into consideration as KSP is implemented and will make every effort to mitigate any financial burden a kinship caregiver may face through no fault of their own. |
| | •How will you gather all the information for the RSP payments? Will there be direct SACWIS access? What | When the PCSA enters in the child's placement information, including the date of placement and |

| | | |
|---|---|---|
| | expectations/assistance, if any, will be required from the PCSAs? Will any additional paperwork be required of the PCSA? | kinship placement type, the KSP payments will be initiated. Entry of this information into SACWIS is not a new requirement for the PCSA. SACWIS webinars and technical assistance will be provided. |
| | •Can a caregiver choose to get OWF instead of RSP payments the initial 6 months of placement? | Pursuant to the executive order, ODJFS must make these payments to eligible kinship caregivers and there is no application process or avenue to deny the payment. The caregiver is able to receive OWF funds again once the KSP payments end. Further technical assistance regarding this is being developed. |
| Ryann Levering-White Ohio CSEA Directors' Association (OCDA) ryann@ocda.us | Comments to 5101:2-42-18.2  OCDA is a membership organization of county child support enforcement agencies. We regularly administer cases referred to us by PCSAs, as well as IV-A agencies. We also administer cases between never married parents, divorced parents, and caretakers. As such, we have many questions regarding the Kinship Support Program and its intersection with child support. We would ask to be included in any further discussions on the rule going forward to address child support-related issues.  Generally speaking, it appears that the payments made to kinship caregivers under this rule are not considered a benefit and there is no eligibility requirement. As such, we believe these payments would be deemed income by the IRS and considered as income under RC 3119.01(C)(12). Can you please verify? In the child support world, this means that this income can be used to set a child support order or modify a child support order if the kinship caregiver has a separate child support case (for another child/ren).  In addition, if these payments are considered income, what affect does this have on their ability to qualify for other assistance, such as SNAP or child care? In addition, if this is | Thank you for taking the time to review this rule and provide feedback. The Kinship Support Program will not impact the current interface between SACWIS and SETS.  Kinship Support Payments (KSP) income will be treated like foster care income for SNAP purposes- meaning, if the SNAP assistance group |

| | | |
|---|---|---|
| | income and ODJFS is considered the payor under RC3121.03, then this money is attachable via an income withholding order. Can you confirm?<br><br>When CSEAs receive a referral as a result of a child going into the custody of a PCSA many CSEAs will seek redirection of the current child support order. For children in the custody of PCSA these payments are sent to the PCSA. In some other instances, the payments may be redirected to the caregiver. What affect does the kinship support payment have on the child support order? Will CSEAs redirect to the PCSAs or is there a scenario where the kinship caregiver would be receiving kinship support payments AND child support? | chooses to include the child in the assistance for whom KSP is being received, then the income for the child (KSP payments) would be countable as well. If the assistance group chooses not to include the child in the assistance group for whom KSP is being received, then the KSP income is excluded. The SNAP rules have been updated for these changes and are in clearance from January 11th through January 24th.<br><br>The Office of Family Assistance has clarified that KSP payments will not be included in the income calculation for eligibility determination of publicly funded child care. |
| | Specific comments: | |
| | Under (B), why are legal guardians and legal custodians included? If they have legal custody of the child wouldn't that make the kinship support issue moot? | The ORC definition of kinship caregiver cited in this rule specifically includes individuals who have legal custody or guardianship of a child. However, paragraph (C)(1) identifies that the child must be in the temporary or permanent custody of the PCSA or Title IV-E agency. |
| | Under (C)(1) should PPLA and Interim Temp Custody also be included? What about cases of court-ordered protective supervision? | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the child to be in the custody of the PCSA or Title IV-E Agency. PPLA is a legal custody status and is covered under the term "legal custody". Court ordered supervision cases do not meet the statutory requirement. |
| | Under (D), what happens to a child support order at the end of the nine or six month period if the kinship caregiver does not achieve foster care certification? If CSEA has redirected support to the PCSA, does this child support then get redirected from the PCSA to the kinship provider directly? | Further technical assistance is being developed regarding this concern. |

| | | |
|---|---|---|
| | Under (D) how are these payments funded? | KSP payments will be funded entirely through state GRF |
| | Under (D) can these payments occur over multiple placements? Does the clock "start over" if the child is placed with a successive caregiver? What happens if the child returns to the original kinship caregiver? | Payment timeframes are specific to the kinship caregiver.  A kinship caregiver will not be able to receive payments for multiple custody episodes. However, a new kinship caregiver will be eligible to receive KSP for the child. |
| | Finally, we agree with the comments by Jeff Felton and Traci Berry, as well as the concerns raised about the payments by Melanie Allen, and the overarching issues raised by Mary Wachtel. | |
| | Thank you for the opportunity to comment. | |
| Leaders of the BREAD Organization breadcolumbus@gmail.com | Members of the BREAD Organization's Families First and Housing Now Committee are deeply concerned about how legislation such as this will impact kinship caregivers. We join the voices of coalition partners across the state. We know that many Franklin County families need this support and want to see Ohio comply with DO v. Glisson. We have several questions including: | Thank you for taking the time to review this rule and provide feedback. |
| | 1. Why the time limited requirements here? What happens after 6-9 months for families that do not choose to get licensed or can't meet licensing requirements? | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the payments to be time-limited.  The intention of this program is to ensure that kinship caregivers who are not certified foster caregivers will receive payments to support the placement of the kinship child into their home.  The time frame that they are able to receive KSP payments will allow for them to pursue foster care certification so that they can receive foster care per diem following the KSP payments. Kinship caregivers are not required to obtain certification. A kinship caregiver may be able to receive child-only OWF after KSP payments end if the eligibility requirements for that program are met. |

| | | |
|---|---|---|
| | 2. Will any supports be put in place to help families to meet licensure requirements? | The Ohio Revised Code statute governing this rule provides for kinship caregivers to request non-safety waivers, including training hours and topic requirements, which will reduce some of the barriers to kinship caregivers becoming certified foster caregivers. |
| | 3. Will training be provided to local agency workers on how to request waivers of non-safety licensing standards or training requirements for kin? Is this a well understood and easily accessible process? Are families informed they can waive these requirements? | The submission of requests for non-safety waivers is a practice within SACWIS that agencies should be familiar with. Technical assistance will be provided as needed. Agencies should work with kinship caregivers as needed to determine when non-safety waiver requests are necessary and appropriate. |
| | 4. What about children with higher needs? Will there be any consideration of providing additional payments or services for these children? | Ohio Revised Code does not provide for additional KSP amounts for children who have special needs. Kinship caregivers are encouraged to work with the Ohio Kinship and Adoption Navigator (OhioKAN) program to determine what additional resources are available and accessible for kinship families. |
| | 5. Has there been any consideration of families who may choose not to get licensed or certified? For the thousands of existing approved kin, what if they do not want to be certified / licensed ? | Kinship caregivers will have the option to be certified as foster caregivers. They will not be required to be certified. However, the only way they will receive foster care per diem payments for the child after KSP ends is if they choose to become certified. |
| | 6. Are children in foster care ever placed with non kin before full licensure is completed? If so, are there any payments provided for such non-kin foster parents prior to licensure? What are those payments? | No. In accordance with rule 5101:2-42-05 of the Administrative Code, a PCSA or PCPA shall only place children in the home of an approved relative or non-relative (pursuant to rule 5101:2-42-18) or in a substitute care setting that is licensed, certified, or approved by the agency of the state having responsibility for licensing, |

| | | |
|---|---|---|
| | | certifying, or approving facilities of the type in which the child is placed. |
| | Additionally, here are other comments in reference to sections of the legislation: | |
| | A. Why must funds need to be appropriated in each budget year for this plan? We hope it does not have the high administrative/staff costs and limitations of other programs designed to assist kinship families: OWF, OhioKAN, 30 days to Family, KPIP, PRTs, KCP, and Subsidized child care program or that it produces a true Kinship Support Program that gets resources directly to families vs. building more staff costs. | The KSP rule was written in accordance with Ohio Revised Code. |
| | D: Include the dates rather than the 9 month, 6 month language from the legislation. It appears that this means that after September, a kinship family will have 6 months of this limited income to decide to be a foster parent while the child is in custody or apply for OWF. Is this accurate? It is very difficult to figure out with this language. | The appropriate dates will be added to rule language in paragraph (D) to clarify the timeframes. |
| | E.1. This legislation is pushing the kinship care provider toward foster care licensure. Will families know clearly that this is limited to time of CSB holding custody with reunification as the goal? Will information on adoption subsidies be communicated clearly to workers and families? Does this then expose these families to the judgmental allegation system of foster care vs. the alternative care response for primary families? | The PCSA should communicate to kinship families the parameters of the KSP program as well as the benefits of foster care certification and adoption subsidies. |
| | F. Will any support other than the $10.20 be included in the KSP? If that is a county-by-county decision, that will vary a lot around the state. | The KSP rule has been written in accordance with Ohio Revised Code statute, which is limited to KSP payments. Kinship caregivers are encouraged to work with the Ohio Kinship and Adoption Navigator (OhioKAN) program to determine what additional resources are available and accessible for kinship families. |

| | I. This waiver seems to support a 2-tiered foster home licensing system. Are their standards and training for workers on what are non-safety issues and what training topics can be waived? | ODJFS will provide technical assistance to agencies as needed. In accordance with Ohio Revised Code, all training hours and topics are waivable. |
|---|---|---|
| Will Petrik<br>Policy Matters Ohio<br>wpetrik@policymattersohio.org | Thank you for the opportunity to provide comments on the rules for the new Kinship Support Program.<br><br>The new Kinship Support Program does not comply with D.O. v. Glisson and continues a two-tiered system where approved relative caregivers get one thing (generally less financial support and that support is time limited) and licensed foster caregivers receive another. | Thank you for reviewing the rule and providing your feedback. |
| | A. The amendment also says that the Ohio Department of Job & Family Services shall coordinate and administer the program "to the extent funds are appropriated and allocated for this purpose." We are concerned that this sets up an unfunded program, and that the payments to kinship caregivers are contingent on whether state lawmakers actually allocate money for this purpose in the state budget. | The KSP rule has been written in accordance with Ohio Revised Code statute that was signed and effective December 29, 2020. |
| | D. The time limits included in the rule are confusing. We understand an approved kinship caregiver can receive per diem payments through the Kinship Support Program for up to 9 months from the effective date (12.29.2020 through 9.29.2020). If someone becomes an approved kinship caregiver on 9.30.2021, he or she can access the Kinship Support Payments for up to 6 months. We recommend including specific dates, so the rules are easier to understand and administer.<br><br>In addition to these concerns, we have several outstanding questions: | The appropriate dates will be added to rule language in paragraph (D) to clarify the timeframes. |
| | • What happens after the 6-9 months for families who can't meet the licensing requirements?<br>• Some kinship caregivers may choose not to get licensed. Has ODJFS considered how to adequately support these kinship families? | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the payments to be time-limited. The intention of this program is to ensure that kinship caregivers who are not certified foster caregivers will receive payments to support the placement of the kinship child into their home. The time |

| | | |
|---|---|---|
| | | frame that they are able to receive KSP payments will allow for them to pursue foster care certification so that they can receive foster care per diem following the KSP payments. Kinship caregivers are not required to obtain certification. A kinship caregiver may be able to receive child-only OWF after KSP payments end if the eligibility requirements for that program are met. Kinship caregivers are encouraged to work with the Ohio Kinship and Adoption Navigator (OhioKAN) program to determine what additional resources are available and accessible for kinship families. |
| | • Will any supports be put in place to help families meet licensure requirements? | The Ohio Revised Code statute governing this rule provides for kinship caregivers to request non-safety waivers, including training hours and topic requirements, which will reduce some of the barriers to kinship caregivers becoming certified foster caregivers. |
| | • Will training be provided to local public children service agency caseworkers on how to request waivers to make it easier for kin to get licensed? | The submission of requests for non-safety waivers is a practice within SACWIS that agencies should be familiar with. Technical assistance will be provided as needed. Agencies should work with kinship caregivers as needed to determine when non-safety waiver requests are necessary and appropriate. |
| | • Will children with higher needs who are placed with kin receive additional financial support or services? | Ohio Revised Code does not provide for additional KSP amounts for children who have special needs. Kinship caregivers are encouraged to work with the Ohio Kinship and Adoption Navigator (OhioKAN) program to determine what additional resources are available and accessible for kinship families. |
| | When children are removed from their home and parents, they need love, support, and stability to get through a traumatic | |

| | | |
|---|---|---|
| | time in their life. When a relative or family friend steps up to care for a child, they deserve the same support as children who are placed in non-relative foster care.<br><br>While the Kinship Support Program is a step, it doesn't provide financial support based on the needs of the child and kinship families, and it doesn't clearly establish a structure to educate and provide support for kinship families. Instead, it provides minimal financial support and pushes kinship families to become licensed when kinship caregivers may not want to do so.<br><br>State lawmakers must take action to make sure Ohio complies with D.O. v. Glisson, which is federal law. Children placed with approved kinship caregivers have a right to the same level of state support as children placed with foster parents. The state of Ohio also needs to make sure kinship caregivers understand their options and the resources available to them. | |
| Theresa B Ellison Assistant Director Clermont County CSEA<br>Theresa.Ellison@jfs.ohio.gov | We support and agree with comments submitted by Ryann Levering-White on behalf of OCDA and Traci Berry on behalf of Tuscarawas County CSEA with respect to the effect of Kinship Support payments on child support and CSEAs. | Thank you for reviewing this rule and providing feedback. |
| Jennifer Tultz<br>Summit County CSEA<br>jennifer.tultz@jfs.ohio.gov | I AGREE with the comments submitted by Ryann Levering-White on behalf of OCDA and Traci Berry on behalf of Tuscarawas County CSEA. | Thank you for reviewing this rule and providing feedback. |
| Stephanie Kowal<br>Ottawa County Department of Job and Family Services<br>stephanie.kowal@jfs.ohio.gov | B(4) & B(5) - if kin are considered the legal guardians or legal custodians, then the agency does not have custody.<br><br>If the children are removed from the custody of legal guardians or custodians, then the agency would have found it inappropriate to keep the child with that particular kin, so they would not be the placement kin. Additionally, if we removed from the kin (legal guardian/ custodian) then work reunification, they should be treated like parents in that we would not be subsidizing their placement with Kinship Caregiver Payments or ongoing foster care payments.<br><br>D Eligible kinship caregivers | Thank you for taking the time to review this rule and provide feedback.<br><br>While the ORC definition of kinship caregiver includes individuals who have legal custody or guardianship of a child, paragraph (C)(1) identifies that the child must be in the temporary or permanent custody of the PCSA or Title IV-E agency. |

| | | |
|---|---|---|
| | If a child leaves kinship placement/home and returns to that kinship home while in agency custody, does the eligibility period restart? If the agency reunifies or does trial reunification visits, does the Kinship Support Program continue to make payments when the child is not in the kinship home? | Technical assistance regarding this is being developed. |
| | Can kinship providers opt out of the program if they prefer OWF child only assistance? | Pursuant to the executive order, ODJFS must make these payments to eligible kinship caregivers and there is no application process or avenue to deny the payment. The caregiver is able to receive OWF funds again once the KSP payments end. Further technical assistance regarding this is being developed. |
| | Does kin have to be pursing foster care licensing to be eligible for Kinship Caregiver Payments? If so, how will that be verified? What if, later, additional kin are placed in the home, does the Kinship Caregiver Payment eligibility period restart with each new kinship placement, assuming the household has not already obtained foster care license? If there is no break in time when kin children are placed in their home? If there is a break in time between when kin children are placed in their home? | The kinship caregiver is not required to pursue foster care certification. KSP payments will be made to an eligible kinship caregiver for each kinship child placed in the home on or after December 29, 2020, regardless of when the child is placed. Once a kinship caregiver obtains certification, all KSP payments will end and the caregiver to receive foster care per diem payments for the children in the home. |
| | For current child only OWF cases, where no foster care/ custody has been established, what analysis has been done to determine the potential of new intakes/ orders from the courts to create custody cases so that a provider would be eligible for Kinship Caregiver Payments? Are impact estimates based on current children in custody? Does that include the number of counties whose courts place the children into the temporary custody of the kinship placement member, but retain protective supervision? Most expect that practice to change to those children coming into agency custody in order to provide this benefit to those kin placements. | The KSP rule has been written in accordance with Ohio Revised Code statute that was signed and effective December 29, 2020. |
| | Original language for the Bill included a per diem amount per day. Is that spelled out in ORC and have to be adjusted through changes to the law? Or should that be spelled out in the OAC, like the Kinship Permanency Incentive Program is? | This language is included in Ohio Revised Code section 5101.885 |

| | | |
|---|---|---|
| | What impact will this program have on Kinship Permanency Incentive Program (KPIP)? | KSP will have no impact on the Kinship Permanency Incentive Program. |
| | (G) 13 The PCSA or Title IV-E agency is to enter the necessary data. | |
| | Will an interface between SACWIS and Ohio Benefits be created so OWF is stopped when a kinship placement is entered into SACWIS? | An interface will be developed so that SACWIS and Ohio Benefits may eventually communicate with one another. |
| | What timeframe will be used if a kinship placement happens mid-month, if the child has been on a child-only OWF case with the provider already? What about at the end of the month and OWF needs to start at the beginning of the next month if families do not go through the foster care licensing process? | Technical assistance regarding this is being developed. |
| | Does the kin provider have a choice if they prefer child-only OWF payments and do not want to go through licensing and the Kinship Caregiver Payment program? | Pursuant to the executive order, ODJFS must make these payments to eligible kinship caregivers and there is no application process or avenue to deny the payment.  If the kinship caregiver does not obtain foster care certification, they are able to receive OWF funds again once the KSP payments end.  Further technical assistance regarding this is being developed. |
| | (I ) - In accordance with rule 5101:2-5-18 of the Administrative Code | |
| | If elements of the foster care license process are waived for Foster Care licensing of kin, is that a child specific foster care license? Or would they be able to accept non-kin placements as a foster parent, whether they've received relevant training (not waived) or not? Is there any way to designate in SACWIS if a kin home is licensed as foster for a particular child? | Kinship caregivers who have approved non-safety waivers for foster care certification will only be able to provide foster care placement for kin children.  SACWIS will include functionality that will cause these caregivers to be flagged so that they will not be available to place foster children who are not kin in the home. |
| | Do the kinship providers have a choice in which county they go through for foster care licensing? For example, if kin lives in county A, but custodial children service agency is in county B, which county do they go through for licensing? Would that create  "borrowed beds? " What if County B's perspective on | Caregivers are always able to choose which agency they would like to be certified through. |

| | | |
|---|---|---|
| | what can be waived or not for licensing is different than County A, but the family wants to go through County A for licensing? | |
| | Has the cost the county will incur for staff support needed to conduct and maintain licensing of kinship providers (ie, staff, training, etc) been factored into the county's level of financial responsibility? | Future opportunities for workforce assistance will be forthcoming from our office regarding assessor resources. |
| Deanna Nichols-Stika<br>Wayne County Children Services Board<br>Deanna.Nichols-Stika@jfs.ohio.gov | | Thank you for taking the time to review this rule and provide feedback. |
| | We provide per diems to kinship caregivers.  Could the payments for the state's program be directed to the county for reimbursement for supports already being provided?  We will not end our supports during the implementation of the state's program.  If payments are directly straight to kinship caregivers from the state our kinship parents will receive a "double" payment during the retroactive period. | ODJFS will make KSP payments directly to the kinship caregiver retroactive to December 29, 2020. |
| | How will notification be sent to local county following the KSP's last payment to kinship caregiver?  Can there be guidelines within the rule for the communication to occur?  Our county will reinstate our local support following the expiration of the state's KSP. | SACWIS webinars and technical assistance will be provided to share information and instruction regarding KSP functionality. |
| | Can the OWF payments and KSP payments be equal to ensure caregivers choose which program they want to participate in based on needs being met and not financially beneficial. | Pursuant to the executive order, ODJFS must make these payments to eligible kinship caregivers and there is no application process or avenue to deny the payment.  The caregiver is able to receive OWF funds again once the KSP payments end.  Further technical assistance regarding this is being developed. |
| Chip Spinning<br>Franklin County Children Services<br>cmspinni@fccs.us | As a Member of the Public Children Services Association of Ohio, we join in providing the following comments and questions for your response: | Thank you for taking the time to review this rule and provide feedback. |
| | Section (A). The rule refers to ORC 5101.885 which defines the payment as "ten dollars and twenty cents per child, per day, to the extent funds are available." This is equivalent to the current | OWF is funded by TANF and is subject to federally defined eligibility requirements.  The funding for KSP allows for more flexibility in |

| | | |
|---|---|---|
| | OWF-child only payment for a single child. We are concerned that the Kinship Support Program as designed could result in more children entering custody so their kinship caregivers can access these payments. To mitigate this, the OWF child-only payment could be adjusted to be the same amount for each additional child in all kinship placements, reducing the need/incentive for kids to come into custody so their kin caregiver can receive this level of support. We understand this would need to be GRF for fictive kin who do not hold custody or guardianship. | providing payments to eligible kinship caregivers.  The KSP rule has been written in accordance with Ohio Revised Code. |
| | Section (C). We read this section to allow for kinship support payments over multiple placement episodes. For example, if a child re-enters PCSA custody and is re-placed with the eligible kinship caregiver or is placed with a different eligible kinship caregiver. Please confirm this is correct. | Payment timeframes are specific to the kinship caregiver.  A kinship caregiver will not be able to receive payments for multiple custody episodes. However, a new kinship caregiver will be eligible to receive KSP for the child. |
| | Section (F). We request that ODJFS produce a brief, family-friendly summary of the KSP that PCSAs and Title IV-E agencies can use to fulfill their responsibility to provide kinship caregivers with information about the KSP. | ODJFS is developing technical assistance documents to include frequently asked questions and a website article that can be shared with kinship caregivers. |
| | Section (I). It will be important that foster caregivers who received a waiver as part of their certification process be identified within SACWIS as having been approved or licensed as a foster caregiver with a waiver. This information is important so other PCSAs and Title IV-E agencies are informed and aware of any limitations/restrictions associated with that certified foster caregiver. | SACWIS will include functionality that will cause these caregivers to be flagged so that they will not be available to place foster children who are not kin in the home. |
| | In addition:<br>1.  We are concerned that there is no "exit plan" for kinship caregivers under the design of this new program. Once the child leaves PCSA custody, financial support decreases. This likely will impact length of stay in custody and permanency. Will PCSAs be penalized when failing to meet CFSR measures with these cases? | The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. |

| | | |
|---|---|---|
| | 2. This program represents new costs for both the state and the PCSAs and Title IV-E agencies. It is critical that new funds be appropriated for covering these new costs for both state and counties in the 2022-2023 budget and beyond. What is included in the county estimated costs? Does it also account for the impact this new program will have on the children service workforce crisis issue (i,e, more staff will be needed)? | Future opportunities for workforce assistance will be forthcoming from our office regarding assessor resources. |
| | 3. If a kinship caregiver does not complete the KSP to become a certified foster parent, but that child remains in the kinship caregiver's care and is still in custody of a PCSA, will there be a formal process for the kinship caregiver to waive any remaining KSP payments and waive becoming a certified foster parent? | Kinship caregivers who do not become certified foster parents will receive the full amount of the KSP in accordance with the timeframes prescribed in the statute and in the rule. |
| | 4. If our county is already providing a stipend to kinship caregivers, there may be a need to ask if such a payment should end or be modified when this program becomes effective. | It will be at the discretion of the local PCSA who has a local program to determine how they will proceed with their program. |
| Jeffrey Bloom<br>Cuyahoga County CSEA<br>Jeffrey.Bloom@jfs.ohio.gov | Cuyahoga CSEA agrees with the comments submitted by Ryann Levering-White (OCDA) and Traci Berry (Tuscarawas CSEA) specific to the SACWIS-SETS interface and referrals, including the question over assignment of child support. | Thank you for taking the time to review this rule and provide feedback. |
| Robin Reese<br>Lucas County Children Service<br>robin.reese@jfs.ohio.gov | | Thank you for taking the time to review this rule and provide feedback. |
| | Concerned about the impact on CFSR<br>Permanency in 12 months for children entering foster Care. Placement stability due to change in the caregiver status | The KSP rule has been written in accordance with Ohio Revised Code statute which requires the child to be in the custody of the PCSA or Title IV-E Agency. The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody. |
| | Will counties be responsible financially for the difference between our current foster care rates and the amount that is proposed for Kin. | ODJFS will make KSP payments directly to the kinship caregiver. If a kinship caregiver becomes a certified foster caregiver, the recommending agency will pay the caregiver the full foster care per diem rate. |

| | | |
|---|---|---|
| | Will Kin have the same training, home study and licensing requirements as current licensed caregiver.<br><br>Some issue we have had to manage with the few kin-to foster homes that we have licensed is criminal record checks on all adults in the home, monitoring who is living in the home, sleeping arrangements for children in our custody, training for recertification and compliance with foster care rules.<br><br>Children who are currently placed with Kin who meet treatment level of care could present additional issues.<br><br>Higher per diems due to the care needs and behavior of the child and additional requirement for initial licensing, recertification and program requirements.<br><br>Program requirements<br>Daily reports that are generated by caregiver<br>Monthly treatment team meeting<br>Additional visits in the home by caseworker<br>Higher level of supervision<br>Increased Training hours | Kinship caregivers are to be certified in accordance with chapters 5101:2-5 and 5101:2-7 of the Administrative Code.  The KSP rule allows for the recommending agency to request a waiver for non-safety certification standards, including all training hours and topic requirements, pursuant to Ohio Revised Code. |
| Kristie Heckman<br>Clark County Job & Family Services<br>kristie.heckman@jfs.ohio.gov | We are concerned that this rule could result in more children entering custody. In order to mitigate this concern, OWF payments could be made equivalent to KSP payments.<br><br><br>Will KSP cover the same child who has multiple placement episodes?<br><br><br><br>How will the KSP payment be administered and by whom? | OWF is funded by TANF and is subject to federally defined eligibility requirements.  The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers.  The KSP rule has been written in accordance with Ohio Revised Code.<br><br>Payment timeframes are specific to the kinship caregiver.  A kinship caregiver will not be able to receive payments for multiple custody episodes. However, a new kinship caregiver will be eligible to receive KSP for the child.<br><br>ODJFS will make KSP payments directly to the kinship caregiver. When the PCSA enters in the placement date as a kinship placement, KSP |

| | | payments will be initiated. SACWIS webinars and technical assistance will be provided. |
|---|---|---|
| | If the child is IV-E eligible, will the county receive match dollars? | KSP payments will be funded entirely through state GRF, not from IV-E or other federal funds. If the kinship caregiver becomes a certified foster parent, the child's placement would change to a foster care placement and thus their IV-E eligibility would be considered in foster care maintenance determinations. |
| | D(3) Wording is confusing. Could this statement be better clarified? | The appropriate dates will be added to rule language in paragraph (D) to clarify the timeframes. |
| Deborah Watkins<br>Summit County CSEA<br>Deborah.Watkins@jfs.ohio.gov | Thank you for the opportunity to offer comments regarding the administrative rule 5101:2-42-18.2.<br><br>I would re-iterate the comments of Ryann Levering White (OCDA) and Traci Berry.<br><br>Of particular concern is the intended impact of the KSP payments if a support order is issued concerning the child; and the intersection of IV-A/OWF funding and whether these payments have any impact on referrals from children services agencies to the child support agency.<br><br>Thank you again for the opportunity to comment. | Thank you for taking the time to review this rule and provide feedback. |
| Bart Sharkey<br>Hamilton County JFS<br>Bart.Sharkey@jfs.ohio.gov | 1. Section (A). The rule refers to ORC 5101.885 which defines the payment as "ten dollars and twenty cents per child, per day, to the extent funds are available." This is equivalent to the current OWF-child only payment for a single child. We suggest the OWF child-only payment be adjusted to be the same amount for each additional child in all kinship placements, reducing the need/incentive for kids to be in custody for their kin caregiver to receive this level of support. This also provides longer term financial stability should the child exit custody and remain with the kin. Align "specified relative" contained in ORC § 5107.02 Ohio works first program definitions with the ORC § | Thank you for taking the time to review this rule and provide feedback.<br><br>OWF is funded by TANF and is subject to federally defined eligibility requirements. The funding for KSP allows for more flexibility in providing payments to eligible kinship caregivers. The KSP rule has been written in accordance with Ohio Revised Code. |

5101.85 Kinship defined "kinship caregiver" definition to expand eligibility to caregivers.

2.Section (A). What is the source of funding for this program, is this strictly using state funding or is this tied to federal funding? Will the payments be paid directly by ODJFS to the kin providers? Will payments, including any retroactive payments, happen automatically based on placements entered in SACWIS? If not, who decides whether or not a kin placement received KSP?

KSP payments will be funded entirely through state GRF.  ODJFS will make KSP payments directly to the kinship caregiver.  When the PCSA enters in the placement date as a kinship placement, KSP payments will be initiated.

3. Section (C). We read this section to allow for kinship support payments over multiple placement episodes. For example, if a child re-enters PCSA custody and is re-placed with the eligible kinship caregiver or is placed with a different eligible kinship caregiver. Please confirm this is correct.

Payment timeframes are specific to the kinship caregiver.  A kinship caregiver will be able to receive payments for multiple custody episodes. However, a new kinship caregiver will be eligible to receive KSP for the child.

4. Section (E). In Hamilton County the overwhelming majority of kin families do not wish to become licensed.  In addition, Hamilton County does not license foster homes and very few private agencies see them as a priority given the limited placement timeframe and the narrowly focused interests of most kin families. Kin families may not even get licensed before the child is moved or reunited and they likely will not accept any other children while licensed.

The KSP does not require that the kinship caregiver become a certified foster parent.  It allows for the kinship parent to receive payments for a specified time period to support the placement of the child in the home.  During that time, the kinship caregiver may opt to go through the certification process so that they can continue to receive support through foster care per diem payments following certification. The kinship caregiver may or may not become a certified foster caregiver.

5. Section (I). Foster caregivers who receive a waiver as part of their certification process must be identified within SACWIS. Other PCSAs and Title IV-E agencies must be aware of any limitation/restrictions associated with that certified foster caregiver. The waiver identification needs to include specific information regarding what requirements were waived.

SACWIS will include functionality that will cause these caregivers to be flagged so that they will not be available to place foster children who are not kin in the home.

6. We are concerned this program has no "exit plan" for kinship caregivers. Once the child leaves PCSA custody, financial support decreases. This will likely impact length of stay in custody and permanency.

The Office of Families and Children is exploring long-term solutions for children placed with kinship caregivers in agency custody.

| | | |
|---|---|---|
| | 7. This program represents new costs for the state, PCSAs and Title IV-E agencies. It is critical that new funds be appropriated for covering these new cost mandates for counties in the 2022-2023 budget and beyond. What is included in the county estimated costs? | Future opportunities for workforce assistance will be forthcoming from our office regarding assessor resources. |
| | General Comments: | |
| | For counties already providing a monthly kinship stipend, will ODJFS still issue retroactive payments back to 12/31? | ODJFS will make KSP payments directly to the kinship caregiver retroactive to December 29, 2020. |
| | How will leaves (planned and unplanned) be handled during the KSP program timeframe. | Technical assistance regarding this is being developed. |
| Randall L. Galbraith<br>Hancock County JFS<br>Randall.Galbraith2@jfs.ohio.gov | Comments to Clearance 8520 Kinship Support<br><br>I am of mixed feelings about this program.  I think it is wonderful that kinship caregivers will be offered more financial support than is currently provided.  I am concerned that the program as it may be implemented will cause undue strain on the county PSCAs, setting us back to where the agencies were before the increased allocations arrived in SFY2019.   I understand that the first nine (9) months that a child is placed with a kinship caregiver will be funded from state GRF.  Upon licensing, I understand that counties will be responsible for the placement costs as they would any other foster care placement. Many counties are already stretched thin by placement costs. Some counties are subject to courts that place all children in the custody of the PCSA.  This would make such a practice highly detrimental to the fiscal health of a PCSA with little that could be done to mitigate the cost.<br>I am also disappointed that the child support program was not given a seat at the table while developing this program.  While Kinship Support Payments have been specifically exempted from the calculation of OWF eligibility under 5101:1-23-20.1(B)(19), I can find no proposal to exclude the payments | Thank you for taking the time to review this rule and provide feedback. |

|  | from the calculation of a child support order.  As an explanation, if an obligor were to have a child placed in a kinship placement in the obligor's household, and the obligor began to receive Kinship Support Payments, said payments may well be income that should be used in the calculation of a new or adjusted child support order.  While this may be fixed or clarified in the future, the expectation is for payments to begin flowing soon to kinship caregivers and the payments will be retroactive.  Had OCDA and OCS had a seat at the table for planning discussions, such unintended consequences could have been avoided. In summary, additional financial support from the state to the counties will be of paramount importance to ensure this program works.  Additionally, major new programs such as this one require all appropriate parties to have a seat at the table during the planning process. |  |